UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JANE FIELY,                        )      Case No. 3:13-cv-02005
                                 )
          Plaintiff,         )      Judge Carr
                                 )      Mag. Judge Armstrong
       v.                     )
                                 )
ESSEX HEALTHCARE       )
CORPORATION and ATRIUM   )
LIVING CENTERS, INC.,      )
                                 )
         Defendants.       )

 

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**Page**

I.      SUMMARY OF ARGUMENT ...................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ........................................................2

III.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE....................................2

    A.      Background Regarding Defendants and Fiely's Employment................................ 2

    B.      St. Mary's' Employment Policies. ....................................................................... 2

    C.      Fiely Quits Without Notice and DeRossett Asks Her To Return To St. Mary's... 3

    D.      Following Fiely's Return To St. Mary's, She Is Counseled For Issues Regarding Her Job Performance and Conduct Toward Coworkers. ......................................... 3

    E.      A St. Mary's Employee Reports That Fiely Grabbed Her Twice At Work............ 5

    F.      Fiely Calls In Sick on April 22. .......................................................................... 6

    G.      Regional Director of Human Resources Bob Huenefeld Conducts An Investigation Into Quellhorst's Report And Concludes That Fiely Grabbed Quellhorst Twice........................................................................................... 6

    H.      DeRossett Decides To End Fiely's Employment................................................. 8

    I.      St. Mary's Fills Fiely's Position. ....................................................................... 8

    J.      Fiely Never Sought or Took Leave Under the FMLA.......................................... 9

IV.     LEGAL STANDARD...............................................................................................9

V.      ARGUMENT ...........................................................................................................9

    A.      Fiely's Age Discrimination Claim Cannot Survive Summary Judgment ............. 10

        1.      Fiely Cannot Present Direct Evidence of Age Discrimination. ................ 10

        2.      Fiely Cannot Prove Age Discrimination Under The Indirect Method...... 13

            a.      Fiely's Employment Ended For Legitimate, Non-Discriminatory Reasons. ....................................................................... 13

            b.      Fiely Cannot Demonstrate Pretext ................................................ 14

B.  Fiely's FMLA Claims Cannot Survive Summary Judgment. ............................... 17

    1.  Fiely's FMLA Interference Claim Fails Because She Was Not Entitled To Leave, Never Provided Notice of Her Intention to Take Leave, and Was Never Denied Any Benefits To Which She Was Entitled. ....................... 17

    2.  Fiely's FMLA Retaliation Claim Fails Because She Never Engaged In Protected Activity, Her Employment Ended For A Legitimate, Non-Retaliatory Reason, And There Is No Evidence Of Pretext..................... 19

VI.  CONCLUSION ................................................................................................................20

US.54846795.02

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .....................................................9

*Beal v. Rubbermaid Commercial Prods. Inc.*, 972 F. Supp. 1216 (S.D. Iowa 1997) ...................19

*Beaver v. RGIS Inventory Specialists, Inc.*, 144 F. App'x 452 (6th Cir. 2005) ............................18

*Blizzard v. Marion Technical Coll.*, 698 F.3d 275 (6th Cir. 2012).................................................10

*Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461 (6th Cir. 1995)................................................17

*Carpenter v. Permanente*, 1:04 CV 1689, 2006 WL 2794787 (N.D. Ohio 2006).........................20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................................9

*DeBarr v. Cleveland Clinic Found.*, 918 F. Supp. 2d 676 (N.D. Ohio 2013) ...............................11

*Diebel v. L & H Res., LLC*, 492 F. App'x 523 (6th Cir. 2012)......................................................12

*Donald v. Sybra, Inc.*, 667 F.3d 757 (6th Cir. 2012) .....................................................................18

*Egli v. Cong. Lake Club*, 2010-Ohio-2444 ...................................................................................10

*Franks v. Vill. Of Bolivar*, 5:11CV701, 2013 WL 5279356, (N.D. Ohio 2013) ...................13, 14

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)....................................................................10

*Hall v. Bodine Elec. Co.*, 276 F.3d 345 (7th Cir. 2002) ...............................................................15

*Hargabus v. Cedar Fair, L.P.*, No. 1:04CV1751, 2005 WL 2233248 (N.D. Ohio 2005)............15

*Hott v. VDO Yazaki Corp.*, 922 F. Supp. 1114 (W.D. Va. 1996) .................................................19

*Krupnick v. ARCADIS of U.S., Inc.*, 2:12-CV-273, 2014 WL 996239 (S.D. Ohio 2014) .10, 11, 12

*Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721 (6th Cir. 2012)................................................11

*Leonard v. Twin Towers*, 6 F. App'x 223 (6th Cir. 2001) ............................................................12

*Lewis v. Philip Morris Inc.*, 355 F.3d 515 (6th Cir. 2004) ............................................................9

*Loyd v. Saint Joseph Mercy Oakland*, 13-2335, 2014 WL-4434200 (6th Cir. 2014).............14, 16

US.54846795.02

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)........................................9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .............................................13

*Phelps v. Jones Plastic & Eng'g Corp.*, 20 F. App'x 352 (6th Cir. 2001) ....................................17

*Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 554 (6th Cir. 2004) ...............................10

*Rush v. E.I. DuPont DeNemours & Co.*, 911 F. Supp.2d 545 (S.D. Ohio 2012) .........................19

*Samadi v. Ohio Bureau of Employment Servs.*, 48 F. App'x 573 (6th Cir. 2002)........................14

*Samadi v. State, Bureau of Employment Servs.*, C-2-99-563, 2001
WL 175265 (S.D. Ohio 2001)..............................................................14

*Scott v. Eastman Chem Co.*, 275 F. App'x 466 (6th Cir. 2008) ..................................................20

*Scott v. Potter*, 182 F. App'x 521 (6th Cir. 2006) ........................................................11

*Smith v. Chrysler Corp.*, 155 F.3d 799 (6th Cir. 1998) ................................................10

*St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502 (1993)...................................................14

*Tafelski v. Novartis Pharm.*, 05-71547, 2007 WL 1017302 (E.D. Mich. 2007) ...........................19

*Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) ........................................13

*Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508 (6th Cir. 2012)........................17

*Upshaw v. Ford Motor Co.*, 576 F.3d 576 (6th Cir. 2009)....................................................14, 16

Statutes

169 A.L.R. Fed. 369........................................................................................19

29 C.F.R. 825.115(a)......................................................................................19

US.54846795.02

## I.     SUMMARY OF ARGUMENT

In April 2013, an employee at St. Mary's Living Center ("St. Mary's") reported that Plaintiff Jane Fiely ("Fiely"), who was St. Mary's' Director of Nursing ("DON"), got angry with her and grabbed her twice at work.  An investigation was conducted into this allegation, and the investigator concluded that Fiely had engaged in serious misconduct by grabbing the other employee.  Based on the conclusion regarding Fiely's inappropriate physical contact with another employee, as well as the fact that Fiely had been counseled previously regarding her conduct toward other employees, Regional Director of Operations Barry DeRossett ("DeRossett") decided that Fiely's employment at St. Mary's would end.

Fiely now claims this decision was discriminatory and based on her age.  In support, Fiely alleges that St. Mary's' administrator, Lorraine Fischio ("Fischio"), made comments to her before the April 2013 incident about retirement.  But even accepting Fiely's allegations as true, they do not give rise to any viable cause of action because Fischio did not make the decision to end Fiely's employment, there is no evidence that Fiely's age played any role in DeRossett's decision, and there is no evidence of age-based animus or pretext.  Other facts, like DeRossett's favorable treatment of Fiely when she was in the protected age group, belie her claim.  Fiely also claims she was denied rights under the FMLA and was discharged in retaliation for her exercising those rights.  But the undisputed facts show that, as a matter of law, Fiely's claims fail because, among other things, she was not entitled to leave under the FMLA, she never provided notice of her need for leave, and she never engaged in any activity protected by the FMLA.

Therefore, as there are no genuine issues of material fact and established case law demonstrates that Fiely's claims are without merit, summary judgment as a matter of law in Defendants' favor is appropriate on all Fiely's claims.

US.54846795.02

## II.     STATEMENT OF ISSUES TO BE DECIDED

(1)     Has Fiely established that age discrimination was the "but for" cause of the ending of her employment at St. Mary's, through either direct or indirect evidence?  If through indirect evidence, has Fiely established that the proferred legitimate, non-discriminatory and non-retaliatory reasons for the ending of her employment at St. Mary's are pretextual?

(2)     Has Fiely established that her employment at St. Mary's ended due to retaliation for exercising rights protected under the FMLA?

(3)     Has Fiely established that she was entitled to leave under the FMLA and there was unlawful interference with her right to receive such leave?

## III.     STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A.     Background Regarding Defendants And Fiely's Employment.

Atrium Centers, Inc. ("Atrium") through affiliated entities including Atrium Living Centers, Inc. and Essex Healthcare Corporation ("Essex"), operates nursing home facilities in Ohio, Kentucky, Wisconsin and Michigan.  (Susan Kreuser Declaration at ¶ 4.)  Among these is St. Mary's, a facility located in St. Mary's, Ohio.  (*Id.* ¶¶4-6.)  Fiely, who was born in 1950, started working at St. Mary's on February 16, 2005, as its DON.  (Jane Fiely Deposition at 10:3; 18:9.)  Fiely reported at all times to St. Mary's' Administrator.[1]  (*Id.* 29:11-12.)  As DON, Fiely also worked with Atrium's Regional Director of Clinical Services, who had responsibility for overseeing clinical operations at multiple facilities.  (*Id.* 29:11-14; Barry DeRossett Deposition at 111:17-112:19.)  From October 2006 to February 2011, Barry DeRossett, who was born in 1969, held the position of Regional Director of Clinical Services.  (DeRossett 8:18-20; Barry DeRossett Declaration at ¶ 4).

### B.     St. Mary's' Employment Policies.

During her employment at St. Mary's, Fiely received training on and was familiar with Atrium's employment policies, including its Equal Employment Opportunity policy, which states

---

[1]     Fiely's first supervisor at St. Mary's was Administrator Matt Russelburg, and after Russelburg until approximately October 2010, her supervisor was Administrator Brandi Slick.  (Fiely 29:15-18; 37:8-12.)

that personnel decisions will be made without regard to an individual's protected status, its

Family and Medical Leave policy, which outlines employees' rights under the FMLA, and its

Discipline policy, which states that "unacceptable conduct" that "may result in suspension

pending an investigation for discharge" includes "failure to follow the Company's Professional

Standards of Conduct."  (Defendant's Exhibits ("D. Ex.") E, F, H; Fiely 21-26; 27:20-25; 28:1-3;

27:20-25; 28:1-3.)  The Professional Standards of Conduct prohibit "engaging in violent or

threatening behavior of any kind."  (P. Ex. 34, at 21.)

**C.      Fiely Quits Without Notice And DeRossett Asks Her To Return To St. Mary's.**

On July 23, 2010, Fiely quit her job at St. Mary's without any advance notice by failing

to report to work on successive days.  (Fiely 32:18-33:19; D. Ex. T.)[2]  By September 2010,

St. Mary's had not filled its DON position and, at that time, Barry DeRossett was the Regional

Director of Clinical Services with responsibility for St. Mary's.  (DeRossett 124:8-13.)  He had

worked with Fiely previously while she was St. Mary's' DON, and because they had a good

working relationship and DeRossett thought she could still do her former job, he contacted Fiely,

who was 60 years of age at the time, and asked her to return to St. Mary's.  (Fiely 33:21-25;

DeRossett 108:23-24; 115:22-116:1; 124:8-15.)  Fiely accepted DeRossett's invitation and

resumed her employment as St. Mary's' DON on September 20, 2010.  (Fiely 34:1-2.)

**D.      Following Fiely's Return To St. Mary's, She Is Counseled For Issues Regarding Her
Job Performance And Conduct Toward Coworkers.**

In December 2010, Lorraine Fischio, who was born in 1961, took over as St. Mary's

Administrator and became Fiely's direct supervisor.  (Fiely 37:5-7; Fischio 5:16-17.)  Then, in

February 2011, DeRossett was promoted to Regional Director of Operations, which meant he

had overall operational responsibility for several facilities, including St. Mary's, and was

---

[2]      Before quitting, Fiely was issued three written disciplinary actions and was placed on a Performance
Improvement Plan.  (D. Exs. Q, R, S, X, Y; Fiely 64: 5-25; 65 -69; 74:25; 75:1-6.)

Fischio's direct supervisor. (DeRossett 115:22-25; 116:1-11; 212:1-14.) At first, Fischio and Fiely had a "very good" relationship. (Fiely 38:9-22.) In February 2011, Fischio issued Fiely two annual performance evaluations for the prior two years. (Fiely 61:7-21; D. Exs. N, O.) Fiely's performance was assessed as "Commendable" on both evaluations. (D. Exs. N, O.) Fiely considered these to be positive reviews. (Fiely 87:20.)

Then, in 2012, Fischio reported to DeRossett that she had received complaints about Fiely from other St. Mary's employees. (DeRossett 129: 4-10.) Fischio reported, among other things, that she received complaints that Fiely yelled at staff in the hallway and disciplined staff in inappropriate places. (DeRossett 129:4-10; Fischio 156:1-16.) Fischio counseled Fiely regarding Fiely's behavior toward other employees and Fiely publicly chastising or embarrassing employees. (Fiely 80:6-8, 18-21; 82:22-24; 83:14-55; 84:1-4.) In February 2013, Fischio issued Fiely another performance evaluation. (Fiely 62:23-25; D. Ex. P.) Fiely's performance was "Meet[ing] Expectations" and it noted that Fiely "has shown marked improvement in resident [and] staff relations." (D. Ex. P.) Fiely considered this a positive review. (Fiely 87:20.)

Following the Ohio Department of Health's annual compliance inspection and survey at St. Mary's in the spring of 2013, DeRossett received reports of issues with Fiely's performance during the survey. (DeRossett 141:22-25; 142:1-2.) Also, in early April 2013, Fischio reported to DeRossett that Fiely had yelled at other employees in a facility hallway. (Plaintiff's Exhibit ("P. Ex.") 29.) So, on April 18, 2013, DeRossett visited St. Mary's and met with Fiely to discuss her behavior and performance. (DeRossett 140:9-11.) During this meeting, DeRossett addressed the reports of Fiely yelling at staff in the hallways, her performance and behavior during the survey, and his overall concern about her performance. (*Id.* 157:9-13; 159:7-12; P. Ex. 29.) Fiely discussed her relationship with Fischio and said she felt Fischio did not want her at

-4-

St. Mary's.  (DeRossett 200: 23-25; 201:1-8; P. Ex. 29.)  DeRossett and Fiely also discussed how she and Fischio could work together better.  (Fiely 125:3-4; 141:6-8; DeRossett 162:19-21).  Fiely claims that, during this conversation, she told DeRossett that Fischio had talked to her several times about retirement and offered her a retirement package.  (Fiely 140:2-4.)  However, Fiely never told DeRossett that she believed she had been discriminated against or treated differently because of her age.  (Fiely 126:5-10.)

**E.**  **A St. Mary's Employee Reports That Fiely Grabbed Her Twice At Work.**

On the morning of Saturday, April 20, 2013, Fischio was contacted by and spoke with Kelsey Quellhorst, a State Tested Nursing Aide ("STNA") at St. Mary's.  (Fischio 227:15-22; 229:6-11.)  Quellhorst told Fischio that an incident had occurred with Fiely at work on the evening of Friday, April 19, 2013.  (Fischio 222:19-224:1.)  Quellhorst said a resident's family was upset because of where the resident was instructed to eat a meal, and Fiely confronted Quellhorst in the hallway outside the resident's room about it.  (*Id.*)  Quellhorst said that when Fiely confronted her, Fiely got angry and pushed her into a wall and held her there.  (*Id.*)  Quellhorst also said that she broke free, but Fiely grabbed her, pushed her again, and held her again.  (*Id.*)  This was the first Fischio had heard of this issue.  (Fischio 229:6-11.)

Before Quellhorst left work Friday evening, she wrote a statement detailing what happened and placed it under the door of Fischio's office.  (Quellhorst 104:14-16; P. Ex. 5.)  Quellhorst stated in that, "at approximately 5:30 p.m. on 04/19/2013 … [Fiely] began yelling at me and was invading my personal space.  She continued to raise her voice and yell at me while coming even closer to my face and proceeded by grasping my right shoulder very firmly and pushing me back into the wall."  (P. Ex. 5.)  She then stated that Fiely "yelled at me for quite a few minutes.  When I finally jerked my shoulder to get her hand off of me and starting walking away when [sic] she (Jane) grabbed my shoulder again to yell at me more … ."  (*Id.*)  In this

US.54846795.02

statement, Quellhorst identified fellow employees "Jill R., Ciara M. … and Darla" as witnesses to this incident.  (*Id.*)

After talking with Quellhorst, Fischio called Fiely, informed her of Quellhorst's report, and asked her to write a statement detailing her version of the incident.  (Fiely 104:18-21; 105:9-14.)  Fischio then reported the issue to DeRossett.  (Fischio 233:17-22.)  Fischio also asked St. Mary's employees Jill Roby, Ciara McConn, Darla Micheal, Elizabeth Miller, and Deanna Kirkpatrick to provide written statements that detailed what they witnessed during the April 19 incident.  (Lorraine Fischio Declaration  ¶ 6; P. Ex. 7.)

**F.**     **Fiely Calls In Sick On April 22.**

Fiely did not report to work on the morning of Monday, April 22, 2013.  (Fiely 107: 23-108:5.)  She contacted St. Mary's and reported that she was sick and would not be coming in.  (Fiely 113: 4-6, 19-21; 114:18-21.)  Later that day, Fiely visited a physician, who diagnosed her with sinusitis, prescribed her some medicine, and instructed her not to work for two more days.  (Fiely 109:10-11; 112:18-21; 150:19-151:25.)  Fiely informed St. Mary's that she would be out through April 24, returning on April 25, and provided a doctor's note to that effect.  (Fiely 113: 4-6, 19-21; 114:18-21; D. Ex. EE.)

**G.**     **Regional Director Of Human Resources Bob Huenefeld Conducts An Investigation Into Quellhorst's Report And Concludes That Fiely Grabbed Quellhorst Twice.**

Because Fiely was alleged to have engaged in inappropriate physical contact with another employee, DeRossett informed Susan Kreuser, Atrium's Vice President of Human Resources.  (Barry DeRossett Declaration ¶ 8.)  Kreuser then contacted Atrium's Regional Director of Human Resources, Bob Huenefeld ("Huenefeld"), who had operational responsibility for St. Mary's, and asked him to conduct an investigation of the incident.  (Robert Huenefeld Deposition at 121:13-17; 127:21-4.)  Huenefeld was born in 1943.  (Huenefeld 8:18-19.)  Before

-6-

beginning his investigation, Huenefeld was provided the written statements from Quellhorst, Roby, McConn, Micheal, Miller, and Kirkpatrick.  (Huenefeld 199:23-200:1; P. Ex. 7.)  During his investigation into Fiely's reported conduct, Huenefeld reviewed the employees' written statements, reviewed Quellhorst's personnel file, and visited St. Mary's to personally interview Quellhorst, Roby, McConn, and Fiely.  (Robert Huenefeld Declaration ¶ 9.)

When Huenefeld spoke with Quellhorst, among other things, she told him that Fiely grabbed her shoulder and pushed her back into the wall behind her, and that as she turned to leave, Fiely grabbed her shoulder again.  (Huenefeld 134:6-9; P. Ex. 1.)  Huenefeld also spoke with Roby, who told Huenefeld that she never saw Fiely grab Quellhorst, but she was not there for the entire incident and it may have happened before she arrived at the location of the incident or when she had to step away.  (Huenefeld 165:17-24; P. Ex. 1.)  When Huenefeld interviewed McConn, she stated that Fiely shoved Quellhorst, as she put her hand on Quellhorst's shoulder with enough force to push her into the wall. (Huenefeld 144:14-23; P. Ex. 1.)

During his investigation, Huenefeld also spoke with Fiely.  (Fiely 108:16-21.)  When he reached her by phone, he explained the reason for his call and asked if they could meet in person to discuss the April 19 incident.  (Fiely 108:16-19.)  Fiely said she was sick and could not meet in person, but could talk via phone.  (Fiely 107:23-108:5.)  During this conversation, Fiely claims she read to Huenefeld directly from a written statement she had prepared about the incident.  (Fiely 110:4-11; D. Ex. DD.).  Fiely claims that she told Huenefeld that she did not touch Quellhorst in any way during the incident.  (Fiely 110:22-25.)  Fiely never provided this written statement to Huenefeld or anyone else at St. Mary's.  (Fiely 110:2-3.)

At the conclusion of this investigation, Huenefeld drafted a memorandum memorializing the information he received from each individual, as well as his findings and conclusions, which

US.54846795.02

he sent to Kreuser, DeRossett, and Fischio on April 24, 2013.  (Huenefeld 150:19-20; Huenefeld Decl. ¶ 10; D. Ex. KK.)  Huenefeld concluded that Fiely had grabbed Quellhorst twice during the incident on April 19, and that Fiely had handled that situation in an unprofessional manner.  (P. Ex. 1.)  Huenefeld recommended that Fiely be disciplined up to and including discharge.  (Huenefeld 172:18-173:11; P. Exs. 1, 28.)  Huenefeld did not consider Fiely's age during his investigation process.  (Huenefeld Decl. ¶ 11.)

## H.     DeRossett Decides To End Fiely's Employment.

DeRossett was the decision-maker as to what action would be taken as a result of this incident.  (DeRossett 225:18-21.)  In making this decision, DeRossett considered the information from Huenefeld's investigation, the written statements employees submitted, and the discussion he had with Fiely the day before the incident.  (*Id.* 223:22-224:9.)  DeRossett did not consider Fiely's age during his decision-making process.  (DeRossett Decl. ¶ 12.)  Due to the investigation's conclusion and the statements from other employees regarding Fiely's physical contact with Quellhorst on April 19, as well as the fact that Fiely had been counseled previously regarding her conduct toward other employees, DeRossett decided that Fiely's employment at St. Mary's would end.  (DeRossett 223:22-224:4.)  DeRossett informed Fischio of this decision before it was communicated to Fiely.  (*Id.* 223:5-224:9.)  On the morning of April 25, 2013, Fiely was informed of the separation of her employment during a meeting at which Fischio and Fiely were present in person and DeRossett was present via telephone.  (Fiely 117:14-19.)  Thereafter, when asked why her employment at St. Mary's ended, Fiely has stated "that [she] was accused of hitting an aide."  (Fiely 188:12-19.)

## I.     St. Mary's Fills Fiely's Position.

After Fiely's employment ended, while St. Mary's searched for a new DON, Katherine Klosterman, who was working at St. Mary's at the time as an MDS Nurse, served as the interim

-8-

DON. (Fischio 265:14-266:13.) In June 2013, Erika Niemeyer, who is a registered nurse in Ohio and had worked at another long-term care facility as both a Charge Nurse and an Assistant DON, was selected to be St. Mary's' DON. (P. Exs. 25-26; Fischio 267:12-13.) Niemeyer was born in 1979, but her age played no role in her selection for this position. (Essex's Answers to Plaintiff's First Set of Interrogatories, p. 7; Fischio Decl. ¶ 13.)

## J.    **Fiely Never Sought Or Took Leave Under The FMLA.**

During her employment at St. Mary's, Fiely never sought or took leave under the FMLA and no one ever discouraged Fiely from taking such leave. (Fiely 86:1-5; 86 6-8.) No one affiliated with St. Mary's ever told her that anything to do with FMLA leave was a factor in the decision regarding her employment. (Fiely 128: 10-13.)

## IV.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not positively disprove the opponent's case; rather, it may prevail by establishing the lack of evidentiary support for that case. *See id*. at 325. A party must present more than mere speculation or conjecture to defeat a summary judgment motion. *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004). Neither the "mere existence of *some* alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), nor the existence of some "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.

## V.    ARGUMENT

Fiely claims that Defendants: (1) violated the FMLA by "interfering with, restraining or denying Fiely the exercise of rights provided under the FMLA and/or retaliating against Fiely by

-9-

discharging her for asserting or otherwise exercising his [sic] rights under the FMLA;" and

(2) violated Ohio Revised Code §§ 4112.02 and 4112.99 by discharging her because of her age.

(Compl. ¶¶ 25, 27.)  For the reasons detailed below, these claims should be dismissed.

**A.      Fiely's Age Discrimination Claim Cannot Survive Summary Judgment**

Age discrimination claims under Ohio law are analyzed under the same standards as

claims under the federal Age Discrimination in Employment Act ("ADEA").  *See Blizzard v.*

*Marion Technical Coll.,* 698 F.3d 275, 282–83 (6th Cir. 2012).  The plaintiff bears the burden to

"show that age was the 'but-for' cause of the employer's adverse action."  *Id.* at 283 *citing Gross*

*v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177 (2009)).  Thus, Fiely must show either direct or

indirect evidence of age discrimination.  *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d

544, 547 -548 (6th Cir. 2004).

**1.      Fiely Cannot Present Direct Evidence Of Age Discrimination.**

To establish age discrimination under the direct method, Fiely must produce "evidence

that proves the existence of a fact without requiring any inferences."  *Id.* at 548.  It is "evidence

from the lips of the defendant proclaiming his or her ... animus." *Smith v. Chrysler Corp.,* 155

F.3d 799, 805 (6th Cir. 1998) (internal quotation marks omitted).  "To establish direct evidence

of discrimination through a supervisor's comments made in the workplace, the remarks must be

clear, pertinent, and directly related to decision-making personnel or processes."  *Egli v. Cong.*

*Lake Club*, 2010-Ohio-2444 (internal citations and quotations omitted).  "Comments or remarks

that require a factfinder to draw further inferences to support a finding of discriminatory animus

do not constitute direct evidence."  *Krupnick v. ARCADIS of U.S., Inc.*, 2:12-CV-273, 2014 WL

996239 (S.D. Ohio Mar. 13, 2014) (internal citations and quotations omitted).  Defendants

anticipate that Fiely will argue that Fischio's alleged comments to her about retirement constitute

direct evidence of age discrimination.  Put simply, they do not.

-10-

Fiely claims Fischio raised the issue of retirement with her on four or five occasions between February 2013 and the end of her employment.  (Fiely 41: 16- 25; 42: 1- 5.) Specifically, Fiely claims that Fischio:  (1) asked "why [she] didn't retire" and if she had "thought any more about retirement" during discussions about the stressful nature of their work; (2) told her that she could find a job anywhere and said "why don't [you] just retire"; (3) commented that Fiely "should be old enough to get thinking about retirement"; and (4) contacted Fiely approximately two weeks before her employment ended and "told [her] she had a nice retirement package for [her] if [Fiely] was interested."  (Fiely 41:4-42:9; 48:14-16.) Even if these comments occurred as Fiely claims, they do not equate to statements about age and do not establish direct evidence of age discrimination.

To begin, it is well established in the Sixth Circuit that comments by one's supervisor about retirement, without more, are not direct evidence of age discrimination, as the word "retirement" is not a proxy for "age."  *See Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012) (holding that questions concerning retirement plans alone do not constitute direct evidence of age discrimination); *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (to conclude that the remark "Why don't you just retire and make everyone happy?" was direct evidence of age discrimination would require an inference to be drawn, because " 'retire' and 'age' are not synonyms"); *DeBarr v. Cleveland Clinic Found.*, 918 F. Supp. 2d 676, 683 (N.D. Ohio 2013) (comments about retirement do not mean that plaintiff was terminated because of age, and require inferences by a fact finder); *Krupnick,* 2014 WL 996239 at 6 ("There is no basis to conclude that a reference to retirement is *ipso facto* evidence of age discrimination" because "conversations regarding retirement are not inherently discussions about age").

-11-

Also, even if these conversations occurred as Fiely claims and were about Fiely's age (which they were not), they still do not constitute direct evidence of age discrimination. Allegedly ageist remarks are evaluated by considering four factors:  (1) whether they were made by a decision-maker or agent in the scope of her employment; (2) whether they were related to the decision-making process; (3) whether they were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the alleged adverse action.  *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 527 (6th Cir. 2012).  To meet this standard, the remarks must go to the heart of the decision to take adverse employment action. *Krupnick*, 2014 WL 996239 at 5 (S.D. Ohio Mar. 13, 2014) (not sufficient evidence that retirement questions and comments were related to plaintiff's termination).

For a number of reasons, considering these factors together shows that Fischio's alleged comments are not direct evidence of discrimination.  Even if Fischio may qualify as a decision-maker, her alleged remarks are completely unrelated to the employment decision in question, which stemmed from Fiely's conduct on April 19, 2013.  Moreover, it is undisputed that DeRossett—not Fischio—made the decision to end Fiely's employment.  (DeRossett 225:18-21.) Also, Fischio's alleged comments were ambiguous and isolated, as Fiely has admitted they were made during discussions with Fischio about their work-related stresses and frustrations.  (Fiely 43: 1-10.)  Claiming these remarks are discriminatory ignores the context in which Fischio allegedly made them.  *See Leonard v. Twin Towers*, 6 F. App'x 223, 230 (6th Cir. 2001) (court "must carefully examine the nature of the [retirement] inquiries and the context in which that inquiry was made").  Finally, even though one of Fischio's alleged comments occurred two weeks before Fiely's employment ended, there was a significant intervening event between that alleged remark and the ending of Fiely's employment, which resulted in the ending of Fiely's

employment.  Therefore, when viewed in the totality of the circumstances, Fischio's alleged remarks do not constitute direct evidence of discriminatory intent.

### 2.    Fiely Cannot Prove Age Discrimination Under The Indirect Method.

Without direct evidence, Fiely must prove her case under the *McDonnell Douglas* burden-shifting paradigm.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To establish a *prima facie* case of age discrimination, Fiely "must demonstrate (1) that [she] was a member of the statutorily protected class, (2) that [she] was discharged, (3) that [she] was qualified for the position, and (4) that [she] was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class."  *Franks v. Vill. of Bolivar*, 5:11CV701, 2013 WL 5279356, *3 (N.D. Ohio Sept. 18, 2013).  The burden then "shift[s] to the employer to articulate some legitimate, non-discriminatory reason" for its action.  *McDonnell Douglas*, 411 U.S. at 802.  This burden is merely one of production, as the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Once that has been met, the plaintiff must show that the reason is pretextual.  *Id.*  Even assuming Fiely can establish a *prima facie* case, her claim fails because there was a legitimate, non-discriminatory reason for her employment to end and there is no evidence of pretext.

### a.    Fiely's Employment Ended For Legitimate, Non-Discriminatory Reasons.

Fiely's age discrimination claim fails as a matter of law because there was a legitimate, non-discriminatory reason for ending her employment:  After Quellhorst reported that Fiely made inappropriate physical contact with her at work on April 19, 2013, St. Mary's conducted an independent investigation that substantiated Quellhorst's report.  Based on the investigation's conclusion and the statements from other employees regarding Fiely's physical contact with Quellhorst, as well as the fact that Fiely had been counseled previously regarding her conduct

toward other employees, DeRossett decided that Fiely's employment at St. Mary's would end. (DeRossett 225:18-21.)

        b.    <u>Fiely Cannot Demonstrate Pretext</u>

In light of this proffered legitimate, non-discriminatory reason, Fiely must carry her overall burden of persuasion and prove that the reason is pretextual.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 518 (1993).  She must show that DeRossett's decision was, in fact, motivated by unlawful discrimination.  *See id.* at 517.  His stated reasons "cannot be proved to be 'a pretext for *discrimination*' unless it is shown *both* that the reason was false, *and that* discrimination was the real reason."  *Id.* at 515 (emphasis in original); *Franks,* 2013 WL 5279356.  Fiely must show that "age actually played a role in [the decision-making] process and had a determinative influence on the outcome."  *Id.*  Fiely's burden in this regard is substantial, as pretext means "a lie, specifically a phony reason for some action" and cannot be established even through a showing that the decision at issue was erroneous, mistaken, or baseless.  *Samadi v. State, Bureau of Employment Servs.*, C-2-99-563, 2001 WL 175265 (S.D. Ohio Feb. 13, 2001) *aff'd sub nom. Samadi v. Ohio Bureau of Employment Servs.*, 48 F. App'x 573 (6th Cir. 2002); *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 586 (6th Cir.2009); *Loyd v. Saint Joseph Mercy Oakland*, 13-2335, 2014 WL 4434200 (6th Cir. Sept. 10, 2014).  Fiely can show pretext through evidence that the reason: (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) is insufficient to explain the adverse employment action.  *Upshaw,* 576 F.3d at 586 (6th Cir. 2009).  Fiely cannot meet this substantial burden here.

Fiely may argue pretext exists based on Fischio's alleged statements to her about retirement.  But, as detailed above, these alleged remarks are completely unrelated to the employment decision in question, and it is undisputed that DeRossett—not Fischio—made that decision.  Additionally, the alleged comments were ambiguous and occurred only on a handful of

-14-

isolated occasions, and the context in which Fischio allegedly made them shows that they were not discriminatory.  Therefore, these alleged comments are not evidence of pretext.

Fiely also bases her age discrimination claim on her belief that DeRossett and Huenefeld were motivated by her age.  (Fiely 126:15-127:13.)  At deposition, Fiely stated she believed DeRossett discriminated against her simply because he "backed" Fischio regarding the ending of her employment and, when he visited St. Mary's, she "didn't see him much and he always spoke with [Fischio]."  (*Id.*)  In addition to being incorrect, as Fischio never made any decision for DeRossett to "back," this claim is nothing more than a conclusory opinion.  Likewise, Fiely stated she believed Huenefeld discriminated against her because of his conclusion that St. Mary's "needed to let [Fiely] go," and due to the documentation in her file regarding performance and conduct issues, which she believes "makes my history look bad."  (Fiely 126: 21-127:13.)  Again, conclusory opinions such as these do not create genuine issues of material fact or support a pretextual inference.  A conclusory statement asserting an unsupported opinion about the issue is insufficient to create a genuine issue of material fact.  *Hargabus v. Cedar Fair, L.P.*, No. 1:04CV1751, 2005 WL 2233248, *6 (N.D.Ohio Sept.14, 2005) *citing Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) ("conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact.").  At bottom, Fiely has no evidence that the actions of either DeRossett or Huenefeld were a pretext for discrimination.

Fiely maintains, however, that she did not engage in the conduct for which her employment was ended.  (Fiely 102:14-16.)  But this contention is irrelevant in evaluating Fiely's discrimination claim, as to survive summary judgment it is not enough for her to argue that St. Mary's was mistaken or incorrect in its conclusions.  The Sixth Circuit has uniformly held that, when an "employer had an honest belief in the proffered basis for the adverse

-15-

employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous." *Upshaw*, 576 F.3d at 586 -587 (citations omitted).  "The honest-belief rule provides that an employer is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless.  An employer's pre-termination investigation need not be perfect in order to pass muster under the rule." *Loyd v. Saint Joseph Mercy Oakland*, 13-2335, 2014 WL 4434200, *8 (6th Cir. Sept. 10, 2014) (internal citations omitted).  Instead, the key inquiry is instead whether the employer made a reasonably informed and considered decision before taking an adverse employment action. *Id.*

Here, as in *Loyd*, the undisputed facts show that St. Mary's "took witness statements and made a reasonable assessment of the available evidence before" ending Fiely's employment. (DeRossett 223:22-224:9: Huenefeld 172:18-173:11).  After receiving Quellhorst's report of Fiely's misconduct, Huenefeld conducted an internal investigation into the incident.  (Huenefeld 121:13-17; 127:21-4.)  During this investigation, Quellhorst stated that Fiely "grabbed her shoulder" twice, and one witness—McConn—stated that she saw Fiely put her hand on Quellhorst with enough force to push her into the wall.  (P. Ex. 1.)  As a result, Huenefeld determined that Fiely had acted inappropriately by grabbing Quellhorst twice, which warranted disciplinary action up to and including discharge, and the undisputed evidence shows that there was a factual basis for this determination.  (P. Ex. 1.)  The undisputed evidence also shows that DeRossett made his decision after reviewing Huenefeld's report and concluding that Fiely made inappropriate physical contact with Quellhorst at work on April 19, 2013.  (DeRossett 223:22-224:9; 225:18-21; DeRossett Decl. ¶¶ 10-12.)  There simply is no evidence DeRossett and Huenefeld did not honestly believe that their actions were justified by the facts of the April 19

-16-

incident as they understood them.  *See Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, 513 (6th Cir. 2012).  Under these circumstances, DeRossett's decision was entirely lawful.

If anything, the undisputed facts show the complete absence of age-based animus.  After Fiely quit in July 2010, DeRossett reached out to her and asked her to return to St. Mary's. (Fiely 33:21-25; DeRossett 108:23-24; 115:22-25; 116:1; 124:8-15.)  Fiely was 60 years of age at that time.  This favorable action toward Fiely while she was in the protected age group makes it unlikely that DeRossett would later discriminate against her on the basis of age.  *Phelps v. Jones Plastic & Eng'g Corp.*, 20 F. App'x 352, 358 (6th Cir. 2001); *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995).  Then, after Fiely returned, she received evaluations that she admits were "positive."  (Fiely 87:20.)  Moreover, Huenefeld, Fischio, and DeRossett are all in the protected age class, with Huenefeld being seven years <u>older</u> than Fiely. (DeRossett 8:18-20; Fischio 5:16-17; Huenefeld 8:18-19.)

At bottom, it was not until Fiely engaged in serious misconduct that her employment ended.  While she rather expectedly disputes the propriety of that action, she cannot dispute that DeRossett honestly believed the stated reason for it.  Fiely cannot show that the decision to end her employment was pretextual, so summary judgment is appropriate.

**B.**   **Fiely's FMLA Claims Cannot Survive Summary Judgment.**

**1.**   **Fiely's FMLA Interference Claim Fails Because She Was Not Entitled To Leave, Never Provided Notice Of Her Intention To Take Leave, And Was Never Denied Any Benefits To Which She Was Entitled.**

To establish a *prima facie* case of FMLA interference, Fiely must show that:  (1) she was an eligible employee; (2) Defendants were employers under the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided notice of her intention to take leave; and (5) she was denied FMLA benefits to which she was entitled.  *See Donald v. Sybra, Inc.,* 667 F.3d 757, 761

(6th Cir. 2012). Fiely's claim cannot survive summary judgment because she cannot meet the third, fourth, or fifth elements of a *prima facie* case.

Fiely's interference claim fails at the outset because she was not entitled to leave under the FMLA.[3] Fiely visited her doctor once, was diagnosed with a sinus infection, was prescribed medication, and was restricted from working for three days. (Fiely 150: 19-151:25; D. Ex. EE.) She did not receive inpatient care. (Fiely151: 24-25.) On nearly identical facts, the Sixth Circuit held that sinusitis, the condition Fiely claims entitled her to leave, does not qualify as a serious health condition under the FMLA. In *Beaver v. RGIS Inventory Specialists, Inc.*, 144 F. App'x 452, 454 (6th Cir. 2005), at the time of the plaintiff termination, she was diagnosed with sinusitis, bronchitis, and an ear infection, was prescribed antibiotics, but the court found that "those illnesses are all routine, short-term illnesses not covered by the FMLA." *Id.* at 456. The court continued to state that the doctor's note, which stated that the plaintiff "would be incapacitated for only a 'few days,'" showed the employee was not entitled to FMLA protection. *Id.* Here, like the plaintiff in *Beaver,* Fiely was diagnosed with a severe sinus infection and restricted from working for just three days. *See* 29 C.F.R. 825.115(a) (defining "continuing treatment" to require a "period of incapacity of more than three consecutive, full calendar days").[4] Thus, Fiely's claimed illness does not qualify as a "serious medical condition" and she was not entitled to FMLA leave.

---

[3] The FMLA entitles an employee to leave if the employee has a "serious health condition," which is defined as an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility, or continuing treatment by a health care provider. 29 U.S.C. § 2612(a)(1)(D); 29 U.S.C. § 2611(11).

[4] *See also, Hott v. VDO Yazaki Corp.*, 922 F. Supp. 1114, (W.D. Va. 1996) (stating that sinobronchitis is not a serious health condition and granting summary judgment to the employer); *Beal v. Rubbermaid Commercial Prods. Inc.,* 972 F.Supp. 1216, 1225 (S.D. Iowa 1997) (holding that an employee's episode of bronchitis was not a serious health condition triggering protection under the FMLA); *Tafelski v. Novartis Pharm.*, 05-71547, 2007 WL 1017302 (E.D. Mich. Mar. 28, 2007) (holding that Plaintiff's condition was not a serious health condition as defined under the FMLA where the employee presented a doctor's note indicating he would be off work for seven days due to sinusitis/ otitis). *See also* 169 A.L.R. Fed. 369 (Originally published in 2001).

-18-

Furthermore, even if Plaintiff had a "serious medical condition" (which she did not), her FMLA interference claim still fails.  Fiely does not even claim that she provided notice of her need for leave and admits that she never requested or inquired about it.  (Fiely 85: 21- 87:3.)  Instead, Fiely claims that she "was never offered FMLA" and "was discharged prior to being able to ask for it."  (Fiely 155:2-8; 158:15-16.)  But "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the [FMLA]."  29 C.F.R. § 825.303(b).  As Fiely never provided St. Mary's with notice of her need for or intention to take leave, she was never denied any benefits under the FMLA to which she was entitled.  Thus, Fiely's FMLA interference claim cannot proceed.

     **2.**     **Fiely's FMLA Retaliation Claim Fails Because She Never Engaged In Protected Activity, Her Employment Ended For A Legitimate, Non-Retaliatory Reason, And There Is No Evidence Of Pretext.**

To establish a *prima facie* case of FMLA retaliation, Fiely must show that:  (1) she was engaged in an activity protected by the FMLA; (2) her employer knew she was exercising her FMLA rights; (3) she experienced an adverse action after St. Mary's learned of her exercise of FMLA rights, and (4) a causal connection exists between the protected activity and the adverse action.  *See Rush v. E.I. DuPont DeNemours & Co.,* 911 F.Supp.2d 545, 564 (S.D. Ohio 2012).

Fiely cannot meet any of the elements of an FMLA retaliation claim.  First, she never engaged in any activity protected by the FMLA, as she admitted at deposition that she never sought or took leave under the FMLA.  (Fiely 85: 21- 86:8.)  Second, no one affiliated with St. Mary's knew that she was exercising any rights protected by the FMLA, so she could not have been retaliated against for doing so.  *See Scott v. Eastman Chem Co.*, 275 F. App'x. 466, 482 (6th Cir. 2008) ("one cannot retaliate against an employee for engaging in protected activity unless he knew the employee had done so.")  Third, because Fiely never engaged in any activity protected by the FMLA, she naturally cannot present any evidence of a causal connection to the

ending of her employment.  Finally, even if Fiely could establish a *prima facie* case (which she cannot), as detailed above there was a legitimate, non-retaliatory reason for the ending of Fiely's employment that she cannot show to be pretextual.  In sum, even assuming Fiely engaged in some activity protected by the FMLA (which she did not), the FMLA "is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave."  *Carpenter v. Permanente*, 1:04 CV 1689, 2006 WL 2794787 (N.D. Ohio Sept. 27, 2006) *citing* 29 C.F.R. §§ 825.216(a)-(d), 825.312(d).  Therefore, Fiely's FMLA retaliation claim cannot survive summary judgment.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment and enter judgment in their favor as to all of Fiely's claims.

Respectfully submitted,

**FAEGRE BAKER DANIELS LLP**


*s/Brian. R. Garrison*
Brian R. Garrison (Indiana #26367-49),
*admitted pro hac vice*
Sarah E. Caldwell (Indiana #29850-03),
*admitted pro hac vice*
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
E-mail: brian.garrison@faegrebd.com
          sarah.caldwell@faegrebd.com

Local Counsel
**ZASHIN & RICH CO., LPA**
Stephen S. Zashin (Ohio #0064557)
Ami J. Patel (Ohio #0078201)
950 Main Avenue, 4th Floor
Cleveland, OH  44113
Telephone:  (216) 696-4441
Facsimile:  (216) 696-1618

-20-

E-mail:     ssz@zrlaw.com
                ajp@zrlaw.com

*Attorneys for Defendants Essex Healthcare*
*Corporation and Atrium Living Centers, Inc.*

-21-

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE WITH LOCAL RULE 7.1</u>

I hereby certify that this case has been assigned to the standard track and that this Brief,

which pertains to a dispositive motion, complied with the 20-page limitation pursuant to Local

Rule 7.1(f).  Further, I hereby certify that a copy of the foregoing was served by the Court's

CM/ECF system on the following:

> John D. Franklin
> Kera L. Paoff
> **WIDMAN & FRANKLIN, LLC**
> 405 Madison Avenue, Suite 1550
> Toledo, OH  43604
> john@wflawfirm.com
> kera@wflawfirm.com

> *s/Brian. R. Garrison*
> Brian R. Garrison (Indiana #26367-49),
> *admitted pro hac vice*
> Sarah E. Caldwell (Indiana #29850-03),
> *admitted pro hac vice*
> 300 North Meridian Street, Suite 2700
> Indianapolis, IN 46204-1782
> Telephone: (317) 237-0300
> Facsimile:  (317) 237-1000
> E-mail: brian.garrison@faegrebd.com
>              sarah.caldwell@faegrebd.com

> Local Counsel
> **ZASHIN & RICH CO., LPA**
> Stephen S. Zashin (Ohio #0064557)
> Ami J. Patel (Ohio #0078201)
> 950 Main Avenue, 4th Floor
> Cleveland, OH  44113
> Telephone:  (216) 696-4441
> Facsimile:  (216) 696-1618
> E-mail:      ssz@zrlaw.com
>                  ajp@zrlaw.com

> *Attorneys for Defendants Essex Healthcare*
> *Corporation and Atrium Living Centers, Inc.*