*St. Mary's Living Center*
*1209 Indiana Avenue*
*St. Mary's Ohio  45885*


January 17, 2005

Ms. Jane Fiely
3192 State Rte. 219
Coldwater, OH  45828

Dear Jane:

It is my pleasure to extend to you an offer of employment with Essex Healthcare
Corporation.  The position we have discussed is Director of Nursing Services at St.
Mary's Living Center.

The details of the job offer are as follows:

1. Salary base of $58,500 annually; paid in equal bi-weekly installments, pro-rated if
   your hire date falls within the pay period.  You are also eligible for the bonus
   program;

2. Paid Time off (PTO) accrual as provided in the Company Handbook.  We have
   agreed to increase your first year rate of accrual to fifteen (15) days;

3. You will be an employee-at-will, as are all Essex employees;

4. Your start date will be on or before February 16, 2005;

5. Health benefits will be available for you and your family on an individual
   program basis the first of the month following your thirty (30) day introductory
   period.

Please indicate your acceptance of this offer by signing the enclosed copy and returning
the original to me as soon as possible.  This offer, if not accepted beforehand, will expire
on January 31, 2005.  Please accept my sincere congratulations as I welcome you to the
Essex team!

Sincerely,

Matt Russelburg
Administrator
St. Mary's Living Center

DEFENDANT'S
EXHIBIT
A
8-12-14
PENGAD 800-631-6989

Offer Letter between Essex Healthcare Corporation and Jane Fiely
Page -2-

I have read, understood, and accept the foregoing terms and conditions of employment. I further understand that while my compensation, benefits and job duties may change from time to time without a written modification of this agreement, the at-will terms of my employment is a condition of employment which cannot be altered or modified except in writing signed by me and the Company President.

Accepted By: _____           Date: _1-24-05_____
                    Jane Fiely

4

### Director of Nursing Orientation Checklist

Name __JANE Fiely__     Date of Hire __2/16/05__

| Orientation items | Trainer Signature | DNS Signature | Date |
|---|---|---|---|
| Internal Polices/procedures | | | 2-1(05 |
| Employee Handbook | M | J. Fiely | |
| Resident rights | M | D. Fiely | |
| Hippa | M | D. Fiely | |
| Abuse and neglect | M | D. Fiely | |
| Fire evacuation plan | M | D. Fiely | |
| Disaster plans | M | D. Fiely | |
| Resident advocate list | M | D. Fiely | |
| Smoking policy | M | D. Fiely | |
| Blood borne pathogens | M | D. Fiely | |
| | | | |
| Administrative | | J. Fiely | |
| Pager number/on call numbers | M | | |
| DNS keys | | | |
| List of key staff | M | D. Fiely | |
| Benefits | M | D. Fiely | |
| Pay day | M | D. Fiely | |
| Request off procedures | | | |
| Routine weekly meetings and purpose/schedule | | | |
| Facility layout | | | |
| Morning stand-up | | | |
| AM Clinical review | | | |
| Staffing patterns, schedules, procedures | M | D. Fiely | |
| Nursing budget/labor PPD's | | D. Fiely | |
| Nurse Aide in-service hours tracking | | | |
| Administrator goals and expectations of the facility | M | D. Fiely | |
| Administrator numbers | M | D. Fiely | |
| Central supply ordering procedures | M | D. Fiely | |
| Other: | | | |
| | | | |
| | | | |



DEFENDANT'S EXHIBIT

B

8-12-14

PENGAD 800-631-6989

5

*Director of Nursing Orientation Checklist*

Name  JANE Fiely                    Date of Hire  2/16/05

| Orientation items | Trainer Signature | DNS Signature | Date |
|---|---|---|---|
| Regional | | | 2-16- |
| Regional Key staff | N | J. Fiely | |
| Regional Meetings | M | J. Fiely | |
| Company mission/quality expectations | N | J. Fiely | |
| Corporate reporting/standards of care | M | J. Fiely | |
| Survey history/survey preparation and management/survey targets | M | J. Fiely | |
| DNS Priority and oversight | M | J. Fiely | |
| Clinical Board | M | J. Fiely | |
| Reading nurses notes | | | |
| Regional communication | M | J. Fiely | |
| Falls program | M | J. Fiely | |
| Wound program | M | J. Fiely | |
| Wt loss program | N | J. Fiely | |
| Restraint program | M | J. Fiely | |
| Notification of change | M | J. Fiely | |
| Abuse and neglect | M | J. Fiely | |
| Elopement programs | M | J. Fiely | |
| Forms | M | J. Fiely | |
| Policy manuals | M | J. Fiely | |
| QA meetings | M | J. Fiely | |
| Medical director reports | M | J. Fiely | |
| Pharmacy recommendations | | J. Fiely | |
| Role in admissions and discharge tracking | M | J. Fiely | |
| NA care sheets | M | J. Fiely | |
| | | | |
| | | | |
| Social service | | | |
| Procedures/role/communication | M | J. Fiely | |
| Activities | M | J. Fiely | |
| Procedures/role/communiation | | | |
| Dietary | | | |
| Procedures/role/communication | | | |
| Business office | | | |
| Procedures/role /comm.. | | | |
| Maintanence/housekeping | V | | |
| Procedures/role/comm.. | | | |

ATRIUM/FIELY 52

6

## Director of Nursing Orientation Checklist

Name _June Fiely_      Date of Hire _2-16-05_

| Orientation items | Trainer Signature | DNS Signature | Date |
|---|---|---|---|
| Facility Clinical | | | 2-16 |
| Chart order and format | M | J. Fiely | |
| Clinical forms | M | J. Fiely | |
| 24 hr report | M | J. Fiely | |
| MAR/TAR | M | J. Fiely | |
| Nurse aide flow sheets | M | J. Fiely | |
| Weighing procedures | | J | |
| Shift report/communication | M | J. Fiely | |
| Narcotic count sheet | | | |
| Med storage/ordering/delivery | M | J. Fiely | |
| Lab procedures | M | J. Fiely | |
| Diagnostics, x ray co. ambulance. | M | J. Fiely | |
| Meal consumption records | M | J. Fiely | |
| BM records | | | |
| I&O records | | | |
| Functions of nsg station | M | J. Fiely | |
| Change over procedures | | J | |
| | | | |
| Other | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

ATRIUM/FIELY 53

# ESSEX HEALTHCARE

## ACKNOWLEDGEMENT OF DISCIPLINE PROCESS

I acknowledge that I have received the policy regarding our Discipline and have had an opportunity to ask questions about this policy and understand it fully.



_____       _____
employee signature                                              date



DEFENDANT'S
EXHIBIT

PENGAD 800-631-6989

8-12-14

# EMPLOYEE CORPORATE COMPLIANCE
### ACKNOWLEDGEMENT

I, _Jane Fiely_
(Print employee name)

_XXX-XX-XXX_
(Social Security Number)

as an employee of Essex Healthcare Corporation, acknowledge that:

_JF_ _12-16-05_ I have received and read the Standards of Conduct, and
(Initials) (Date)

_JF_ _12-16-05_ my continued employment with Essex Healthcare
(Initials) (Date)   Corporation depends on my full Compliance with all
Company rules, policies, and procedures; and obedience to
all local, state, and federal laws, rules, and regulations
governing Medicare or other government funded health care
programs, and

_JF_ _12-16-05_ neither the Standards of Conduct nor this form:
(Initials) (Date)   - create a contract for employment,
- alter my status as an at-will employee, or
- create a policy of progressive discipline.

_Jane Fiely_
(Employee's signature)

_2-16-05_
(Date)

**DEFENDANT'S EXHIBIT**
D
8-12-14
PENGAD 800-631-6989

---

## Acknowledgment and Receipt of Employee Handbook

I acknowledge receipt of the Company's Handbook. I agree to carefully read the contents of the handbook, and understand that the handbook describes certain Company policies and procedures and is a guideline to assist Company employees in understanding and following those policies and procedures. I understand that this handbook supersedes any handbook(s) previously distributed by the Company.

I further understand that the handbook is subject to change at the discretion of the Company and that the Company may deviate from, discontinue, modify or change policies and procedures as it deems necessary, except for the at-will status of employment. I accept responsibility for understanding and keeping informed of the contents of the handbook and any changes. If verification or clarification of the contents of the handbook are necessary, I understand it is my responsibility to contact my Supervisor.

I understand that nothing contained in the handbook, any policy, procedure or document issued by the Company, or any statement of supervisors or managers, either verbal or written, is intended to create or suggest a contract between the Company and me for either employment or the provision of any benefit. I acknowledge that I am employed at the will of the Company and that my employment may be terminated by me or by the Company at any time, with or without notice or cause. I further agree and understand that no supervisor, manager or representative of the Company has any authority to enter into an agreement for employment for any specified period of time or to make any agreement contrary to this policy except in a written agreement expressly stating otherwise and signed by me and the President of the Company.

_Jane Fiely_
Employee Name

_Witness Name_
Witness Name

_[signature]_
Signature

_2-16-05_
Date

This signed Acknowledgment and Receipt will be retained in your personnel file.

# ATRIUM CENTERS INC.
## POLICIES AND PROCEDURES

**Subject:** ˙EQUAL EMPLOYMENT OPPORTUNITY    **HR-102**

**Effective:**  11/97                                     **Revision:**   04/05

## I.    PURPOSE

To state Atrium's guidelines with respect to Equal Employment Opportunity laws and code of conduct.

## II.    GUIDELINES

Atrium shall not tolerate discrimination that is based on race, religion, color, national origin, sex, sexual orientation, age, disability or veteran status.  The Company shall comply with all applicable federal, state, and local labor laws.

All employment actions including recruitment, selection, compensation, promotion, demotion, transfer, training, discipline, termination, layoff, compensation, and benefits shall be made exclusively on the basis of job related factors.  Personnel decisions shall be made without consideration of age, gender, sexual orientation, color, race, creed, religion, national origin, disability, or other factors prohibited by law.  Selection and placement decisions are based on skills, abilities, and potential of each applicant.

This guideline includes the prohibition of the use of Company funds for promotional purposes that could be deemed sexist, anti-Semitic, or racist.

This guideline prohibits employees, while performing Company business, from using sexist, racial, anti-Semitic, religious, or other illegal discriminatory remarks.

The facility/location will post the required notice that informs applicants and employees of his/her rights under Equal Employment Opportunity.

Violation of this guideline is grounds for disciplinary action up to and including termination.

## III.    PROCEDURES

Managers and Supervisors have an affirmative obligation to ensure that equality of opportunity is carried out in his/her areas of responsibility.  Any violations are to be reported to Human Resources.

Page 1 of 2



DEFENDANT'S EXHIBIT E  8-12-14  PENGAD 800-631-6989

## EQUAL EMPLOYMENT OPPORTUNITY
### HR-102

If an employee believes that he/she or any other employee has been denied an Equal Employment Opportunity, or has reason to believe that this guideline has been violated, he/she has an affirmative duty to contact his/her Supervisor or the Human Resources Department so that prompt review and appropriate action can be taken. The employee should follow the problem resolution procedure to report a violation of this guideline. Confidentiality will be expected and employees will not be penalized nor retaliated against should they use this procedure. The facility/office management and Human Resources will conduct an investigation of a violation of this guideline.

**FORM**

Equal Employment Opportunity Guideline Statement PG-102

ATRIUM/FIELY 341

Page 2 of 2

# ATRIUM CENTERS INC.

## EQUAL EMPLOYMENT OPPORTUNITY
## GUIDELINE STATEMENT

Atrium is, and always has been, an equal employment opportunity employer.  It is the Company's policy to ensure equal employment opportunity in all aspects of employment. The Company strives to employ and promote the best-qualified person for each job and, in doing so, will comply with all legal requirements.

It is the Company's policy not to tolerate discrimination which is based on race, religion, color, national origin, sex, sexual orientation, age, disability or veteran status.  The Company shall comply with all applicable federal, state, and local labor laws.

All employment actions including recruitment, selection, compensation, promotion, demotion, transfer, training, and termination shall be made exclusively on the basis of job-related factors.  Personnel decisions shall be made without consideration of age, gender, sexual orientation, color, race, creed, religion, national origin, disability, or other factors prohibited by law.  Selection and placement decisions are based on skills, abilities, and potential of each applicant.

This policy includes the prohibition of the use of Company funds for promotional purposed which could be deemed sexist, anti-Semitic or racist.

This policy prohibits employees, while performing Company business, from using sexist, racial, anti-Semitic, religious or other illegal discriminatory remarks.

Violation of this policy is grounds for disciplinary action up to and including termination.

PG-102

ATRIUM/FIELY 343

# ATRIUM CENTERS
# POLICIES AND PROCEDURES

**Subject:** FAMILY & MEDICAL LEAVE OF ABSENCE (FMLA)  HR-505

**Effective:** 12/01                                    **Revised:** 04/05, 2/11,10/13

---

### I.  PURPOSE

The purpose of the policy is to comply with the Family and Medical Leave Act of 1993 (FMLA) and to allow employees to take leave to address family responsibilities or their own serious health conditions.

### II.  GUIDELINES

It is the intention of Atrium to grant leaves of absence in accordance with the Family & Medical Leave Act of 1993 (FMLA).

#### A.  FAMILY AND MEDICAL LEAVE ACT (FMLA)

Leaves of absence will be provided in accordance with the Family & Medical Leave Act of 1993, for the purposes of birth or adoption of a child or placement of a foster child or to care for an employee's own serious health condition or that of a family member (as defined below).

#### DEFINITIONS

<u>Son or Daughter</u> – For purposes of family leave eligibility, son or daughter is defined as a biological, adopted or foster child, a step child, a legal ward, or a child of an employee where the employee has a legal standing in place of a parent. The son or daughter is either under 18, or if over 18, is incapable of self-care because of mental or physical disability.

<u>Parent</u> – For purposes of FMLA eligibility, parent is defined as biological or someone whose legal standing is in place of the parent.

<u>Serious Health Condition</u> – For purposes of FMLA eligibility, a serious health condition is defined as an illness, injury, impairment, or physical or mental condition which involves in-patient care in a hospital, hospice, residential healthcare facility; a period of incapacity requiring <u>more than</u> three (3) days absence from work and continuing treatment by a healthcare provider; or continuing treatment by a healthcare provider for a chronic or long-term health condition that is so serious that, if not treated would likely result in incapacity of <u>more than</u> three (3) days; or continuing treatment by or under the supervision of a healthcare provider of a chronic or long-term condition or disability that is incurable; or prenatal care.

Page 1 of 7



DEFENDANT'S EXHIBIT
F
8-12-14

FAMILY AND MEDICAL LEAVE OF ABSENCE ACT          HR-505

Healthcare Provider – For purposes of FMLA eligibility, a doctor of medicine or osteopathy authorized to practice medicine or surgery by the State in which the doctor practices or any other person determined by the Secretary of Labor to be capable of providing healthcare service.

PROVISION

1.  Eligibility for Family and Medical Leave (FMLA) is determined by the following criteria:

    a.  Employed for 12 months and worked at least 1,250 hours preceding the commencement of a leave. Hours are calculated based upon actual hours that the employee worked, including overtime but excluding holidays and PTO time.

    b.  Eligibility for FMLA is determined separately from medical or military leave guidelines.

2.  An employee is eligible for a total of 12 weeks of FMLA in a "rolling" twelve-month period measured backward from the date an employee uses FMLA. FMLA may be used for the following occurrences:

    a.  Birth and care for a newborn child.

    b.  Adoption or foster care of a child.

    c.  Care of child, spouse, or parent with a serious health condition.

    d.  Serious health condition of the employee that makes the employee unable to work.

3.  Eligibility for a FMLA for childbirth, childcare, adoption or foster care applies equally to either a father or mother. If a husband and wife are both employed by Atrium, they are entitled to take a combined total of 12 weeks of leave during any 12-month period for the above stated reasons.

4.  Circumstances may require that a leave begin before the birth of a child, for an expectant mother's prenatal care, for adoption or foster care procedures (i.e., consolation with an attorney or doctor, or to attend counseling).

ATRIUM/FIELY 350

FAMILY AND MEDICAL LEAVE OF ABSENCE ACT                    HR-505

5.    An employee is entitled to take intermittent or reduced schedule FMLA when his/her own health or family member's care makes it a medical necessity.

    a.    There must be a medical need for the leave, as distinguished from voluntary treatments or procedures.

    b.    The medical need may be best accommodated through an intermittent or reduced schedule leave.

    c.    The employee may be transferred to an alternative position during this leave.

    d.    The actual time taken off during intermittent or reduced schedule leave (i.e., one hour or more) can be counted toward the 12 weeks of leave.

6.    Other guidelines (i.e., attendance or discipline) cannot penalize an employee for using the entitlement of the FMLA.

7.    An employee requesting an unpaid leave does not have to specifically mention the FMLA to meet his/her obligation to provide notice for receiving a FMLA. **An employee asking for time off must be advised of his/her potential FMLA benefit and allowed to request one.**

FMLA is an unpaid leave.  Compensation during the leave is possible under the following circumstances:

    a.    An employee's available PTO can be used.

    b.    Other compensation during the leave may be allowed should the circumstances of the leave meet the qualification under other leave guidelines: (i.e., worker's compensation or disability).

    c.    While on a qualified FMLA leave of absence, employees will not accrue vacation, PTO, holidays, or if applicable, sick paid leave days of any kind.

8.    An employee returning from FMLA is entitled to return to the same position they held when the leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.  Human Resources must approve assignment prior to any equivalent position being offered.

Page 3 of 7

ATRIUM/FIELY 351

## FAMILY AND MEDICAL LEAVE OF ABSENCE ACT                HR-505

9.   Return from Medical Leave of Absence/Reinstatement:

Required notice of fitness to return.

a.   Employees are required to notify the supervisor of his/her intent to return to work as far in advance as possible. For leaves of extended duration, the Company may require one or more weeks notice.

b.   Prior to returning to work, a statement signed by the employee's attending physician must be submitted certifying that the employee is fit to return to work and indicating whether the employee is able to return to his/her former position or a comparable position without restrictions or limitations.

   i.   Employees who are deemed fit to return to work will report directly to his/her Supervisor on the date determined.

   ii.   An employee, who fails to return to work on the expected date, will, after a brief review to determine whether or not there are extenuating circumstances, be considered to have resigned and termination procedures will be initiated.

   iii.   Upon the employee's return, the Administrator or Manager or grantor of the leave should sign and date the Return from Leave Section of the "Request for Leave of Absence" form and retain the original in the employee's personnel file.

11.   Reinstatement can be denied when an employee:

a.   Fails to report periodically on his/her leave's status and intent to return to work.

b.   Gives unequivocal notice of intent not to return to work.

c.   Fails to provide a fitness of duty certificate to return to work when on leave for his/her own serious health condition.

d.   Employee is a "key" exempt employee and his/her reinstatement would cause substantial and grievous economic injury to the operations of the Company. Human Resources must approve denial of reinstatement prior to any action being taken.

ATRIUM/FIELY 352

FAMILY AND MEDICAL LEAVE ABSENCE ACT                    HR-505

12.   FMLA eligibility must be communicated to employees by:

   a.   Posting "Your Rights under the FMLA" in conspicuous places where employees and applicants can see it.

   b.   Advising the employee at the beginning of his/her leave about the details of the benefit.

13.   Any contact by government agencies, community groups, attorneys or employee's representatives regarding FMLA must be immediately discussed with the Human Resources Department.

14.   When FMLA is provided for by state or local laws, the most generous provisions should apply.

15.   Human Resources may be consulted for questions about FMLA eligibility, guidelines or practices.

16.   FMLA leave will be applied to absences related to injuries and illnesses sustained in the course and scope of employment. FMLA leave will run concurrently with workers compensation benefits, including temporary disability of other limited wage replacement benefits during periods of an employee's temporary inability to return to work.

17.   If an employee that is out on FMLA has an annual anniversary during their leave the following should be done.

   a.   Supervisor should conduct employee performance evaluation while they are out. Upon returning , employee's supervisor should give employee the performance form to complete a self eval and set up a time to review the evaluations together.

   b.   Supervisor should provide employee with performance eval within 10 days of them returning to work. Whatever outcome of performance evaluation score it, employee should have any wage increase retroactive to the date the employee returned from leave.

## III.   PROCEDURE

1.   An employee requesting a Family Medical Leave must complete part one of the Leave of Absence Request Form PG-505A. The employee must write down the type of FMLA requested and provide complete and accurate information. Leave requests should be made at least 30 days in advance whenever possible. However, the length of notice does not affect the leave's acceptance or rejection. In addition, the employee must also have proper documentation by a qualified health care

provider to obtain medical certification via the Certification of Health care provider form for Employees serious condition or Family members condition.

    a.    Employee must turn in leave of absence request form and certification of health care provider to their supervisor.

    b.    Supervisor will complete eligibility section with assistance from payroll, sign and forward to Administrator.

    c.    Administrator will scan or fax information to corporate Unemployment insurance claims specialist to verify eligibility and initiate Designation Notice and Notice of eligibility to Human Resources for completion and approval.

    d.    Human Resources will complete Designation Notice and Notice of eligibility approving or rejecting request. Original copy will be forwarded to employee with copies going to benefits file and facility.

        Forms included with employee letter:

        i.    Designation Notice
        ii.    Notice of eligibility and right under FMLA
        iii.    Fitness for Duty Certification
        iv.    Request for Time Off
        v.    Notice of Intent to Return from FMLA

2.    An employee's request for a FMLA will be considered and approved by the Vice President of Human Resources .

    The criteria for approving a FMLA request are:

    a.    The employee is eligible for the leave.

    b.    The leave request is for entitled circumstances.

    c.    There is evidence of a serious health condition

            WITH

    d.    Proper documentation by a qualified health care provider (use the Certification of Health Care Provider Form for obtaining medical certification). Employer will except a certification form provided by the physician if it meets the requirements.

3.    An employee on a FMLA who wishes to continue participation in a Company-sponsored health plan must pay the standard active employee premium of the Company plan premiums. Health plan coverage may be cancelled if the employee fails to pay the premium. Coverage may be reinstated upon the employee's return to work. This benefit may exceed other leave guidelines. Further clarification of this aspect of FMLA can be obtained from your Human Resources Department.

ATRIUM/FIELY 354

4.  An exempt employee can have salary deductions for any hours taken as intermittent or reduced schedule leave without affecting his/her exempt status.

5.  An employee returning form FMLA must notify their supervisor two (2) weeks prior to their return date.  Employees must submit Form PG-505A(4), Notice of Intent to Return from Family and Medical Leave. If they are returning after being on leave for their own serious illness they must also submit the Fitness-For-Duty Certification Form PG-505A(5).

ATRIUM/FIELY 355

FAMILY AND MEDICAL LEAVE OF ABSENCE ACT        HR-505

6.     If the employee does not return to work following FMLA leave for a reason other than the following: (1) the continuation, recurrence, or onset of a serious health condition which would entitle the employee to FMLA leave; or (2) other circumstances beyond the employee's control, **the employee will be required to reimburse the Company for the total cost of health insurance premiums paid on their behalf during their FMLA leave.** Employee must repay all premiums within 60 days after receiving notice of the amount owed. After that time, the matter will be turned over to collections, which could result in legal action.

7.     **All forms related to FMLA must also be sent to Human Resources.**

**FORMS**

FMLA Leave of Absence Request – PG-505A
Designation Notice – PG-505A(1)
Notice of eligibility and Rights Under FMLA – PG-505A(2)
Certification of Health Care Provider – EmployeePG-505A(3)
Certification of Health Care Provider- Family
Notice of Intent to Return from FMLA – PG-505A(4)
Fitness-For-Duty Certification – PG-505A(5)
Request for Time Off – PG-505B

ATRIUM/FIELY 356

# ATRIUM CENTERS, LLC.
## POLICIES AND PROCEDURES

**Subject:** FAMILY & MEDICAL LEAVE OF ABSENCE ACT MILITARY FAMILY LEAVE
HR-505

**Effective:** 12/01  Revised: 2/11 ,2/2013

---

**I.** **PURPOSE**

The purpose of the policy is to comply with the Family and Medical Leave Act Military Family Leave of 2009 and to allow employees to take leave to address care for a covered service member with a serous injury or illness.

**II.** **GUIDELINES**

It is the intention of Atrium to grant leaves of absence in accordance with the Family & Medical Leave Act Military Family Leave.

    **A.** <u>FAMILY AND MEDICAL LEAVE ACT Military Family Leave</u>

    Leaves of absence will be provided in accordance with the Family & Medical Leave Act Military Family Leave, for the purposes of providing military care leave to eligible employees who are the spouse, son, daughter, parent, or next of kin of certain veterans with a serious injury or illness.

    **DEFINITIONS**

    <u>Son or Daughter</u> – For purposes of family leave eligibility, son or daughter is defined as a biological, adopted or foster child, a step child, a legal ward, or a child of an employee where the employee has a legal standing in place of a parent. The son or daughter is either under 18, or if over 18, is incapable of self-care because of mental or physical disability.

    <u>Parent</u> – For purposes of FMLA eligibility, parent is defined as biological or someone whose legal standing is in place of the parent.

    **PROVISION**

        1. Eligibility for Family and Medical Leave Act Military Family Leave is determined by the following criteria:

            a. Employed for 12 months and worked at least 1,250 hours preceding the commencement of a leave. Hours are calculated based upon actual hours that the employee worked, including overtime but excluding holidays and PTO time.

    **MILITARY FAMILY LEAVE ENTITLEMENTS**

        1. Military Caregiver Leave

            a. An eligible employee who is a spouse, son, daughter, parent, or next of kin of a covered service member or veteran with a serious injury or illness


DEFENDANT'S
EXHIBIT
G
8-12-14
PENGAD 800-631-6989

may be granted up to a total of **26 workweeks** of **unpaid** leave during a "single 12-month period" to care for the service member.

b. A covered service member is a current member of the Armed Forces, including a member of the National Guard , Reserves or a veteran , who is undergoing medical treatment, recuperation, or therapy, is otherwise in outpatient status, or is otherwise on the temporary disability retired list, for a serious injury or illness.

c. A serious injury or illness is one that was incurred by a service member in the line of duty on active duty that may render the service member medically unfit to perform the duties of his or her office, grade, rank, or rating.

d. The "single 12-month period" for leave to care for a covered service member with a serious injury or illness begins on the first day the employee takes leave for this reason and ends 12 months later, regardless of the 12 month period established by the employer for other types of FMLA leave.

e. An eligible employee is limited to a **combined** total of 26 workweeks of leave for any FMLA-qualifying reason during the "single 12-month period." (Only 12 of the 26 weeks total may be for a FMLA-qualifying reason other than to care for a covered service member.)

2. Qualifying Exigency Leave

a. An eligible employee may be granted up to a total of **12 workweeks** of **unpaid** leave during the normal 12-month period established by the employer for FMLA leave for qualifying exigencies arising out of the fact that the employee's spouse, son, daughter, or parent is on active duty, or has been notified of an impending call or order to active duty, in support of a contingency operation.

b. Under the terms of the statute, qualifying exigency leave is available to a family member of a military member on "covered active duty" or call to "covered active duty" status. Qualifying exigencies include:

   i. Issue arising from a covered military member's short notice deployment (i.e., deployment on seven or less days of notice) for a period of **seven** days from the date of notification; or deployment to a foreign country.

   ii. Military events and related activities, such as official ceremonies, programs, or

   iii. events sponsored by the military or family support or assistance programs and informational briefings sponsored or promoted by the military, military service organizations, or the American Red Cross that are related to the active duty or call to active duty status of a covered military member;

   iv. Certain childcare and related activities arising from the active duty or call to active duty status of a covered military member, such as arranging for alternative childcare, providing childcare on a non-routine, urgent, immediate need basis, enrolling or transferring a child in a new school or day care facility, and attending certain meetings at a school or a day care facility if they are necessary due to circumstances arising from the active duty or call to active duty of the covered military member;

   v. Making or updating financial and legal arrangements to address a covered military member's absence;

   vi. Attending counseling provided by someone other than a health care provider for oneself, the covered military member, or the child of the

ATRIUM/FIELY 358

covered military member, the need for which arises from the active duty or call to active duty status of the covered military member;

    vii.    Taking up to fifteen days of leave to spend time with a covered military member who is on short-term temporary, rest and recuperation leave during covered active deployment;

    viii.    Attending to certain post-deployment activities, including attending arrival ceremonies, reintegration briefings and events, and other official ceremonies or programs sponsored by the military for a period of 90 days following the termination of the covered military member's active duty status, and addressing issues arising from the death of a covered military member;

    ix.    Any other event that the employee and employer agree is a qualifying exigency.

3.    Spouses employed by the same employer are limited to a **combined** total of 26 workweeks in a "single 12-month period" if the leave is to care for a covered service member with a serious injury or illness, and for the birth and care of a newborn child, for placement of a child for adoption or foster care, or to care for a parent who has a serious health condition.

4.    FMLA leave may be taken intermittently whenever **medically necessary** to care for a covered service member with a serious injury or illness. FMLA leave also may be taken intermittently for a qualifying exigency arising out of the active duty status or call to active duty of a covered military member. When leave is needed for planned medical treatment, the employee must make a reasonable effort to schedule treatment so as not to unduly disrupt the employer's operation.

5.    Under certain conditions, employees **or** employers may choose to "substitute" (run concurrently) accrued **paid** leave (such as sick or vacation leave) to cover some or all of the FMLA leave. An employee's ability to substitute accrued paid leave is determined by the terms and conditions of the employer's normal leave policy.

## NOTICE REQUIREMENTS

1.    Employee Notice

    a.    Employees seeking to use military caregiver leave must provide 30 days advance notice of the need to take FMLA leave for planned medical treatment for a serious injury or illness of a covered service member. If leave is foreseeable but 30 days advance notice is not practicable, the employee must provide notice as soon as practicable – generally, either the same or next business day. An employee must provide notice of the need for foreseeable leave due to a qualifying exigency as soon as practicable. When the need for military family leave is not foreseeable, the employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case. Generally, it should be practicable to provide notice for unforeseeable leave within the time prescribed by the employer's usual and customary notice requirements.

    b.    An employee does not need to specifically assert his or her rights under the FMLA, or even mention the FMLA, when providing notice. The employee must provide "sufficient information" to make the employer aware of the need for FMLA leave and the anticipated timing and duration of the leave. Depending on the situation, such information may include, as applicable:

       i.   that the requested leave is for a particular qualifying exigency related to the active duty or call to active duty status of a covered military member and the anticipated duration of the leave;

      ii.   that the leave is for a qualifying family member who is a covered service member with a serious injury or illness and the anticipated duration of the leave.

c.    When an employee seeks leave due to a FMLA-qualifying reason for which the employer has previously provided the employee FMLA-protected leave, the employee **must** specifically reference either the qualifying reason for leave or the need for FMLA leave.

2.    <u>Employer Notice</u>

a.    Covered employers must post a notice approved by the Secretary of Labor explaining rights and responsibilities under the FMLA. Additionally, employers must either include this general notice in employee handbooks or other written guidance to employees concerning benefits, or must distribute a copy of the notice to each new employee upon hiring. Employers may use the <u>notice</u> prepared by U.S. Department of Labor to meet this requirement.

b.    When an employee requests FMLA leave or the employer acquires knowledge that leave may be for a FMLA purpose, the employer must notify the employee of his or her eligibility to take leave, including a reason for non-eligibility if the employee is determined not to be eligible. Such eligibility notice may be oral or written and should, generally, be given within five business days of the request for FMLA leave. Subsequent eligibility notice in the same 12-month leave period may be required when an employee's eligibility status changes. Employers also must inform employees of their rights and responsibilities under the FMLA, including giving specific written information on what is required of the employee.

c.    When the employer has enough information to determine that leave is being taken for an FMLA-qualifying reason, the employer must notify the employee that the leave is designated and will be counted as FMLA leave. The employer must designate leave that qualifies as **both** leave to care for a covered service member with a serious injury or illness **and** leave to care for a qualifying family member with a serious health condition as leave to care for a covered service member in the first instance. The designation notice must be in writing.

d.    Generally, notice must be given within five business days of the determination. An employer also must notify the employee of the number of hours, days, or weeks that will be counted against the employee's FMLA entitlement. Employers may use the optional forms <u>WH-381</u> and <u>WH-382</u> prepared by the U.S. Department of Labor to meet these notification requirements.

CERTIFICATION REQUIREMENTS

1.     Atrium Centers requires that an employee's request for military family leave be supported by an appropriate certification.   Atrium Centers requires that:

   a.   Leave for a qualifying exigency be supported by a copy of the covered military member's active duty orders and certification providing the appropriate facts related to the particular qualifying exigency for which leave is sought, including contact information if the leave involves meeting with a third party;

   b.   Leave to care for a covered service member with a serious injury or illness be supported by a certification completed by an authorized health care provider **or** by a copy of an Invitational Travel Order (ITO) or Invitational Travel Authorization (ITA) issued to any member of the covered service member's family.

2.     Second and third opinions and recertification are not permitted for certification of a covered service member's serious injury or illness or of a qualifying exigency. An employer may use a health care provider, a human resource professional, a leave administrator, or a management official – but not the employee's direct supervisor – to authenticate or clarify a medical certification of a serious injury or illness, or an ITO or ITA. Additionally, an employer may contact the individual or entity named in a certification of leave for a qualifying exigency for purposes of verifying the existence and nature of the meeting. Employers may use the optional forms <u>WH-384</u> and <u>WH-385</u> prepared by the U.S. Department of Labor for obtaining certifications for qualifying exigencies and military caregiver leave, respectively.

## PROCEDURE

Follow Section III Procedure from Policy Family & Medical Leave Act (HR-505) with required documentation as noted in Military Leave Policy.

## ATRIUM CENTERS, LLC.
### Family & Medical Leave Act (FMLA) LEAVE OF ABSENCE REQUEST

Name: _____ Facility: _____

Full Time:_____ Part Time:_____ Position:_____

Date Leave Starts: _____ Date Leave Ends: _____ Date of Hire: _____

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of employees or their family members. In order to comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information,' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services."

**Eligibility:** *(to be filled in by the Supervisor)*

1. Has the employee worked at an Atrium facility for one year?  ☐ Yes  ☐ No
   *(If the answer is no, the employee is not eligible)*

2. How many hours has the employee worked for the Atrium facility during the past year?
   *(If less than 1,250 hours, the employee is not eligible).*  Number of hours _____

3. When did the employee take their last FMLA leave, if applicable?  Date(s):  _____

**Reason for LOA Request:**

☐ Birth of a child or placement of a child with you for adoption or foster care;

☐ A serious health condition * that makes you unable to perform the essential functions of your job;

☐ A serious health condition * affecting any of the following family members for which you are needed to provide care:
   - ☐ spouse
   - ☐ child
   - ☐ parent

*\* In the event of a "serious health condition" that affects either the employee, spouse, child or parent, a health provider's certification <u>must be included</u> certifying the appropriateness of the leave. The Health Care Provider's Certification form is #PG-505A(3) located in the Human Resources Policy and Procedure Guidelines. If the health care provider's certification is not included, the leave may be delayed or denied.*

☐ Military Family Leave

Date:_____
_____
*Employee Signature or Signature of*
*Supervisor on Behalf of the Employee*

Date:_____
_____
Department Head

ATRIUM/FIELY 362

# ATRIUM CENTERS, LLC.

## EMPLOYER RESPONSE TO EMPLOYEE REQUEST FOR FAMILY OR MEDICAL LEAVE
### UNDER THE FAMILY & MEDICAL LEAVE ACT OF 1993

To: _____      Facility: _____

From: _____    Date: _____

Subject:   **Request for Family/Medical Leave**

On _____, you notified us of your need to take family/medical leave due to:

- ☐ Birth of a child or placement of a child with you for adoption or foster care;
- ☐ A serious health condition that makes you unable to perform the essential functions of your job;
- ☐ A serious health condition affecting any of the following family members for which you are needed to provide care:
    - ☐ spouse   ☐ child   ☐ parent
- ☐ Military Family Leave
    - ☐ spouse   ☐ child   ☐ parent (eligible for up to 26 weeks)

You notified us that you need this leave beginning on _____ and that you expect leave to continue until on or about _____.

Except as explained below, you have the right under FMLA for up to 12 weeks of unpaid leave in a 12-month period for the reason(s) listed above. Also, your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work and you must be reinstated to the same or an equivalent job with the same pay, benefits and terms and conditions of employment on your return from leave. If you do not return to work following FMLA leave for a reason other than:

- (1) the continuation, recurrence or onset of a serious health condition which would entitle you to FMLA leave; or
- (2) other circumstances beyond your control

You will be required to reimburse us for the total cost of health insurance premiums paid on your behalf during your FMLA leave.

---

This is to inform you that:

1. You are ☐ **eligible**  ☐ **not eligible** for leave under FMLA.

2. The requested leave ☐ **will**   ☐ **will not** be counted against your annual FMLA leave entitlement.

3. You ☐ **will**   ☐ **will not** be required to furnish medical certification of a serious health condition. If required, you must furnish the completed Certification of Health Care Provider's Form PG-505A (3) (attached) by _____ (a date which is 15 days after you are notified of this requirement). Failure to return the completed certification timely, may delay the commencement of your leave.

Form PG 505A (1)
Revised 5/03

FORM # 304-078 (Rev. 5/2003)

Moore Services Inc.• 2005 • Ph: (317) 571-9800 • Fax: (317) 571-982

ATRIUM/FIELY 363

4. You may elect to substitute accrued paid leave for unpaid FMLA leave. We ☐ **will** ☐ **will not** require That you substitute accrued paid leave for unpaid FMLA leave. If paid leave is to be used, the following conditions will apply:

5.

   a) If you normally pay premiums for your health and/or life insurance or dental, these payments must be continued during the period of FMLA leave. Your supervisor will discuss arrangements for payment with you and it is agreed that you will make premium payments as follows:

   b) You have a minimum 30-day grace period in which to make health insurance premium payments. If payment is not made timely, your group health insurance may be canceled, provided we notify you in writing at least 15 days before the date that your health coverage will lapse or, at our option, we may pay your share of the premiums during FMLA leave and recover these payments from you upon your return to work. Under most circumstances we will not pay your share of health insurance premiums while you are on leave.

   c) We will not pay for other benefits (e.g. life insurance, disability insurance, etc.) while you are on FMLA leave.

   d) If we do pay any premiums for other benefits, when you return from leave you will be expected to reimburse us for the payments made on your behalf before you are allowed to return to work. Premiums are as follows:

6. You ☐ **will** be required to present a fitness-for-duty certificate prior to being restored to employment. If certification is required but not received, your return to work may be delayed until certification is provided.

7. You ☐ **will** ☐ **will not** be required to present a fitness-for-duty certificate prior to being restored to employment. If certification is required but not received, your return to work may be delayed until certification is provided.

8. You ☐ **are** ☐ **are not** a "key employee" as described in § 825.218 of the FMLA regulations. If you are a "key employee", restoration to employment may be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to us.

   b) We ☐ **have** ☐ **have not** determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us.

9. While on leave, you ☐ **will** ☐ **will not** be required to furnish us with periodic reports every 30 days of your status and intent to return to work. If the circumstances of your leave change and you are able to return to work earlier than the date indicated on this form, you ☐ **will** ☐ **will not** be required to notify us at least two work days prior to the date you intend to report for work.

10. You ☐ **will** ☐ **will not** be required to furnish re-certification relating to a serious health problem every 30 days.

_____
*Signature of facility Administration*

cc:   Facility Department Head
(317) 571-982

Form PG 505A(1)

*Date:*
_____

Moore Services Inc.• 2005 • Ph: (317) 571-9800 • Fax:

ATRIUM/FIELY 364

ATRIUM/FIELY 365

**Certification of Health Care Provider**
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wages and Hour Division

| | |
|---|---|
| *(When completed, this form goes to the employee, **not the Department of Labor**.)* | OMB No: 1215-0181 |

| | |
|---|---|
| 1.  Employee's Name | 2.  Patient's Name (*if different from employee*) |

3.  Page 4 describes what is meant by a **serious health condition** under the Family and Medical Leave Act. Does the patient's condition [1] qualify under any of the categories described? If so, please check the applicable category.

(1) _____  (2) _____  (3) _____  (4) _____  (5) _____  (6) _____ , or None of the above _____

4.  Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

5.  a.  State the approximate **date** the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present **incapacity** [2] if different):

  b.  Will it be necessary for the employee to take work only **intermittently or to work on a less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

  If yes, give the probable duration:

  c.  If the condition is a **chronic condition** (condition #4) or **pregnancy**, state whether the patient is presently incapacitated [2] the likely duration and frequency of **episodes of incapacity** [2]:

---

[1] Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

[2] Incapacity, for purpose of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom.

Form WH-380
Revised December 1999

Page 1 of 4
PG-505A(3)

FORM # 300-024 (12/1999)

Moore Services Inc. • 2005 • Ph: (317) 571-9800 • Fax: (317) 571-9826

ATRIUM/FIELY 366

6. a. If additional **treatments** will be required for the condition, provide an estimate of the probable number of such treatments.

If the patient will be absent from work or other daily activities because of **treatment** on an **intermittent** or **part-time** basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required to recovery if any:

b. If any of these treatments will be provided by **another provider of health services** (e.g., physical therapist), please state the nature of the treatments:

c. **If a regimen of continuing treatment** by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

7. a. If medical leave is required for the employee s **absence from work** because of the **employee s own condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform work** of any kind?

b. If able to perform some work, is the employee **unable to perform any one or more of the essential functions of** The **employee s job** (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

c. If neither a. nor b. applies, is it necessary for the employee to be **absent from work for treatment?**

FORM # 300-024 (12/1999)

Moore Services Inc. · 2005 · Ph: (317) 571-9800 · Fax: (317) 571-9826

ATRIUM/FIELY 367

8. a. If leave is required to **care for a family member** of the employee with a serious health condition, **does the patient require assistance** for basic medical or personal needs or safety, or for transportation?

b. If no, would the employee s presence to provide **psychological comfort** be beneficial to the patient or assist in the patients s recovery?

c. If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable **duration** of this need:

_____          _____
Signature of Health Care Provider                               Type of Practice

_____          _____
Address                                                                      Telephone Number

_____          _____
                                                                                        Date

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_____          _____
Employee Signature                                              Date

FORM # 300-024  (12/1999)          Moore Services Inc. • 2005 • Ph: (317) 571-9800 • Fax: (317) 571-9826

ATRIUM/FIELY 368

A **Serious Health Condition**    means and illness, injury impairment, or physical or mental condition that involves one of
The following:

1. Hospital Care
   **Impatient care** (i.e. an overnight stay) in a hospital, hospice, or residential medical care facility, including any period
   Of incapacity[2] or subsequent treatment in connection with or consequent to such impatient care.

2.  Absence Plus Treatment
   (a)  A period of incapacity[2] of **more than three consecutive calendar days** (including any subsequent treatment or
        Period of incapacity[2] relating to the same condition), that also involves:

        (1)  **Treatment**[3] **two or more times** by a health care provider, by a nurse or physician s assistant under direct
             supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under
             orders of, or on referral by, a health care provider; or

        (2)  **Treatment** by a health care provider on **at least one occasion** which results in a **regimen of continuing
             treatment** 4 under the supervision of the health care provider.

3.   Pregnancy
   Any period of incapacity due to **pregnancy**, or for **prenatal care**.

4.  Chronic Conditions Requiring Treatments
   A **chronic condition** which:

   (1)  Requires **periodic visits** of treatment by a health care provider, or by a nurse or physician s assistant under
        direct supervision of a health care provider.

   (2)  Continues over an **extended period of time** (including recurring episodes of a single underlying condition); and

   (3)  May cause episodic rather than a continuing period of incapacity[2] (e.g., asthma, diabetes, epilepsy, etc.)

5.  Permanent/Long-Term Conditions Requiring Supervision

   A period of **Incapacity**[2] which is **permanent or long-term** due to a condition for which treatment may not be
   effective. The employee or family member must be **under the continuing supervision of, but need not be
   receiving active treatment by, a health care provider.** Examples include Alzheimer's, a severe stroke, or the
   terminal stages of a disease

6.  Multiple Treatments (Non-Chronic Conditions)
   Any period of absence to receive **multiple treatments** (including any period of recovery therefrom) by a health care
   provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for
   **restorative surgery** after an accident or other injury, or for a condition that **would likely result in a period of
   incapacity**[2] of more than three consecutive calendar days in the absence of medical intervention or
   treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease
   (dialisys).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) form a health care
provider, including second or third opinions and re-certification (29 CFR 825.306)

*Note:* Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

---

3
   Treatment includes examination to determine if a serious health condition exists and evaluations of the condition.  Treatment does not include routine
physical examinations, eye examinations, or dental examinations.

4
   A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to
resolve or alleviate the health condition.  A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or
salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

**Public Burden Statement**
We estimate that it will take an average of 10 minutes to complete this collection of information, including the time for reviewing instructions, searching
existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments
regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the
Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.
DO NOT SEND THIS COMPLETED FORM TH THIS OFFICE; IT GOES TO THE EMPLOYEE.

ATRIUM/FIELY 369

# ATRIUM CENTERS, LLC.

## NOTICE OF INTENT TO RETURN FROM FAMILY MEDICAL LEAVE
(Family and Medical Leave Act of 1993)

Facility/Office Location: _____

This notice is to inform my employer of my intent to return from Family and Medical Leave (under the FML Act).  It is my intent to return to work on the date listed below.  I have enclosed a Fitness-for-Duty certificate (if applicable) from my healthcare provider which indicates my ability to return to my former position and duties.

Name of Employee on Leave: _____

Position and Shift: _____

Immediate Supervisor: _____

Reason Leave was Taken: _____

Date Leave Began: _____

Date of Return to Work: _____

Accommodations (if any) needed to perform job duties: _____

_____

_____

_____                    _____
Employee's Signature                                                    Date

_____                    _____
Supervisor's Signature                                                  Date

Form PG 505A(4)
Revised 5/03
Moore Services Inc.• 2005 • Ph: (317) 571-9800 • Fax: (317) 571-9826

FORM # 304-079 (Rev. 5/2003)

ATRIUM/FIELY 370

ATRIUM CENTERS, LLC.

### EMPLOYEE FITNESS-FOR-DUTY CERTIFICATION

Employee Name: _____    Location: _____

Job Title/Position: _____    Date: _____

I authorize my attending physician and/or hospital to release any information or copies thereof acquired in the course of my examination or treatment for the injury/illness identified above to my employer or his representative.
Patient signature _____

## TO BE COMPLETED BY PHYSICIAN

☐ May return to work with no restrictions on _____ or next shift _____ .

☐ May return to work with restrictions from _____ to _____ (complete work/non-work capabilities on the right)

Work restrictions apply to work and non-work activity. The restrictions are:
☐ Permanent ☐ Temporary

If temporary, how long?
_____
_____

☐ Is totally disabled from work from _____ to _____

Please explain in the space provided below why the injured worker is unable to work.  **Estimated Return to Work date:**
_____
_____

### Work/Non-Work Capabilities

| % of Workday (8 hr) Repetitions per hr | None at all 0% | Occasional 1-33% 4-6 | Frequent 34-66% 6-12 | Continuous 67-100% >12 |
|---|---|---|---|---|
| Lift/Carry | | | | |
| Up to 10 lbs | ☐ | ☐ | ☐ | ☐ |
| 11-20 lbs | ☐ | ☐ | ☐ | ☐ |
| 21-50 lbs | ☐ | ☐ | ☐ | ☐ |
| 51-100 lbs | ☐ | ☐ | ☐ | ☐ |
| Bending | ☐ | ☐ | ☐ | ☐ |
| Twist/turn | ☐ | ☐ | ☐ | ☐ |
| Reach below knee | ☐ | ☐ | ☐ | ☐ |
| Push/pull | ☐ | ☐ | ☐ | ☐ |
| Squat/kneel | ☐ | ☐ | ☐ | ☐ |
| Stand/walk | ☐ | ☐ | ☐ | ☐ |
| Sit | ☐ | ☐ | ☐ | ☐ |
| Climb | ☐ | ☐ | ☐ | ☐ |
| Operation of Foot Pedals | ☐ | ☐ | ☐ | ☐ |

Hand Restrictions ☐ Left ☐ Right    No use of ☐ Left ☐ Right
☐ Must wear splint       ☐ Arm
☐ No lifting greater than ___ lbs.    ☐ Hand
☐ No repetitive activities      ☐ Finger _____
☐ No work with hot or cold substances    ☐ Other

☐ Change positions every ___ ☐ Keep wound clean/dry
☐ Work activity as splint/bandage permits    ☐ Avoid driving

Physician's further explanation of work abilities or why the injured worker is unable to perform any work:_____
_____
_____

Physician name: (please print)_____ Date & time of this exam: _____

Follow-up appointment date: _____ Time: _____

Physician signature: (*mandatory*) _____ Date: _____
Form PG 505A(5)

FORM # 304-080 (Rev. 5/2003)

Moore Services Inc. • 2005 • Ph: (317) 571-9800 • Fax: (317) 571-9826

ATRIUM/FIELY 371

## ATRIUM CENTERS, LLC.
### POLICIES AND PROCEDURES

| | | |
|---|---|---|
| Subject: | DISCIPLINE | HR-306 |
| Effective: | 03/01 | Revised: 04/05 |

**I.  PURPOSE**

To state Atrium's guidelines regarding Discipline.

**II.  GUIDELINES**

Employees should be made aware of the rules that are to be followed, and these rules should be applied in a uniform and impartial manner to all employees. Employees who fail to follow rules will be subject to discipline, up to and including discharge, in accordance with the Company's disciplinary guidelines.

**III.  PROCEDURES**

A.  An Employee Memorandum (form PG-306) is to be used to document the facts of the incident leading to discipline. The employee's immediate supervisor should explain the reason for discipline in detail to the employee.

B.  An employee signs the Employee Memorandum to acknowledge he/she received it. An employee's signature does not necessarily acknowledge they are in agreement with the discipline. If an employee refuses to sign it, a second manager should witness the refusal to sign and note on the Employee Memorandum that the employee refused to sign it.

C.  An employee should be offered a copy of the Employee Memorandum and a copy should be placed in his/her personnel file.

D.  Employee Memorandums for disciplinary action are valid for a period of twelve (12) months. After twelve (12) months they become invalid for use in progressive discipline or discharge, but should not be removed from the personnel file.

E.  Violations of different rules are cumulative.

F.  Each facility/office should maintain a list of all disciplinary action indicating the name of all employees who are disciplined, the misconduct involved, and the discipline given to each employee.

Page 1 of 5



ATRIUM/FIELY 219

DISCIPLINE                                                         HR-306

Some offenses are very serious and are subject to the employee's immediate suspension pending investigation for discharge. The following steps should be taken:

1. The employee should be immediately suspended without pay, pending an investigation.

2. The events leading up to the suspension should be investigated by the Administrator or Manager, or the person designated by the Administrator or Manager.

3. The investigation should include interviews with all witnesses, and review of all pertinent documents. The interviews should be summarized in writing, and reviewed and signed by the witness.

4. The employee must be given an opportunity to give his/her side of the story during the investigation.

5. The results of the investigation should be reviewed by the Supervisor and by the Administrator or Manager. Human Resources could be consulted and advised of the results of the investigation.

6. The Administrator or Manager and the employee's Supervisor will make the final decision as to whether discharge is appropriate.

7. The employee will be reinstated if the decision is to not discharge.

8. If disciplinary action is taken other than discharge, the employee is given the appropriate written warning under the progressive disciplinary steps, where warranted.

9. Back pay should be given for scheduled days missed while on suspension if no disciplinary action is taken. If disciplinary action is taken, short of discharge, the employee should not receive back pay upon reinstatement.

G. The following is a list of unacceptable conduct or behavior, which may result in suspension pending an investigation for discharge. It is not an all-inclusive list. There may be other incidents that warrant immediate suspension. (See rule number 1.27).

Page 2 of 5

ATRIUM/FIELY 220

DISCIPLINE                                                                    HR-306

1.1   Resident abuse or neglect (physical, sexual, verbal or mental).

1.2   Refusal to perform assigned duties after a direct order to do so.

1.3   Failure to report any incident of or information concerning resident neglect or abuse to your Supervisor, Administrator or Manager.

1.4   Failure to follow the Company's Professional Standards of Conduct.

1.5   Violation of the Company's guidelines for Conflict of Interest.

1.6   Refusing to cooperate in the investigation of any allegation of resident neglect or abuse or any other alleged violation of company rules, laws or government regulations.

1.7   Refusal to give testimony or giving false testimony in any trial or administrative proceeding involving the Company's interests.

1.8   Making false or misleading work-related statements concerning the Company, the facility/location, or fellow employees.

1.9   Attempting to harm the Company's or the facility's reputation or relations with customers, or potential customers.

1.10  Violation of the Company's Substance and Alcohol Use policy guidelines.

1.11  Sleeping while on duty.

1.12  Theft or attempted theft, defacement or sabotage of facility, resident, visitor, or employee property.

1.13  Misuse or disclosure of confidential facility, resident or employee information.

1.14  Verbal or physical threats against the facility, residents, visitors or other employees.

1.15  Conduct generally regarded as immoral, improper, fraudulent or otherwise inappropriate, including but not limited to unlawful harassment of other employees.

1.16  Providing false information to a company official or falsification of any resident or facility records, reports or other documents.

1.17  Failure to report a communicable disease.

1.18  Gross negligence in the performance of job duties.

1.19  Documenting another employee's record or having another employee document your time record.

1.20  Working at another job while on a leave of absence.

1.21  Serious violation of safety rules.

1.22  Insubordination.

1.23  Conviction of a felony or conviction of any misdemeanor that could adversely affect the company's business or reputation.

1.24  Two instances of no call, no show.

1.25  Job abandonment.

1.26  Supervisor or Manager requesting or knowingly permitting an employee to work off the clock.

1.27  Other instances of serious misconduct not specifically listed.

1.28  Violations that result in serious harm to a resident, family member, other employee, or the property or reputation of the Company.

Page 3 of 5

ATRIUM/FIELY 221

DISCIPLINE                                                                          HR-306

H.    Violations of a less serious nature will be cause for progressive discipline so the
      employee can take corrective action to change his/her behavior.

I.    The following violations generally advance through four (4) progressive steps of
      discipline, which are:
      1.    Oral Warning (Documented)
      2.    First Written Warning
      3.    Second Written Warning
      4.    Suspension pending investigation will result in discharge if the
            investigation indicates that the misconduct occurred.  Suspension is to be
            used for occurrences which warrant investigation.  Violation of the
            attendance and tardiness policy does not require suspension prior to
            discharge.

J.    The following lists improper conduct or behavior, which may result in progressive
      discipline action up to and including discharge.  This list is not all-inclusive.
      There may be other instances that warrant progressive discipline. (See Violation
      number 2.23)

      2.1   Failure to perform assigned duties in an appropriate manner or at assigned
            times.
      2.2   Poor work quality or productivity.
      2.3   Failure to report any unsafe or unhealthy condition to your
            Supervisor, Administrator, or Manager.
      2.4   Stopping work before normal end of shift without permission.
      2.5   Leaving the work area during work time or break time without permission
            of the Supervisor.
      2.6   Violation of the Attendance/Tardiness Guidelines.
      2.7   Failure to follow safety rules.
      2.8   Failure to maintain acceptable standards of respect for others.
      2.9   Failure to be at the workstation on a timely basis.
      2.10  Posting, removing, or altering of notices or signs on any bulletin board or
            facility property without permission of the Administrator or Manager.
      2.11  Smoking in areas not designated for smoking or in residents' rooms.
      2.12  Unauthorized overtime.
      2.13  Creating or contributing to disorderly or unsanitary conditions.
      2.14  Failure to attend mandatory scheduled training or staff meetings.
      2.15  Failure to comply with the Dress and Appearance Guidelines.
      2.16  Making or receiving personal telephone calls or having visitors without
            permission during working time other than for emergency purposes.
      2.17  Violation of the Solicitation, Distribution, Access Guidelines.
      2.18  Use of facility or resident's property for personal purposes.

                                                                          Page 4 of 5

DISCIPLINE                                                                    HR-306

    2.19  Making false, defamatory, or malicious statements about a resident, employee, Manager, or Supervisor of the Company.

    2.20  Working off the clock by a non-exempt employee.

    2.21  One instance of a no call, no show.

    2.22  Failure to clock-out and back in for meal and break periods.

    2.23  Other instances of improper conduct of a less serious nature not specifically listed.

FORM

    Employee Memorandum for Progressive Discipline – PG-306

ATRIUM/FIELY 223

*Revised November 2004*

## ESSEX HEALTHCARE CORPORATION

*JOB DESCRIPTION*

Position Title:  Director of Nursing
Department:  Nursing
Reports To:  Administrator
HIPAA Security Code: 4
Date of Hire:  2/16/05

### GENERAL FUNCTION

Is responsible and accountable for the overall management of the Nursing Department. Coordinates with other disciplines to provide quality care to all residents. Supports and practices the philosophy, policies, and objectives of the Company. Monitors the outcomes of nursing services activity by coordinating facility committees and using the quality assurance program to implement efficient and effective nursing interventions. Ensures that the highest degree of quality care is maintained at all times. Performs all duties using independent judgment and discretion to implement regulations and policy.

### QUALIFICATIONS

- Registered Nurse (RN) with required state licensure; BSN preferred
- Must show the ability to communicate effectively and to read and write in English in a legible and understandable manner.
- Three to five years of successful management experience in a long term care environment.
- Working knowledge of nursing home regulations and the Nurse Practice Act, including MDS procedures and reimbursement guidelines under Medicare and Medicaid.
- Genuine caring for and interest in the elderly and physically and mentally challenged people; and the ability to relate positively to residents, their families, employees and the community at large.
- Must meet all federal, state and local health regulations and pass a post-employment-offer physical exam. This requirement includes drug screening, criminal background investigation, and reference inquiries.
- Must be able to perform the essential functions of this job, with or without accommodation.
- Must be able to be on 24-hour call.
- Must be able to respond to facility emergencies via telephone or in person, depending on the situation.

### PHYSICAL AND SENSORY REQUIREMENTS (WITH OR WITHOUT THE AID OF MECHANICAL DEVICES)

Walking, grasping, and fine motor hand coordination. Ability to lift, push, and pull a minimum of 50 pounds. Ability to distinguish smells, taste and temperatures. Ability to hear and respond to the intercom and telephone pages. Ability to read and write in English. Ability to investigate and analyze a situation fairly and objectively. Ability to visualize and differentiate between colorings and markings on the skin and other parts of the body.

Page 1 of 8



DEFENDANT'S EXHIBIT I 3-12-14 8MB PENGAD 800-631-6989

ATRIUM/FIELY 64

*Revised November 2004*

Ability to identify potentially hazardous conditions by sight. Ability to communicate with residents, families, nursing personnel, other personnel and support agencies. Ability to remain calm under stress. Ability to think clearly and make decisions. Ability to manage multiple priorities simultaneously. Ability to understand and instruct nursing services personnel in training and education areas. Ability to maintain confidentiality of sensitive information.

## ESSENTIAL JOB FUNCTIONS

A.   Administrative Functions

*Duties:*

- Plan, develop, organize, implement, evaluate, and direct the Nursing Services Department, its programs and activities.
- Develop, maintain, and periodically update written nursing policies, procedures, manuals, objectives, and philosophies, after consultation with the Administrator and Medical Director.
- Assist in developing and implementing methods for coordinating nursing services with other resident services.
- Implement and monitor a MDS tracking system to measure resident acuity.
- Assist in developing and coordinating resident Plans of Care consistent with federal and state rules and regulations.
- Implement plans of action to correct deficiencies.
- Complete medical forms, reports, evaluations, studies, charts, etc.
- Develop, implement, and maintain a quality assurance program.
- Assist in planning, developing, implementing and maintaining resident discharge procedures and plans.
- Develop and implement an effective nursing services' organizational structure.
- Participate in surveys and inspections by government agencies.
- Make reports and recommendations to the Administrator concerning operations of the department.
- Ensure that effective organization is in place for the nursing department and adherence to accepted organization and management principles.
- Display a high degree of professionalism, and display concern in interaction with residents, families, personnel, medical staff, and outside agencies.
- Supervise the RN/LPN Nurse Supervisors and delegate responsibilities to them for the management of the nursing units and the management of nursing personnel.
- Participate in regularly scheduled department head meetings, management staff meetings, and other mandatory meetings.
- Conduct and/or participate in meetings necessary to address residents' needs, including utilization review, falls, weight/hydration, skin, etc.

Page 2 of 8

ATRIUM/FIELY 65

*Revised November 2004*

B.   Nursing Care Functions

*Duties:*

- Review and ensure proper charting and documentation of nursing procedures.
- Accountable for nursing compliance and delivery of resident care services in adherence with local, state and federal regulations.
- Participate in the selection of residents by evaluating the level of care required in relation to facility capabilities.
- Ensure compliance with all federal, state and local rules and regulations related to nursing.
- Assist with mock surveys conducted by Regional Nurse Consultants and others.
- Correct areas of non-compliance identified from federal, state, and mock surveys.
- Visit nursing units on a daily basis and observe the care the residents receive to ensure compliance with accepted facility nursing standards.
- Monitor, review, and investigate resident incidents to identify possible issues and patterns that require preventative interventions.
- Implement infection control policies and procedures to ensure all nursing staff are educated and utilize infection control practices that protect residents, staff and families.
- Participate in ensuring a safe environment for residents, staff, and families.
- Oversee the development of the MDS and care plan process and its implementation.
- Ensure that all nursing personnel are aware of the care plan and that care plans are used in providing daily nursing services to the resident.
- Review nurses' summaries and monitor residents' progress to determine if the care plans are being followed and if each resident's needs are being met.
- Monitor meal service and delivery to ensure that residents are receiving adequate nutrition.
- Assist residents to the dining room, as needed.
- Assist staff in the completion of primary nursing duties, as necessary.
- Promote and encourage a team concept in the provision of resident care.
- Ensure that RN/LPN Supervisors assume responsibility and accountability for directly managing and monitoring the care and services provided by the STNA's.
- Ensure that RN/LPN Supervisors assume responsibility and accountability for the operation of their assigned nursing unit.

C.   Personnel Functions

*Duties:*

- Recruit, interview, hire, counsel, evaluate, and terminate nursing personnel, as warranted.
- Document and coordinate personnel actions with the Human Resources Manager or Administrator.
- Schedule department work hours, including vacations, holidays, shift and work assignments, etc. to ensure adequate staffing and to expedite work..

ATRIUM/FIELY 66

*Revised November 2004*

- ◆ Prepares periodic performance evaluations with the understanding the evaluations directly impact wage increases, and includes performance improvement plans.
- ◆ Delegate administrative authority, responsibility and accountability to nursing services supervisory personnel to include, but not limited to, assistance with recruiting, interviewing, hiring, counseling, evaluating, and recommending termination of nursing personnel.
- ◆ Recognize and support the Company philosophy of empowering all nurses to fulfill a supervisory role for the betterment of resident care.
- ◆ Ensure that all nursing services personnel, including state tested nursing assistants, have valid and current licenses or certifications and are performing duties in accordance with acceptable nursing standards.
- ◆ Schedule non-state tested nursing assistants for training classes within the time frame allotted by federal and state law.
- ◆ Assist in ensuring that all personnel meet federal, state and local health rules and regulations necessary for employment in a long-term care facility.
- ◆ Review personnel complaints and grievances and ensure that all personnel are treated consistently by policy and applicable law.

D.   Staff Development Functions

*Duties:*

- ◆ Develop and participate in planning, implementing, conducting and scheduling orientation, training and in-service educational activities for nursing services personnel.
- ◆ Maintain professional competence, as well as current licenses, through participation in continuing education programs, seminars, and training programs.
- ◆ Encourage nursing services supervisory personnel to attend and participate in leadership and outside training programs.
- ◆ Assist in training nurses in leadership and management skills.
- ◆ Educate nursing personnel in areas where skill levels are identified as falling below acceptable Company standards.
- ◆ Ensure that all nursing personnel receive training in all state and federally mandated topics prior to reporting for work assignments.
- ◆ Attend and participate in all mandatory in-services.
- ◆ Conduct, attend and participate in orientation, educational programs, and meetings for residents and/or their families.

E.   Continuous Quality Improvement Functions

*Duties:*

- ◆ Meet with nursing services personnel on a regularly scheduled basis.
- ◆ Ensure that quality improvement measures and Corporate Compliance policies are continually maintained.
- ◆ Develop and maintain a rapport with all departments to ensure that a team effort is achieved in providing superior services in the facility.

ATRIUM/FIELY 67

*Revised November 2004*

- Conduct audits of nursing skills to ensure continued compliance with Company standards related to competencies of personnel.
- Ensure staff participation in all aspects of the quality improvement process.

ATRIUM/FIELY 68

*Revised November 2004*

F.   Residents' Rights Functions

*Duties:*

- ◊   Understand, comply with, and promote the Residents' Bill of Rights.
- ◊   Maintain resident confidentiality both directly and through emphasis of confidentiality obligations to all nursing personnel.
- ◊   Treat residents with kindness, dignity, and respect.
- ◊   Have knowledge of, comply with, and ensure that all nursing services personnel know and comply with the Residents' Bill of Rights.
- ◊   Monitor nursing services to ensure that the residents' needs and rights are met.
- ◊   Review and promptly report to the Administrator resident complaints and grievances, and maintain written records of all such grievances.
- ◊   Assist in ensuring that timely notice is given, and strictly followed, for resident discharges and room and/or roommate changes.
- ◊   Report immediately all violations of Residents' Rights.

G.   Marketing Functions

*Duties:*

- ◊   Welcome new residents and their families, new employees, and guests.
- ◊   Tour potential residents and/or their families through the building, in the absence of the Marketing Director.
- ◊   Promote the services offered by the facility to residents, residents' families, staff, and members of the community.
- ◊   Speak to community groups and organizations about the services provided by the facility and long-term care providers, in general.
- ◊   Participate in community health screenings and other activities designed to promote the facility.

H.   HIPAA Compliance Functions

*Duties:*

- ◊   Maintain the confidentiality and security of all PHI, (Personal Healthcare Information) as defined by HIPAA, (Health Insurance Portability and Accountability Act), unless the resident or employee consents and authorizes the use or disclosure of PHI or that which is permitted by the HIPAA Privacy Standard. This includes healthcare information, oral or written, which is individual identifiable information relating to a resident's or employee's health and healthcare needs or payment for healthcare.
- ◊   Follow Essex Healthcare's policies and procedures designed to comply with these standards.

ATRIUM/FIELY 69

*Revised November 2004*

OTHER JOB FUNCTIONS

A.   Care Plan and Assessment Functions

*Duties:*

- Assist in developing a preliminary and comprehensive assessment and care plan that identifies the nursing and medical problems and/or needs of the resident, the goals to be accomplished for each problem and/or need, and the interventions designed to address the problem and/or need.
- Encourage residents and their families to participate in the development and review of care plans.
- Participate in assessing, reviewing and revising care plans as required.
- Remain current in knowledge of changes in federal and state guidelines concerning the MDS, and transmission thereof, and concerning federal and state reimbursement criteria.
- Develop and maintain rapport with all services to ensure that a team effort is achieved in developing comprehensive care plans for all residents.

B.   Planning and Inventory Functions

*Duties:*

- Approve the ordering of nursing supplies and equipment, as necessary, to meet the needs of the residents.
- Assist in developing and monitoring adequate and cost-effective inventory control procedures.
- Make periodic inspections of supplies and equipment to ensure that adequate levels are maintained and that equipment is available and working properly.
- Develop and implement procedures that trained and authorized personnel operate nursing services equipment in a safe manner.
- Assist in preparing and planning the Nursing Services Department's budget and submit it to the Administrator.

C.   Committee Functions

*Duties:*

- Direct, serve, attend and participate in various committees and meetings of the facility.
- Provide written and/or oral reports to the Administrator, as necessary.
- Evaluate and implement recommendations pertaining to nursing services.
- Participate in the Corporate Compliance program and abide by the Corporate Standards of Conduct policies.

ATRIUM/FIELY 70

*Revised November 2004*

D. Safety and Sanitation Functions

*Duties:*

◊ Assist in developing, implementing and maintaining safety standards and programs for monitoring communicable and/or infectious diseases among residents and personnel, and procedures for reporting hazardous conditions or equipment.

◊ Ensure that nursing personnel understand and follow departmental policies and procedures, universal precautions, established safety rules, and fire and disaster procedures.

◊ Ensure cleanliness of nursing services work areas, stations, preparation rooms, treatment areas, and resident rooms.

◊ Review reports of incidents/accidents and assist in the development of action plans to reduce incidents/accidents.

◊ Ensure nursing supplies and equipment are used in an appropriate and safe manner and in a fashion that comports with the product's intended use.

◊ Ensure the safety and security of nursing supplies and equipment.

E. All Other Duties as Assigned

ATRIUM/FIELY 71

*Revised November 2004*

## ACKNOWLEDGEMENT

I understand this job description for Director of Nursing and its requirements. I accept the position and agree to abide by the requirements and will perform all functions to the best of my abilities. I understand that this is not an exclusive list of the job functions and that I am expected to complete all duties as assigned. I understand management may alter the job functions, without notice, and that I am an at-will employee.

I have noted below any accommodations that are required to enable me to perform the essential functions of the job. I have also noted below any job responsibilities or functions that I am unable to perform, with or without accommodation.

_____

_____
Employee Signature

_____
Date

_____
Supervisor Signature

2-16-05
_____
Date

Cc:   Personnel File
       Individual Employee

Page 9 of 8

ATRIUM/FIELY 72

*Annual Eval*
*due 2/16/06*

## NURSE SUPERVISOR
### Performance Evaluation

Employee Name: Jane Fiely     Hire Date: 2/16/05     Job Title: D.O.N.
Purpose of Evaluation: Introductory _____ Annual _X_ Other _____
Present Rate Per Hour: _____    Period Covered by Appraisal: From _____ To _____

INSTRUCTIONS: Using the appropriate ratings, assign a rating to each job element by checking the appropriate column A, B, or C. An explanation must be provided anytime that a "C" is selected. The ratings are as follow:

Ratings:     A – Exceeds Expectations     B – Meets Expectations     C – Needs Improvement

### Supervision - Management

| | A | B | C |
|---|---|---|---|
| 1) Familiar with facility policies and procedures. | | X | |
| 2) Effectively communicates with Supervisor. | | X | |
| 3) As a member of management, conducts self professionally. | | X | |
| 4) Directs STNA's to ensure quality of care. | | X | |
| 5) Effectively exercises discretion in issuing or recommending discipline of employees. | | X | |
| 6) Approves time records and working hours for employees. | | X | |
| 7) Effectively utilizes STNA evaluations as a performance improvement tool. | | X | |
| 8) Effectively recommends retention or discharge of employees at the end of their introductory period. | | X | |
| 9) Assigns duties, breaks, working hours, and lunches of STNA's. | | X | |
| 10) Interviews and recommends STNA's for hire. | | X | |
| 11) Promotes Equal Employment Opportunity. | | X | |
| 12) Maintains confidentiality of employee information. | | X | |

COMMENTS: _____

### Organization:

| | A | B | C |
|---|---|---|---|
| 1) Delegates work to employees with their ability. | | X | |
| 2) Establishes good working relationships with others. | | X | |
| 3) Manages time well. | | X | |

COMMENTS: _____

### Decision-Making:

| | A | B | C |
|---|---|---|---|
| 1) In absence of Supervisor, assumes responsibilities. | | X | |
| 2) When interfacing with others, is convincing and decisive. | | X | |
| 3) Exercises discretion & judgment. | | X | |

COMMENTS: _____

### Leadership:

| | A | B | C |
|---|---|---|---|
| 1) Inspires others to perform well. | | X | |
| 2) Analyzes problems and presents sound solutions. | | X | |
| 3) Keeps subordinates informed. | | X | |
| 4) Is accessible and helpful to employees. | | X | |
| 5) Communicates well with other disciplines. | | X | |

COMMENTS: _____

### Residents' Rights:

| | A | B | C |
|---|---|---|---|
| 1) Observes residents' rights to privacy. | | X | |
| 2) Maintains confidentiality of resident records/information. | | X | |
| 3) Shows respect for residents' personal property. | | X | |
| 4) Treats residents with dignity. | | X | |
| 5) Establishes positive relationship with resident's families. | | X | |
| 6) Addresses residents appropriately. | | X | |

COMMENTS: _____

1 of 4

Form# 304-032 (12/04)



DEFENDANT'S EXHIBIT
PENGAD 800-631-6989
8-12-14

Moore Services, Inc. 2004 • Phone:(317)571-9800 • Fax:(317)571-9826

ATRIUM/FIELY 236

| Documentation: | A | B | C |
|---|---|---|---|
| 1) All documentation is timely, thorough, accurate and legible. | | X | |
| 2) Medical records and medication/treatment sheets are kept confidential and protected. | | X | |
| 3) Properly addresses errors, omissions, and deletions on the medical record. | | X | |
| 4) Notifies physician according to procedure. | | X | |
| 5) Completes incident reports. | | X | |
| 6) Thoroughly investigates all incidents while taking measures to protect the resident. | | X | |
| 7) STNA evaluations are complete and timely. | | | X |
| 8) Employee disciplinary memoranda are complete, consistent, and progressive. | | X | |
| 9) Refrains from falsifying or altering documentation. | | X | |

COMMENTS: _Can't get evaluation done in timely_
_manner_

| Medications & Treatments: | A | B | C |
|---|---|---|---|
| 1) Uses medication room and carts responsibly. | | N/A | |
| 2) Follows all procedures related to narcotics. | | X | |
| 3) Follows physician orders for medications and treatments. | | N/A | |
| 4) Uses emergency medication box according to procedure. | | N/A | |
| 5) Follows facility policy and procedures on wound care. | | X | |
| 6) Knowledgeable of drug interactions. | | N/A | |
| 7) Properly documents telephone orders. | N/A | | |

COMMENTS: _____

| Infection Control: | A | B | C |
|---|---|---|---|
| 1) Follows Universal Precautions. | | X | |
| 2) Properly disposes of infectious waste, including syringes. | | X | |
| 3) Uses gloves appropriately. | | X | |
| 4) Monitors handling of linen by employees. | | X | |
| 5) Checks refrigerators at nurse's station for appropriate temperature and labeled/dated food. | | X | |
| 6) Ensures cleanliness of medical equipment. | | | X |
| 7) Appropriately manages isolation procedures. | | X | |

COMMENTS: _Make sure fridge - Standard_
_need stickers_

| Technical Skills: | A | B | C |
|---|---|---|---|
| 1) Is personally competent in his/her position. | | X | |
| 2) Understands needs of the residents. | | X | |
| 3) Keeps apprised of new ideas. | | X | |
| 4) Knowledgeable of and complies with the Nurse Practice Act. | | X | |

COMMENTS: _____

| General Skills: | A | B | C |
|---|---|---|---|
| 7) Observes safety rules, policies and procedures. | | X | |
| 8) Can explain and demonstrate fire and emergency procedures. | | X | |
| 9) Identifies problems and reports them appropriately. | | X | |
| 10) Properly uses and maintains facility equipment. | | X | |
| 11) Shows respect for facility property. | | X | |
| 12) Courteous to guests and visitors. | | X | |
| 13) Portrays a positive image of the facility. | | X | |
| 14) Participates in quality improvement. | | X | |

COMMENTS: _____

| Personal Skills: | A | B | C |
|---|---|---|---|
| 1) Is demanding of self as well as subordinates. | | X | |
| 2) Volunteers innovative and effective ideas. | | X | |
| 3) Accepts & supports management. | | X | |
| 4) Is persuasive in selling ideas. | | X | |

COMMENTS: _____

| Personal Traits: | A | B | C |
|---|---|---|---|
| 1) Dependable. | | X | |
| 2) Observes Employee Handbook. | | X | |
| 3) Punctual. | | X | |
| 4) Willing to work assigned shifts. | | X | |
| 5) Has good attendance. | | X | |
| 1) Follows facility dress code. | | X | |
| 2) Is willing to help other staff. | | X | |
| 3) Follows directions. | | X | |
| 4) Asks questions. | | X | |
| 5) Able to motivate others. | | X | |
| 6) Positive attitude. | | X | |

COMMENTS: _____

2 of 4

Goals and objectives completed during this appraisal period: (Indicate satisfaction or dissatisfaction):

— _worked on reduce wdebeebl SOC requirement of Company._

*Needs Improvement Counseling Guidelines*

Job elements that are rated Needs Improvement must be specifically addressed with the employee, and the following should be discussed with the employee:

1) The standards of expected performance.
2) The support to be provided by the Supervisor.
3) The time frame necessary for improvement.

Please review all elements of this evaluation with the individual being rated, ask for the employee's written comments, signature, and date. Provide the employee with a signed copy, and place a second copy in the individual's personnel file.

Supervisor Comments/Recommendations:

Progress since last evaluation:   *1st annual review*

_____ *N/A* Improvement        _____ Decline *N/A*        _____ *N/A* Same

Future objectives and target dates:
Cont on Sur. targeted Goals → thru to 12/06
Cont on with Marketing efforts to improve census numbers

| Overall Evaluation: | _____ Exceptional | _____ Commendable | X Competent | _____ Marginal |
|---|---|---|---|---|

3 of 4

ATRIUM/FIELY 238

For Introductory Period evaluations, the Supervisor must indicate below whether this employee is:

    _X_  Recommended for retention.
    _____  Recommended for review again within 3 months.
    _____  Not recommended for retention.

For Annual evaluations, the Supervisor must provide a recommended wage increase:     _2.5_  %

Employee Comments:

_____

_____

_____

_____

_____

_____

_____

_____


_____        _____
Employee Signature                          Date

_____        _3/20/06_____
Supervisor Signature                        Date

_____        _____
Director of Nursing Review                Date

_____        _____
Administrator Review                   Date

ATRIUM/FIELY 239

## PERFORMANCE EVALUATION *Annual Eval.*

Employee Name: *Gene Fiely*    Hire Date *2/16/05* Job Title: *Don*

### JOB FUNCTION

**Quality of Work:** Consider quality of work produced regardless of quantity.

_____ Often makes mistakes. Work usually unsatisfactory.

✓ Maintains passable quality level part of the time.

_____ Usually does a good job. Few errors.

_____ Consistently does an excellent job. Errors are rare.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

---

**Quantity of Work:** Consider quantity of work produced regardless of quality.

_____ Takes a long time to accomplish little.

_____ Produces reasonable volume of work under direction.

✓ Produces a significant amount of work with little supervision.

_____ High production. Exceeds expectations regularly.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

---

**Knowledge of Work:** Consider knowledge in employee's field, his/her mastery of all aspects of job, skills, use of tools, and diagnostic abilities.

_____ Does not understand aspects of job.

_____ More knowledge of some aspects of job would be helpful.

✓ Has satisfactory knowledge of most aspects of the job.

_____ Has excellent mastery of all aspects of his/her work.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

### JOB FUNCTION

**Safety:** Consider knowledge of and adherence to safety rules.

_____ Often works in unsafe manner.

_____ Follows safety rules some of the time.

_____ Works in safe manner and follows rules most of the time.

✓ Knowledgeable of and adheres to all rules.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

---

**Customer Service:** Consider how the employee relates with residents, families, visitors, co-workers, and supervisor.

_____ Relates to customers in a negative way.

_____ Has a tendency to show negative customer service at times.

✓ Has a satisfactory customer service attitude.

_____ Exemplifies the Essex Healthcare philosophy and mission statement.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

---

**Dependability:** Consider how reliable the employee is and the extent that he/she carries out directions appropriately.

_____ Requires frequent checking or follow-up.

_____ Generally reliable. Needs follow-up on assignments that are not routine.

_____ Carries out instructions adequately. Needs only occasional follow-up.

✓ Conscientious and prompt. Excellent results with no need for follow-up.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

Form# 304-031 (12/04)

Moore Services, Inc. 2004 • Phone:(317)571-9800 • Fax:(317)571-9826


DEFENDANT'S EXHIBIT
K
8-12-14  JJB
PENGAD 800-631-6989

ATRIUM/FIELY 234

**Initiative:** Consider the extent to which the employee accepts responsibility and solves problems.

_____ Routine worker. Needs supervision and waits for instruction.

_____ Sometimes at a loss in other-than-routine situations. Accepts responsibility when directed.

✓ Resourceful, needs little assistance and often seeks additional responsibility.

_____ Excellent work with little assistance. Seeks additional tasks whenever time allows.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

**Punctuality and Attendance:** Consider overall attendance record of the employee.

The employee was late/tardy _____ days in the period from _____ to _____ (insert dates).

The employee had _____ days of unauthorized absence in the period form _____ to _____ (insert dates).

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

**Supplementary Remarks:** Identify employee's strengths and weaknesses, and his/her potential for increased responsibility. If this employee needs improvement, identify goals and suggested methods for improvement. Identify items that may be relevant to the employee's future development.

_____ _dif fue survey_
_____ _no bymar cont off help with fairly reputation — + censurs._

**Employee's Comments:**  3% _ok pre_

**Overall Evaluation:** _____ Exceptional _____ Commendable _____ Competent _____ Marginal

Evaluation conducted by: _M a_   Date: _2/7/07_

Reviewed by: _____   Date: _____

Employee's Signature: _____   Date: _2-15-07_

ATRIUM/FIELY 235

Due Date 2/16/08

# NURSE SUPERVISOR

## Performance Evaluation

Employee Name: _Jane Fiely_          Hire Date: _2/16/05_   Job Title: _Don_

Purpose of Evaluation: _____ Introductory _____          Annual _X_          Other _____

Present Rate Per Hour: _____          Period Covered by Appraisal: From _____ To _____

INSTRUCTIONS: Using the appropriate ratings, assign a rating to each job element by checking the appropriate column A, B, or C. An explanation must be provided anytime that a "C" is selected. The ratings are as follow:

Ratings:          A – Exceeds Expectations          B – Meets Expectations          C – Needs Improvement

| Supervision - Management | A | B | C |
|---|---|---|---|
| 1) Familiar with facility policies and procedures. | | ✓ | |
| 2) Effectively communicates with Supervisor. | | ✓ | |
| 3) As a member of management, conducts self professionally. | | ✓ | |
| 4) Directs STNA's to ensure quality of care. | | ✓ | |
| 5) Effectively exercises discretion in issuing or recommending discipline of employees. | | ✓ | |
| 6) Approves time records and working hours for employees. | | ✓ | |
| 7) Effectively utilizes STNA evaluations as a performance improvement tool. | | ✓ | |
| 8) Effectively recommends retention or discharge of employees at the end of their introductory period. | | ✓ | |
| 9) Assigns duties, breaks, working hours, and lunches of STNA's. | ✓ | | |
| 10) Interviews and recommends STNA's for hire. | ✓ | | |
| 11) Promotes Equal Employment Opportunity. | ✓ | | |
| 12) Maintains confidentiality of employee information. | | ✓ | |

COMMENTS: _____

| Organization: | A | B | C |
|---|---|---|---|
| 1) Delegates work to employees with their ability. | | ✓ | |
| 2) Establishes good working relationships with others. | | ✓ | |
| 3) Manages time well. | | ✓ | |

COMMENTS: _____

| Decision-Making: | A | B | C |
|---|---|---|---|
| 1) In absence of Supervisor, assumes responsibilities. | ✓ | | |
| 2) When interfacing with others, is convincing and decisive. | | ✓ | |
| 3) Exercises discretion & judgment. | | ✓ | |

COMMENTS: _____

| Leadership: | A | B | C |
|---|---|---|---|
| 1) Inspires others to perform well. | | ✓ | |
| 2) Analyzes problems and presents sound solutions. | | ✓ | |
| 3) Keeps subordinates informed. | | ✓ | |
| 4) Is accessible and helpful to employees. | | ✓ | |
| 5) Communicates well with other disciplines. | | ✓ | |

COMMENTS: _____

| Residents' Rights: | A | B | C |
|---|---|---|---|
| 1) Observes residents' rights to privacy. | ✓ | | |
| 2) Maintains confidentiality of resident records/information. | ✓ | | |
| 3) Shows respect for residents' personal property. | ✓ | | |
| 4) Treats residents with dignity. | | ✓ | |
| 5) Establishes positive relationship with resident's families. | ✓ | | |
| 6) Addresses residents appropriately. | ✓ | | |

COMMENTS: _____

1 of 4

Form# 304-032 (12/04)

Moore Services, Inc. 2004 • Phone:(317)571-9800 • Fax:(317)571-9826


DEFENDANT'S EXHIBIT
L
8-12-14   LPB
PENGAD 800-631-6989

ATRIUM/FIELY 230

## Documentation:

| | A | B | C |
|---|---|---|---|
| 1) All documentation is timely, thorough, accurate and legible. | | ✓ | |
| 2) Medical records and medication/treatment sheets are kept confidential and protected. | | ✓ | |
| 3) Properly addresses errors, omissions, and deletions on the medical record. | | ✓ | |
| 4) Notifies physician according to procedure. | | ✓ | |
| 5) Completes incident reports. | | ✓ | |
| 6) Thoroughly investigates all incidents while taking measures to protect the resident. | | ✓ | |
| 7) STNA evaluations are complete and timely. | | ✓ | |
| 8) Employee disciplinary memoranda are complete, consistent, and progressive. | | ✓ | |
| 9) Refrains from falsifying or altering documentation. | | ✓ | |

COMMENTS: _____

## Medications & Treatments:

| | A | B | C |
|---|---|---|---|
| 1) Uses medication room and carts responsibly. | | ✓ | |
| 2) Follows all procedures related to narcotics. | | ✓ | |
| 3) Follows physician orders for medications and treatments. | | ✓ | |
| 4) Uses emergency medication box according to procedure. | | ✓ | |
| 5) Follows facility policy and procedures on wound care. | | ✓ | |
| 6) Knowledgeable of drug interactions. | | ✓ | |
| 7) Properly documents telephone orders. | | ✓ | |

COMMENTS: _____

## Infection Control:

| | A | B | C |
|---|---|---|---|
| 1) Follows Universal Precautions. | ✓ | | |
| 2) Properly disposes of infectious waste, including syringes. | ✓ | | |
| 3) Uses gloves appropriately. | | ✓ | |
| 4) Monitors handling of linen by employees. | | ✓ | |
| 5) Checks refrigerators at nurse's station for appropriate temperature and labeled/dated food. | | ✓ | |
| 6) Ensures cleanliness of medical equipment. | | ✓ | |
| 7) Appropriately manages isolation procedures. | | ✓ | |

COMMENTS: _____

## Technical Skills:

| | A | B | C |
|---|---|---|---|
| 1) Is personally competent in his/her position. | | ✓ | |
| 2) Understands needs of the residents. | | ✓ | |
| 3) Keeps appraised of new ideas. | | ✓ | |
| 4) Knowledgeable of and complies with the Nurse Practice Act. | | ✓ | |

COMMENTS: _____

## General Skills:

| | A | B | C |
|---|---|---|---|
| 7) Observes safety rules, policies and procedures. | | ✓ | |
| 8) Can explain and demonstrate fire and emergency procedures. | | ✓ | |
| 9) Identifies problems and reports them appropriately. | | ✓ | |
| 10) Properly uses and maintains facility equipment. | ✓ | | |
| 11) Shows respect for facility property. | ✓ | | |
| 12) Courteous to guests and visitors. | ✓ | | |
| 13) Portrays a positive image of the facility. | | ✓ | |
| 14) Participates in quality improvement. | | ✓ | |

COMMENTS: _____

## Personal Skills:

| | A | B | C |
|---|---|---|---|
| 1) Is demanding of self as well as subordinates. | | ✓ | |
| 2) Volunteers innovative and effective ideas. | | ✓ | |
| 3) Accepts & supports management. | | ✓ | |
| 4) Is persuasive in selling ideas. | | ✓ | |

COMMENTS: _____

## Personal Traits:

| | A | B | C |
|---|---|---|---|
| 1) Dependable. | ✓ | | |
| 2) Observes Employee Handbook. | ✓ | | |
| 3) Punctual. | ✓ | | |
| 4) Willing to work assigned shifts. | ✓ | | |
| 5) Has good attendance. | ✓ | | |
| 1) Follows facility dress code. | ✓ | | |
| 2) Is willing to help other staff. | ✓ | | |
| 3) Follows directions. | ✓ | | |
| 4) Asks questions. | ✓ | | |
| 5) Able to motivate others. | ✓ | | |
| 6) Positive attitude. | ✓ | | |

COMMENTS: _____

2 of 4

Goals and objectives completed during this appraisal period: (Indicate satisfaction or dissatisfaction):

_– 2007 – def. fuel survey_ _Sat._
_2007 – no complaint survey_ _Sat._

*Needs Improvement Counseling Guidelines*

Job elements that are rated Needs Improvement must be specifically addressed with the employee, and the following should be discussed with the employee:

1) The standards of expected performance.
2) The support to be provided by the Supervisor.
3) The time frame necessary for improvement.

Please review all elements of this evaluation with the individual being rated, ask for the employee's written comments, signature, and date. Provide the employee with a signed copy, and place a second copy in the individual's personnel file.

Supervisor Comments/Recommendations:

_fuel program – work on to fuel to company standard of 12% or lower_
_for 2008._

Progress since last evaluation:

_____ Improvement          _____ Decline          ✓ Same

Future objectives and target dates:
_– fuel at Company Standard for 2008 (12%)_
_– Cont to help Attitude, team with Census Budget number_
_for 2008._

| Overall Evaluation: | _____ Exceptional | ✓ Commendable | _____ Competent | _____ Marginal |
|---|---|---|---|---|

3 of 4

For Introductory Period evaluations, the Supervisor must indicate below whether this employee is:

X    Recommended for retention.
_____ Recommended for review again within 3 months.
_____ Not recommended for retention.

For Annual evaluations, the Supervisor must provide a recommended wage increase:      _3_    %

Employee Comments:

_____
_____
_____
_____
_____
_____
_____

_____        2-22-08
Employee Signature                                     Date

_____        2/22/08
Supervisor Signature                                  Date

_____        _____
Director of Nursing Review                         Date

_____        _____
Administrator Review                                Date

4 of 4

ATRIUM/FIELY 233

*Due 2/16/09*

## PERFORMANCE EVALUATION

Employee Name: *Jane Fiely*    Hire Date: 2/16/09  Job Title: *DON*

### JOB FUNCTION

**Quality of Work:** Consider quality of work produced regardless of quantity.

____ Often makes mistakes. Work usually unsatisfactory.

____ Maintains passable quality level part of the time.

✓ Usually does a good job. Few errors.

____ Consistently does an excellent job. Errors are rare.

Progress since last evaluation:

____ Improvement ____ Decline ____ Same

**Quantity of Work:** Consider quantity of work produced regardless of quality.

____ Takes a long time to accomplish little.

____ Produces reasonable volume of work under direction.

✓ Produces a significant amount of work with little supervision.

____ High production. Exceeds expectations regularly.

Progress since last evaluation:

____ Improvement ____ Decline ____ Same

**Knowledge of Work:** Consider knowledge in employee's field, his/her mastery of all aspects of job, skills, use of tools, and diagnostic abilities.

____ Does not understand aspects of job.

____ More knowledge of some aspects of job would be helpful.

✓ Has satisfactory knowledge of most aspects of the job.

____ Has excellent mastery of all aspects of his/her work.

Progress since last evaluation:

____ Improvement ____ Decline ____ Same

### JOB FUNCTION

**Safety:** Consider knowledge of and adherence to safety rules.

____ Often works in unsafe manner.

____ Follows safety rules some of the time.

✓ Works in safe manner and follows rules most of the time.

____ Knowledgeable of and adheres to all rules.

Progress since last evaluation:

____ Improvement ____ Decline ____ Same

**Customer Service:** Consider how the employee relates with residents, families, visitors, co-workers, and supervisor.

____ Relates to customers in a negative way.

____ Has a tendency to show negative customer service at times.

✓ Has a satisfactory customer service attitude.

____ Exemplifies the Essex Healthcare philosophy and mission statement.

Progress since last evaluation:

____ Improvement ____ Decline ____ Same

**Dependability:** Consider how reliable the employee is and the extent that he/she carries out directions appropriately.

____ Requires frequent checking or follow-up.

____ Generally reliable. Needs follow-up on assignments that are not routine.

✓ Carries out instructions adequately. Needs only occasional follow-up.

____ Conscientious and prompt. Excellent results with no need for follow-up.

Progress since last evaluation:

____ Improvement ____ Decline ____ Same

Form# 304-031 (12/04)

Moore Services, Inc. 2004 • Phone:(317)571-9800 • Fax:(317)571-9826



DEFENDANT'S EXHIBIT
M
8-12-14
PENGAD 800-631-6989

ATRIUM/FIELY 226

<table>
<tr><td>

<u>Initiative:</u> Consider the extent to which the employee accepts responsibility and solves problems.

_____ Routine worker. Needs supervision and waits for instruction.

_____ Sometimes at a loss in other-than-routine situations. Accepts responsibility when directed.

✓ Resourceful, needs little assistance and often seeks additional responsibility.

_____ Excellent work with little assistance. Seeks additional tasks whenever time allows.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

</td><td>

<u>Punctuality and Attendance:</u> Consider overall attendance record of the employee.

The employee was late/tardy _____ days in the period from _____ to _____ (insert dates).

The employee had _____ days of unauthorized absence in the period form _____ to _____ (insert dates).

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

</td></tr>
</table>

**Supplementary Remarks:** Identify employee's strengths and weaknesses, and his/her potential for increased responsibility. If this employee needs improvement, identify goals and suggested methods for improvement. Identify items that may be relevant to the employee's future development.

work on *[handwritten]* issues — esp. Restraints +.

Cont. to work on Quality / Standards of Case Staff as they come up.

Work on employee communication. *[handwritten initials]*

**Employee's Comments:**

Plan to initiate a monthly BTUA meeting to increase communication

Overall Evaluation: _____ Exceptional  _____ Commendable  ✓ Competent  _____ Marginal

Evaluation conducted by: *[signature]*                     Date: 2/9/09

Reviewed by: _____                     Date: _____

Employee's Signature: *[signature]* Jace Fiely W                     Date: 2-17-09

ATRIUM/FIELY 227

*Annual Eval*

## PERFORMANCE EVALUATION

*Eval for 2/2010*

Employee Name: _Jane Fiely_   Hire Date _2/10/05_  Job Title: _DON_

### JOB FUNCTION

**Quality of Work:** Consider quality of work produced regardless of quantity.

_____ Often makes mistakes. Work usually unsatisfactory.

_____ Maintains passable quality level part of the time.

__✓__ Usually does a good job. Few errors.

_____ Consistently does an excellent job. Errors are rare.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

**Quantity of Work:** Consider quantity of work produced regardless of quality.

_____ Takes a long time to accomplish little.

_____ Produces reasonable volume of work under direction.

__✓__ Produces a significant amount of work with little supervision.

_____ High production. Exceeds expectations regularly.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

**Knowledge of Work:** Consider knowledge in employee's field, his/her mastery of all aspects of job, skills, use of tools, and diagnostic abilities.

_____ Does not understand aspects of job.

_____ More knowledge of some aspects of job would be helpful.

__✓__ Has satisfactory knowledge of most aspects of the job.

_____ Has excellent mastery of all aspects of his/her work.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

### JOB FUNCTION

**Safety:** Consider knowledge of and adherence to safety rules.

_____ Often works in unsafe manner.

_____ Follows safety rules some of the time.

__✓__ Works in safe manner and follows rules most of the time.

_____ Knowledgeable of and adheres to all rules.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

**Customer Service:** Consider how the employee relates with residents, families, visitors, co-workers, and supervisor.

_____ Relates to customers in a negative way.

_____ Has a tendency to show negative customer service at times.

__✓__ Has a satisfactory customer service attitude.

_____ Exemplifies the Essex Healthcare philosophy and mission statement.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

**Dependability:** Consider how reliable the employee is and the extent that he/she carries out directions appropriately.

_____ Requires frequent checking or follow-up.

_____ Generally reliable. Needs follow-up on assignments that are not routine.

__✓__ Carries out instructions adequately. Needs only occasional follow-up.

_____ Conscientious and prompt. Excellent results with no need for follow-up.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

Form# 304-031 (12/04)

Moore Services, Inc. 2004 • Phone:(317)571-9800 • Fax:(317)571-9826



DEFENDANT'S EXHIBIT

ATRIUM/FIELY 228

<u>Initiative:</u> Consider the extent to which the employee accepts responsibility and solves problems.

_____ Routine worker. Needs supervision and waits for instruction.

_____ Sometimes at a loss in other-than-routine situations. Accepts responsibility when directed.

___✓___ Resourceful, needs little assistance and often seeks additional responsibility.

_____ Excellent work with little assistance. Seeks additional tasks whenever time allows.

Progress since last evaluation:
_____ Improvement _____ Decline _____ Same

<u>Punctuality and Attendance:</u> Consider overall attendance record of the employee.

The employee was late/tardy _____ salary _____ days in the period from _____ to _____ (insert dates).

The employee had _____ days of unauthorized absence in the period form _____ to _____ (insert dates).

Progress since last evaluation:
_____ Improvement _____ Decline _____ Same

**Supplementary Remarks:** Identify employee's strengths and weaknesses, and his/her potential for increased responsibility. If this employee needs improvement, identify goals and suggested methods for improvement. Identify items that may be relevant to the employee's future development.

_____
_____
_____
_____
_____
_____

Employee's Comments:   I want to have a
Goal — Great Annual Survey

— Improve Nursing Staff's Customer Service
_____

Overall Evaluation: _____ Exceptional _____ Commendable _____ Competent ___✓___ Marginal

Evaluation conducted by: _Susane Fields_   Date: _2/11/11_

Reviewed by: _____   Date: _____

Employee's Signature: _June Fiely RN_   Date: _2-11-10_

ATRIUM/FIELY 229

*Annual Eval.* Due 2/16/11

## PERFORMANCE EVALUATION

Employee Name: _Karen Fiely_   Hire Date: _2/16/0X_  Job Title: _DON_

### JOB FUNCTION

**Quality of Work:** Consider quality of work produced regardless of quantity.

_____ Often makes mistakes. Work usually unsatisfactory.

_____ Maintains passable quality level part of the time.

__✓__ Usually does a good job. Few errors.

_____ Consistently does an excellent job. Errors are rare.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

**Quantity of Work:** Consider quantity of work produced regardless of quality.

_____ Takes a long time to accomplish little.

_____ Produces reasonable volume of work under direction.

__✓__ Produces a significant amount of work with little supervision.

_____ High production. Exceeds expectations regularly.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

**Knowledge of Work:** Consider knowledge in employee's field, his/her mastery of all aspects of job, skills, use of tools, and diagnostic abilities.

_____ Does not understand aspects of job.

_____ More knowledge of some aspects of job would be helpful.

__✓__ Has a satisfactory knowledge of most aspects of the job.

_____ Has excellent mastery of all aspects of his/her work.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

### JOB FUNCTION

**Safety:** Consider knowledge of and adherence to safety rules.

_____ Often works in unsafe manner.

_____ Follows safety rules some of the time.

_____ Works in safe manner and follows rules most of the time.

__✓__ Knowledgeable of and adheres to all rules.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

**Customer Service:** Consider how the employee relates with residents, families, visitors, co-workers, and supervisor.

_____ Relates to customers in a negative way.

_____ Has a tendency to show negative customer service at times.

__✓__ Has a satisfactory customer service attitude.

_____ Exemplifies the Essex Healthcare philosophy and mission statement.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

**Dependability:** Consider how reliable the employee is and the extent that he/she carries out directions appropriately.

_____ Requires frequent checking or follow-up.

_____ Generally reliable. Needs follow-up on assignments that are not routine.

__✓__ Carries out instructions adequately. Needs only occasional follow-up.

_____ Conscientious and prompt. Excellent results with no need for follow-up.

Progress since last evaluation:

_____ Improvement _____ Decline _____ Same

Form# 304-031 (12/04)

Moore Services, Inc. 2004 • Phone:(317)571-9600 • Fax:(317)571-9626



DEFENDANT'S EXHIBIT
O
8-12-14 SAB

ATRIUM/FIELY 224

| | |
|---|---|
| **Initiative:** Consider the extent to which the employee accepts responsibility and solves problems. | **Punctuality and Attendance:** Consider overall attendance record of the employee. _Salary_ |
| | The employee was late/tardy _____ days in the period from _____ to _____ (insert dates). |
| _____ Routine worker. Needs supervision and waits for instruction. | |
| _____ Sometimes at a loss in other-than-routine situations. Accepts responsibility when directed. | The employee had _____ days of unauthorized absence in the period form _____ to _____ (insert dates). |
| ✓ Resourceful, needs little assistance and often seeks additional responsibility. | |
| _____ Excellent work with little assistance. Seeks additional tasks whenever time allows. | Progress since last evaluation: |
| Progress since last evaluation: | _____ Improvement _____ Decline _____ Same |
| _____ Improvement _____ Decline _____ Same | |

**Supplementary Remarks:** Identify employee's strengths and weaknesses, and his/her potential for increased responsibility. If this employee needs improvement, identify goals and suggested methods for improvement. Identify items that may be relevant to the employee's future development.

_____
_____
_____
_____
_____
_____

**Employee's Comments:**

1. Improve Knowledge + skills of Nursing Dept
2. Help market, improve over all Customer Service in Nursing Dept
3. Change Cathe

Overall Evaluation: _____ Exceptional  ✓ Commendable _____ Competent _____ Marginal

Evaluation conducted by: _Roussine Fielly_  Date: 2/18/11

Reviewed by: _____  Date: _____

Employee's Signature: _James Fiely_  Date: 2-8-11

Management Performance Evaluation Form

EMPLOYEE INFORMATION:
Name: _Fang Fiely, RN_                  Title: _DON_    _Feb 7, 2013_
Date of Hire: _Feb 10, 2008_          Date of Review: _Feb 7, 2013_

Instructions:  Please complete all sections of the Performance Evaluation Form for the applicable review period.  For each category, choose the Performance Rating that best describes the individual's performance.  Specific comments are encouraged; however, comments and examples are required to support ratings of Outstanding, Needs Improvement, and Unsatisfactory.  Please add additional paper if necessary.

PERFORMANCE RATING DEFINITIONS:

Outstanding (5):  Performance is substantially above the established standards for the position.  Activities often contribute to imp Innovative work practices.  A truly outstanding contributor to the department and/or Atrium.  This category is to be used for truly out performance and requires written justification of performance.

Exceeds Expectations (4):  Consistently produces the desired results that are expected for a fully qualified employee in this position.  Perf often exceeds all required standards, and activities contribute to increased department results.  A solid performer and valuable contribut Atrium.

Meets Expectations (3):  Performance meets all established standards.  The employee is knowledgeable and capable in all major responsibilities.  Employee consistently completes the work that is required.

Needs Improvement (2):  Performance meets most, but not all, established standards.  This category is to be used for employees w demonstrate improvement or more consistent performance, and for employees still learning their job.  Areas for improvement must be list Performance Improvement Plan must be developed and implemented.

Unsatisfactory (1):  Performance is consistently below requirements/expectations.  Substandard areas are noted.  In order for the emp continue in the position, a Performance Improvement Plan to bring performance up to required standards must be successfully completed w time period specified.



DEFENDANT'S
EXHIBIT
φ
PENGAD 800-631-6989
8-12-14     87B

Management Performance Evaluation Form

**GOALS AND ACCOMPLISHMENTS:** Evaluate the level of performance against the following goals. Goals should reflect and support Company-wide and department goals, as well as any pertinent individual development goals. Please complete a Goal Setting Worksheet for each goal.

| | R. |
|---|---|
| 1. Provide Quality Care for all Residents | |
| 2. Deficiency - Free surveys | |
| 3. | |
| 4. | |
| 5. | |
| Total | |

**PERFORMANCE FACTORS:** Review the definition of each Performance Factor and rate the individual as to how they perform the standards/criteria of his/her specific job function.

| | R. |
|---|---|
| **1. Job Knowledge:** Possesses the technical knowledge. Displays knowledge and expertise of sound management practices. Understands Atrium's mission/values. Maintains command of critical issues.<br>Comments: Good knowledge of Omni systems | 4 |
| **2. Leadership:** Is persuasive and convincing, fair, and impartial. Sets high standards and direction. Fosters a work environment characterized by mutual respect; serves as a role model. Willing to take ownership of a project, department, or activity. Positively contributes to plans and initiatives to advance Atrium's mission and objectives.<br>Comments: | 3 |
| **3. Management Effectiveness:** Defines roles and responsibilities of staff, and sets clear expectations. Delegates effectively, recognizes contributions, and manages collaboratively. Targets and achieves results, sets challenging goals, and overcomes obstacles.<br>Comments: Needs to improve - will help by having nursing stations separated now | 2.5 |
| **4. Communication:** Demonstrates skill in communicating with others, both verbally and in writing. Gives sufficient and clear instructions for work. Can prepare and deliver clear and accurate memos, reports, and presentations. Works well with Board, management, peers, and/or subordinates. Develops a climate of teamwork and cooperation with others. Demonstrates effective and active listening. Provides appropriate communication to department; regularly holds department meetings, if applicable.<br>Comments: Good - circulates memo's - Documentation good | 3.5 |
| **5. Customer Services/Patient Relations/Employee Relations:** Understands the mission of the Company and strives to deliver the best patient care possible. Effectively implements the Atrium Advantage in all work practices. Takes the initiative to meet the patient's, family's, and employee's needs in a timely and courteous manner. Recognizes the importance of and takes accountability for delivering exceptional customer service. Responds quickly and appropriately when interacting with patients and employees. Ensures patient confidentiality.<br>Comments: Jane has shown marked improvement in Resident & Staff relations. | 3.5 |
| **6. Decision Making/Judgment/Problem Solving:** Able to make sound decisions, systematically and under pressure. Presents viable alternatives when making recommendations, and builds consensus when required. Can make difficult/unpopular decisions, and considers impact. Able to deal effectively with change and ambiguous situations. Demonstrates ability to clearly isolate, define, and seek solutions to problem areas. Notifies all affected parties prior to implementing decisions.<br>Comments: | 3.6 |
| **7. Financial/Budget Management:** Demonstrates financial accountability for the respective department. Ensures that risk and liabilities are minimized to the department, and/or seeks opportunities for new income. Develops and implements policies and procedures to maximize the financial performance of the Company/facility.<br>Comments: Labor, etc. needs to. Has been educated re: labor nursing staff acct to leave on time | 2.5 |
| **8. Planning & Execution:** Adheres to schedules and plans, and establishes both short and long term plans to meet future needs. Foresees changes and trends relevant to areas of responsibility. Prioritizes work and manages time wisely in order to meet agreed upon deadlines. Retains and updates critical documentation, as necessary.<br>Comments: | 3.5 |
| **9. Performance Standards:** Communicates performance standards to employees. Evaluates employees on time based on measurable behavior or results. Puts time and effort into improving performance in assigned areas of responsibility. Completes timely performance reviews and provides constructive feedback as necessary.<br>Comments: | 3 |
| Total | |

| TOTAL SCORE | AVERAGE SCORE<br>(Total Score/# Goals & Performance Factors Applicable) | OVERALL PERFORMANCE RAT<br>O (4.6-5.0), E (3.6-4.5), M (2.6-3.5), N (1.6-2.5) |
|---|---|---|
| 29 | 29 | 3.2 |

2

Management Performance Evaluation Form

| REVIEWER'S COMMENTS | INDIVIDUAL'S COMMENTS |
|---|---|
| Please review Nurses NOTES daily — work to improve LABOR MGT. LETS dus | See attached |

**DEVELOPMENT PLANS:**
Do you have an interest in further developing your career?  ☒ Yes  ☐ No
If yes, please complete the Professional Development Plan Worksheet.

**NEW GOALS/OBJECTIVES (IF APPLICABLE):** List goals/objectives for the next performance period, as appropriate. Goals/objective

1. Work to Stay in Budget on a daily Basis / weekly Fle
2. Obtain Geriatric Nurse Certification
3. Improve Assistant management through Delegation + Accountability
   A. Lab Reports - Infection Control   O4. Pix Slip Adhesion tracking

**CURRENT EMPLOYEE STATUS (DISCIPLINE):** Please check the appropriate employment status. ✓ Meets
☐ In good standing          ☐ Second written
☒ Oral, but documented      ☐ Final
☐ First written

| SIGNATURES: | | DATE: |
|---|---|---|
| Employee*: | June Fiely | 8-8-13 |
| Reviewer: | Kerianne Fiello NHA | 4/8/2013 |
| Department Head: | | |

*My signature means I have reviewed this evaluation, discussed its contents with my reviewer, and am aware of my performance evaluation. It does not imply agreement with the evaluation.

C:\Documents and Settings\Staff\Local Settings\Temporary Internet Files\Content.IE5\01SCOT4U\Management Performance Form.odt

3

ATRIUM/FIELY 191

Progressive Discipline                                                                         1 of 2

## EMPLOYEE MEMORANDUM

__JANE Fiely__                    __P. O. N__                    __61 ST MARY S__
Employee Name                Department and Job Title            Facility Number/Name

☐ CATEGORY I VIOLATION
(Check if appropriate)

☐ Suspension Pending Investigation begins _____/_____/_____

Category I Violation No. _____  Description of violation: _____
_____

Any previous Category I Violation? ☐No   ☐Yes   If yes, Describe:_____
_____

After investigation is completed:   ☐Discharge effective _____/_____/_____, or ☐Reinstatement

Explain: _____

☒ CATEGORY II VIOLATION
(Check if appropriate)

Personnel files should be reviewed by the immediate supervisor to determine the appropriate step. If
this is the Employee's second written warning (Step 3), the employee is hereby reminded that four
disciplinary actions within a twelve-month period is cause for discharge.

Check one:     Step 1 ☐ Oral warning (documented)   Step 2 ☒ 1st written warning
               Step 3 ☐ 2nd written warning           Step 4 ☐ Suspension pending investigation for
discharge

Violation Category II Violation No. _____  Description of violation: _____
_did not use to correct call policy for Corporate reporting of_
_incidents_
List all other disciplinary actions in the past year:
Dates:          Comments:                        employee signature  Jane Fiely
_____     _____      _____
_____     _____
_____     _____

If this is a Step 4 suspension pending investigation, complete the following:

Suspension begins: _____/_____/_____

After investigation is completed:   ☐Discharge effective _____/_____/_____, or ☐Reinstatement

Explain: _____
_____  Matt Purcell
                              FORM PG502


DEFENDANT'S
EXHIBIT
8-12-14

ATRIUM/FIELY 218

Progressive Discipline                                                    1 of 2

EMPLOYEE MEMORANDUM

_Jane Fiely_          _D.O.N_          _61-ST MArys_
Employee Name         Department and Job Title     Facility Number/Name

☐ CATEGORY I VIOLATION
(Check if appropriate)

☐ Suspension Pending Investigation begins ____/____/____

Category I Violation No. _____ Description of violation: _____

_____

Any previous Category I Violation? ☐No   ☐Yes   If yes, Describe:_____

_____

After investigation is completed:   ☐Discharge effective ____/____/____, or ☐Reinstatement

Explain: _____

☑ CATEGORY II VIOLATION
(Check if appropriate)

Personnel files should be reviewed by the immediate supervisor to determine the appropriate step. If
this is the Employee's second written warning (Step 3), the employee is hereby reminded that four
disciplinary actions within a twelve-month period is cause for discharge.

Check one:   Step 1 ☐Oral warning (documented)   Step 2 ☐1st written warning
             Step 3 ☑2nd written warning   Step 4 ☐Suspension pending investigation for
discharge

Violation Category II Violation No. _____ Description of violation: _inappropriate use of_
_of restraints causing a complant injury, F-tag 221, resident rights._

List all other disciplinary actions in the past year:
Dates:              Comments:
_____         _____
_____         _____

If this is a Step 4 suspension pending investigation, complete the following:

Suspension begins: ____/____/____

After investigation is completed:   ☐Discharge effective ____/____/____, or ☐Reinstatement

Explain: _____

_____

FORM PG502

DEFENDANT'S
EXHIBIT
R
8-12-14    RJB
PENGAD 800-631-6989

ATRIUM/FIELY 216

Progressive Discipline                                                                                   2 of 2

Complete the following for both Category 1 and Category 2 violations:

SUPERVISOR'S COMMENTS
You will not have another serious incident that causes
another written warning could result in suspension
or immediate termination.

EMPLOYEE'S COMMENTS

I REQUEST (SELECT ONE):
☐ Appeal of Disciplinary Action                    ☐ No Appeal of Disciplinary Action
(See your Supervisor to obtain the appropriate form located in the "Forms" section of the Policy and Procedure Guidelines Manual.)

CORRECTIVE ACTION TO BE TAKEN

State what corrective action the employee is to take.

_____          12-02-08
Employee                                                          Date

Employee's signature indicates that he/she had an opportunity to review this form and to comment or
explain and it also indicates that the corrective action was discussed. The employee's signature does not
necessarily indicate that he/she agrees with the action taken.

_____          _____
Supervisor                                                       Date

_____          12/2/08
Administrator Approval                                   Date

If this memorandum involves a suspension or discharge, the Administrator must approve. Otherwise,
the employee's immediate supervisor may issue progressive discipline without prior approval of a higher
authority. In either case, the employee's immediate supervisor should meet with the employee and
discuss this memorandum.

FORM PG502

ATRIUM/FIELY 217

## EMPLOYEE COUNSELING RECORD

1. Employee Name: _Jane Fiely_     2. Position/Title: _Director of Nursing_

2. Type: Verbal Warning  [X]     Written Warning  [ ]

3. Date of Warning: _6/18/10_

5. Facility Name: _St Marys Living Center_   6. Facility No.: _61_

7. Specific statement of the offense followed by a brief description of the events/circumstances leading to this warning.

Failure to adequately staff the nursing department
Art 2.1 of Discipline policy - Failure to perform assigned duties in an appropriate manner. DON failed to adequately staff on 6/5 & 6/6 by neglecting to replace an employee who was on leave. On 6/15, failed to staff third shift by neglecting to replace an employee

8. Summary of the explanations/reasons given by the employee. If none, write none. Hunt quit w/o notice on 6/14/10.

Schedule is a full time job
NOT Enough hours in a day

9. Description of warning given, corrective action required and next step if corrective action not taken. Include review and completion dates, if applicable.

Employer is to take over full responsibility of scheduling. Employee to check schedule daily and make efforts to find adequate coverage. This is a verbal warning. Further failure to perform assigned duties will result in further disciplinary action, up to and including, termination.

10. Request the employee to check one and sign if the action is a written warning:

____  I understand this warning and what must be done to correct the problem.

_✓_  I do not wish to respond in writing to this action.

Employee Signature_____  Date_____

11. Supervisor Signature_____  _LNHA_  Date _6/18/10_

12. Witness Signature*_____ Title_____  Date_____
    *Only if no employee signature

13. Review: Approved_____  14. Not Approved_____  15. Downgraded To: _____

16. Reason for change: _____

Signature_____ Title_____ Date_____

Form # 300-007 (7/92)          Moore Services, Inc. © 1987 • Phone: (317) 571-9800 • Fax: (317) 571-9826

DEFENDANT'S EXHIBIT
S
PENGAD 800-631-6989
8-12-14  YGB

ATRIUM/FIELY 196

EMPLOYEE MEMORANDUM

*Jane Fiely*
Employee Name

*Dir of Nursing*
Department and Job Title

*SMLC/61*
Facility Number/Name

SUSPENSION PENDING INVESTIGATION (Refer to 1.1 – 1.28; not all inclusive)

Suspension Pending Investigation begins _____ / _____ / _____

Violation No. _____     Description of violation: _____

_____

Any previous violations?     ☐ No     ☐ Yes   If yes, Describe: _____

_____

After investigation is completed:     ☐ Discharge effective _____ / _____ / _____ , or ☐ .
Reinstatement

Explain: _____

_____

PROGRESSIVE DISCIPLINE (Refer to 2.1 – 2.23; not all inclusive)

Personnel files should be reviewed by the immediate supervisor to determine the appropriate
step. If this is the employee's final written warning (Step 3), the employee is hereby reminded
that four disciplinary actions within a twelve-month period is cause for discharge.

Check one:     Step 1 ☐ Oral warning (documented)   Step 2 ☐ 1st written warning
               Step 3 ☒ Final written warning     Step 4 ☐ Suspension pending investigation
                                                           or Discharge

Violation No. *1.24 & 1.25* Description of violation: *Two instances of*
*No Call, No Show / Job Abandonment*

List all other disciplinary actions in the past year:
Dates:              Comments:
*6/18/10*           *Verbal – Art 2.1*
*5/25/10*           *Improvement Plan*

PG-306

FORM # 304-053 (9/2005)          Moore Services Inc., 2005 • Ph: (317) 571-9600 • Fax: (317) 571-9828


DEFENDANT'S
EXHIBIT
T
8-12-14  *JJB*
PENGAD 800-631-6989

ATRIUM/FIELY 194

SUPERVISOR'S COMMENTS and RECOMMENDATIONS

*Employee stated intent to provide resignation notice on 7/26/10. Notice never received. Employee never returned to work. Last day worked was 7/28/10*

EMPLOYEE'S COMMENTS

I REQUEST (SELECT ONE):
☐ Appeal of Disciplinary Action                    ☐ No Appeal of Disciplinary Action
(See your Supervisor to obtain the appropriate form located in the "Forms" section of the Policy and Procedure Guidelines Manual.)

CORRECTIVE ACTION TO BE TAKEN

State what corrective action the employee is to take.

_____          _____
Employee                                                              Date

Employee's signature indicates that he/she had an opportunity to review this form and to comment or explain and it also indicates that the corrective action was discussed. The employee's signature does not necessarily indicate that he/she agrees with the action taken.

_____          _____
Supervisor                                                           Date

_____          7/28/10
Administrator Approval                                      Date

If this memorandum involves a suspension or discharge, the Administrator must approve. Otherwise, the employee's immediate supervisor may issue progressive discipline without prior approval of a higher authority. In either case, the employee's immediate supervisor should meet with the employee and discuss this memorandum.

PG-306

FORM # 304-053 (9/2005)                    Moore Services Inc. 2005 • Ph: (317) 571-9800 • Fax: (317) 571-9826

## EMPLOYEE MEMORANDUM

*Jane Fiely*
Employee Name

*RN/DON*
Department and Job Title

St Marys #61
Facility Number/Name
Atrium

SUSPENSION PENDING INVESTIGATION (Refer to 1.1 – 1.28; not all inclusive)

Suspension Pending Investigation begins _____/_____/_____

Violation No. _____    Description of violation: _____

_____

Any previous violations?    ☐No    ☐Yes   If yes, Describe:_____

_____

After investigation is completed:    ☐Discharge effective _____/_____/_____, or ☐
Reinstatement

Explain: _____

_____

## PROGRESSIVE DISCIPLINE (Refer to 2.1 – 2.23; not all inclusive)

Personnel files should be reviewed by the immediate supervisor to determine the appropriate step. If this is the employee's final written warning (Step 3), the employee is hereby reminded that four disciplinary actions within a twelve-month period is cause for discharge.

Check one:    Step 1 ☒ Oral warning (documented)    Step 2 ☐ 1st written warning
             Step 3 ☐ Final written warning    Step 4 ☐ Suspension pending investigation
                                                        or Discharge

Violation No. *2.1*    Description of violation: *Unsatisfactory Work*
*Performance - Labor hours over budget.  PPd 6/9/12 -*
*6/23/12*

List all other disciplinary actions in the past year:
Dates:         Comments:

_____    _____

_____    _____

PG-306

FORM # 304-053 (9/2005)

Moore Services Inc., 2005 • Ph: (317) 571-9800 • Fax: (317) 571-9826


DEFENDANT'S EXHIBIT
U
8-12-14
PENGAD 800-631-6989

ATRIUM/FIELY 265

SUPERVISOR'S COMMENTS and RECOMMENDATIONS

*Jane - Please monitor your nursing dept hours daily. Flow ouitative ratyn in/out beside care based on acuity hours not staff need. No clocking early by nurses & nurses cannot clock but late*

EMPLOYEE'S COMMENTS

*Have Not Received Labor Report (Since June 6*

I REQUEST (SELECT ONE):
☐ Appeal of Disciplinary Action          ☐ No Appeal of Disciplinary Action
(See your Supervisor to obtain the appropriate form located in the "Forms" section of the Policy and Procedure Guidelines Manual.)

CORRECTIVE ACTION TO BE TAKEN

State what corrective action the employee is to take.

*Jane should have requested a copy of the labor report if needed*

*Refused to sign*                                    7/6/12
Employee                                             Date

Employee's signature indicates that he/she had an opportunity to review this form and to comment or explain and it also indicates that the corrective action was discussed.  The employee's signature does not necessarily indicate that he/she agrees with the action taken.

_____                    _____
Supervisor                                          Date

*Louise Fulton*                                      7/6/12
Administrator Approval      *Claudette Minnick 7/6/12*  Date

If this memorandum involves a suspension or discharge, the Administrator must approve.  Otherwise, the employee's immediate supervisor may issue progressive discipline without prior approval of a higher authority.  In either case, the employee's immediate supervisor should meet with the employee and discuss this memorandum.

PG-306

FORM # 304-053 (9/2005)              Moore Services Inc.• 2005 • Ph: (317) 571-9800 • Fax: (317) 571-9828

ATRIUM/FIELY 266

## EMPLOYEE MEMORANDUM

_Marie Fiely_     _DON/RN_      St Marys #61
Employee Name          Department and Job Title       Facility Number/Name
                                                         Atrium

### SUSPENSION PENDING INVESTIGATION (Refer to 1.1 – 1.28; not all inclusive)

Suspension Pending Investigation begins ____/____/____

Violation No. _____     Description of violation: _____

_____

Any previous violations?     ☐ No    ☐ Yes   If yes, Describe: _____

_____

After investigation is completed:   ☐ Discharge effective ____/____/____, or ☐
Reinstatement

Explain: _____

_____

### PROGRESSIVE DISCIPLINE (Refer to 2.1 – 2.23; not all inclusive)

Personnel files should be reviewed by the immediate supervisor to determine the appropriate
step.  If this is the employee's final written warning (Step 3), the employee is hereby reminded
that four disciplinary actions within a twelve-month period is cause for discharge.

Check one:    Step 1 ☐ Oral warning (documented)   Step 2 ☐ 1st written warning
            Step 3 ☑ Final written warning      Step 4 ☐ Suspension pending investigation
                                                         or Discharge

Violation No. _2.8_     Description of violation: _Failure to Maintain_
_Acceptable Standards of respect for others._

List all other disciplinary actions in the past year:
Dates:        Comments:
_7/6/12_     _Unsatisfactory Work Performance_
_12/19/2012_     _Unsatisfactory Work Performance_

PG-306

FORM # 304-053 (9/2005)                          Moore Services Inc. 2005 • Ph: (317) 571-9800 • Fax: (317) 571-9825



DEFENDANT'S EXHIBIT
PENGAD 800-631-6989
8-12-14   SPB

ATRIUM/FIELY 267

SUPERVISOR'S COMMENTS and RECOMMENDATIONS

_Jane was overheard yelling at a nurse on Friday, 7/13/12 @ approx 1:30 pm in a patient area and in front of others._

EMPLOYEE'S COMMENTS

I REQUEST (SELECT ONE):

☐ Appeal of Disciplinary Action
(See your Supervisor to obtain the appropriate form located in the "Forms" section of the Policy and Procedure Guidelines Manual.)

☐ No Appeal of Disciplinary Action

CORRECTIVE ACTION TO BE TAKEN

State what corrective action the employee is to take.

_Jane will be placed on a 30/60/90/180 day action plan to work on employee relationship & communication, the proper way to educate and train employees, improve follow through and relationships with other dept. mgrs._

_____    Date 7/7/12
Employee

Employee's signature indicates that he/she had an opportunity to review this form and to comment or explain and it also indicates that the corrective action was discussed.  The employee's signature does not necessarily indicate that he/she agrees with the action taken.

_____    _____
Supervisor                       Date

_____    _____
Administrator Approval           Date

If this memorandum involves a suspension or discharge, the Administrator must approve.  Otherwise, the employee's immediate supervisor may issue progressive discipline without prior approval of a higher authority.  In either case, the employee's immediate supervisor should meet with the employee and discuss this memorandum.

PG-306

FORM # 304-053 (9/2005)

Moore Services Inc. • 2005 • Ph: (217) 571-9800 • Fax: (217) 571-9826

ATRIUM/FIELY 268

## EMPLOYEE MEMORANDUM

<u>Jane Fiely, RN/DON</u>     St Marys #61
Employee Name           Department and Job Title       Facility Number/Name
                                                    Atrium

<u>SUSPENSION PENDING INVESTIGATION (Refer to 1.1 – 1.28; not all inclusive)</u>

Suspension Pending Investigation begins _____ / _____ / _____

Violation No. _____     Description of violation: _____

_____

Any previous violations?     ☐No    ☐Yes   If yes, Describe: _____

_____

After investigation is completed:    ☐Discharge effective _____ / _____ / _____ , or☐
Reinstatement

Explain: _____

_____

_____

<u>PROGRESSIVE DISCIPLINE (Refer to 2.1 – 2.23; not all inclusive)</u>

Personnel files should be reviewed by the immediate supervisor to determine the appropriate step. If this is the employee's final written warning (Step 3), the employee is hereby reminded that four disciplinary actions within a twelve-month period is cause for discharge.

Check one:    Step 1 ☐ Oral warning (documented)    Step 2 ☑ 1st written warning
           Step 3 ☐ Final written warning          Step 4 ☐ Suspension pending investigation
                                                  or Discharge

Violation No. <u>2.8</u>     Description of violation: <u>Failure to Maintain</u>

<u>Acceptable Standard of Respect for Others</u>

List all other disciplinary actions in the past year:
Dates:          Comments:
<u>7/6/12</u>      <u>Unsatisfactory Work Performance</u>

_____    _____

                               PG-306

FORM # 304-053 (9/2005)                Moore Services Inc. • 2005 • Ph: (317) 571-9800 • Fax: (317) 571-9826



DEFENDANT'S EXHIBIT
PENGAD 800-631-6989
W
8-12-14

ATRIUM/FIELY 271

SUPERVISOR'S COMMENTS and RECOMMENDATIONS

_This offense is relating to the event on 7/13/12 in patient P.P.'s room. Jan will use a calm, approach & respectful manner in dealing with employees — not addressing_

EMPLOYEE'S COMMENTS  _staffing problems in resident areas and in front of therapy staff and/or visitors._

I REQUEST (SELECT ONE):
☐ Appeal of Disciplinary Action          ☐ No Appeal of Disciplinary Action
(See your Supervisor to obtain the appropriate form located in the "Forms" section of the Policy and Procedure Guidelines Manual.)

CORRECTIVE ACTION TO BE TAKEN

State what corrective action the employee is to take.

_Please re-read the Atrium mission statement and creeds. Follow these guidelines. Complete 180 day action plan objectives (attached)_

_____                    _____
Employee                                     Date

Employee's signature indicates that he/she had an opportunity to review this form and to comment or explain and it also indicates that the corrective action was discussed. The employee's signature does not necessarily indicate that he/she agrees with the action taken.

_____                    _____
Supervisor                                   Date

_Jennifer Fischer_                           _7/18/12_
Administrator Approval                        Date

If this memorandum involves a suspension or discharge, the Administrator must approve. Otherwise, the employee's immediate supervisor may issue progressive discipline without prior approval of a higher authority. In either case, the employee's immediate supervisor should meet with the employee and discuss this memorandum.

PG-306

FORM # 304-053 (9/2005)          Moore Services Inc.• 2005 • Ph: (317) 571-9800 • Fax: (317) 571-9826

ATRIUM/FIELY 272

St Mary's Nursing and Rehabilitation Community
Improvement Plan

Date: May 25ᵗʰ 2010

The purpose of the plan is to address areas of concern that I see to ensure we together meet the goals and objectives of St. Marys Living Center and those of Atrium Centers, LLC. To be successful in our operation I have determined that the areas below need to be implemented and followed through on a daily, weekly and monthly basis.

The following actions items are all duties assigned to the position of the Director of Nursing, which have been identified as needing immediate improvement

1) Area of Concern: Incident/Accident reports not being completed in a timely manner, as outlined in policy and procedure. Director of Nursing summaries not completed for any falls in the month of April. New Admission chart missing necessary admission assessments 15 days after date of admission.
   Action Plan: To have all incidents thoroughly investigated and documented in a timely manner and to have all admission documentation completed within 24 hours of admission. Additionally to monitor daily care and follow up that is required to provide the necessary care and services for every resident.

2) Area of Concern: Standards of Care meeting not occurring on a weekly basis, ~~weekly~~ monthly reports not being completed according to policy, and not being provided to Administrator for review.
   Action Plan: Initiate Weekly SOC meeting immediately including the documentation of comprehensive meeting notes. Monthly SOC report to be reviewed and signed by Administrator, prior to submission. All weekly reports are to be sent to Corporate Consultant at the expected date/time every week, and Administrator to be CC'd and/or given copy to assure completion.

3) Area of Concern: Nursing staff in violation of policy & procedures, with no documented counseling and/or disciplinary action
   Action Plan: Jane Fiely will educate, counsel and discipline nursing staff as needed, completing all required documentation. Ensure the completion of all annual reviews on all nursing staff. Any and all wage changes to be approved by Administrator. Disciplinary actions to be discussed with Administrator prior and given to Administrator for review. All termination decisions to be approved prior, by Administrator.

4) Area of Concern: Infection Control, Wound, and Falls Programs not in compliance with company policy and procedure. Using incorrect forms for Immunizations, Skin assessment sheets not completed as outlined by policy (not utilizing Individual wound sheets, but combining all on one form). Investigative reports for falls not completed timely, Director of Nursing summaries not being completed, or are inconclusive; do not establish a root cause nor come to a conclusion on investigation. Interventions not being implemented timely or inappropriate interventions applied.
   Action Plan: Ensure implementation of all applicable nursing programs, including but not limited to infection control, wounds, and falls. Director of Nursing assumes full responsibility in programs' completion, as outlined in policy and procedure, also to complete and maintain all tracking logs for applicable programs. Ensure all TB, pneumonia, and influenza vaccinations are completed timely, and all applicable documentation completed according to facility policy and procedure. DON to round with wound nurse weekly, and ensure wound report and skin sheets are completed as outlined in policy and procedure.



DEFENDANT'S
EXHIBIT
X
8-12-14

ATRIUM/FIELY 197

5) Area of Concern: Failure to notify Administrator of incidents/accidents and other events occurring in facility. Failed to notify Administrator of a death in the facility, omits Assisted Living incidents/accidents from AM meeting, and has no system in place for reviewing Assisted Living incidents. Failure to communicate with Administrator on items given to state surveyor during Assisted Living survey, as well as items requested for review by state surveyor.

Action Plan: To facilitate and ensure communication with Administrator on daily operations within the Nursing Department, and to make Administrator aware of any present issues and areas of noncompliance within department, including, but not limited to: a) all incidents/ accidents, expirations, including Assisted Living and Skilled Nursing b)staffing issues, open positions c) any disciplinary actions.

6) Area of Concern: Nursing staffing was left with openings/discrepancies prior to Director of Nursing leaving for vacation. Openings left unfilled for weekend coverage, staff being placed in more than one shift per day in error and not corrected prior to leave. Nursing staffing PPDs overall running consistently over budget by hours and by dollars. STNA PPD consistently running under budget also a concern in regards to adequate staffing.

Action Plan: Staff within nursing ppd to provide care and services for our residents. Daily staffing report to the Administrator. All overtime requests to be brought to Administrator for approval, prior to occurrence. All open positions to be filled timely, referring all candidates to Administrator for second interview, and final approval prior to an offer of employment being made.

## Priorities for the Director of Nursing

Establishing a daily/weekly routine for the DON position will assure compliance with company policies and skilled nursing regulations which will decrease the negative outcomes for residents.

Upon arrival at the facility, the following routine will be initiated, effective immediately:

1) Check the daily nursing schedule and secure staffing for the next 24 hours and be aware of staffing needs for the next 7 days.

2) Read the nursing notes and 24 hour report from the prior day, bring notes to morning meeting to read, follow up on any change of conditions, incidents, family/resident concerns, and medication administration and availability, etc.

3) Review and assure the prior day's incident reports are complete including: a) complete incident report with notifications and new intervention, b) witness statements, c) nurses note, d) pain assessment, fall assessment (or other assessment as needed) and e) verify intervention is in place, bring incident reports to morning meeting, f) care plan updated g) 72 hour charting q shift, and make available to Administrator for review and signature.

4) Review admissions from the prior day insuring the following are completed: a) admission note, b) all admission assessments, c) TB, pneumonia/flu information d) nurse assessment, e) Braden scale, f) Elopement assessment, g) History and physical h) immediate care plan, bringing chart to morning meeting for review by IDT

5) Review any new physician orders from the previous day; bring orders to morning meeting to review with IDT. Ensure all orders are signed by physician in a timely manner.

ATRIUM/FIELY 198

As the Administrator I want to ensure we have the best outcomes possible. To obtain this I need these areas improved upon to ensure sustained compliance.

The review of Jane's progress regarding this plan will be assessed throughout the length of time assigned in this action plan. All identified areas stated above are to be in compliance by the 23rd of July, 2010.

This improvement Plan has been reviewed in detail with Jane Fiely, Director of Nursing, on May 25th. It is understood that the DON be responsible for immediate improvement and progress in all of the areas outlined and that our target for total implementation of the improvement plan is within the next 60 days. As Administrator, I will be available to the DON to address roadblocks, as identified by the DON, which stand in the way of this implementation.

Copy provided to the Director of Nursing on May 25th, 2010

_____, DON                          6-8-10
                                                      Date

_____, Administrator  LNHA          5/25/10
                                                      Date

ATRIUM/FIELY 199

St Mary's Nursing and Rehabilitation Community
Improvement Plan

Date: May 25th 2010
Updated: June 22nd, 2010 – Follow up meeting
Updated: July 22nd, 2010 – Follow up

The purpose of the plan is to address areas of concern that I see to ensure we together meet the goals and objectives of St. Marys Living Center and those of Atrium Centers, LLC. To be successful in our operation I have determined that the areas below need to be implemented and followed through on a daily, weekly and monthly basis.

The following actions items are all duties assigned to the position of the Director of Nursing, which have been identified as needing immediate improvement:

1) **Area of Concern:** Incident/Accident reports not being completed in a timely manner, as outlined in policy and procedure. Director of Nursing summaries not completed for any falls in the month of April. New Admission chart missing necessary admission assessments 15 days after date of admission.

   **Action Plan:** To have all incidents thoroughly investigated and documented in a timely manner and to have all admission documentation completed within 24 hours of admission. Additionally to monitor daily care and follow up that is required to provide the necessary care and services for every resident.

   6/22/10 Follow Up- Reports still not being completed in a timely manner, sometimes over a week without all follow up being done. Nurses not getting all staff statements at time of incident, not implementing intervention or using inappropriate interventions. One newly admitted resident, after 2 days, no Admission note written. No nurses notes written on day of admission.

   7/22/10 Follow up – Ongoing concern, this remains to be an issue and requires immediate correction. Incident Management logs not up to date.

2) **Area of Concern:** Standards of Care meeting not occurring on a weekly basis, weekly reports not being completed according to policy, and not being provided to Administrator for review.

   **Action Plan:** Initiate Weekly SOC meeting immediately including the documentation of comprehensive meeting notes. Monthly SOC report to be reviewed and signed by Administrator, prior to submission. All weekly reports are to be sent to Corporate Consultant at the expected date/time every week, and Administrator to be CC'd and/or given copy to assure completion.

   6/22/10 Follow Up- Weekly SOC meetings are being held. Correction to this item, SOC reports are due monthly. SOC monthly report was given to Administrator to review prior to submission. Weekly SOC meeting notes not being faxed to Clinical Consultant, per request of Nancy Gerardy.

   7/22/10 Follow Up – SOC meetings are being held on weekly basis. Action plans given for SOC report not appropriate, using old action plans without revising (action plans given for June Standards of Care were dated for September 2008 and May 2010). Action plans need revised immediately. Trending for falls not reported in SOC meeting or CQI. Several falls on 300 hall assignment. Out of 4 reports sampled, 3 were on same hall assignment, with times of 5am, 6:30pm. and 6:40am.

3) **Area of Concern:** Nursing staff in violation of policy & procedures, with no documented counseling and/or disciplinary action

   **Action Plan:** Jane Fiely will educate, counsel and discipline nursing staff as needed, completing all required documentation. Ensure the completion of all annual reviews on all nursing staff. Any



DEFENDANT'S EXHIBIT
Y
8-12-14
PENGAD 800-631-6989

and all wage changes to be approved by Administrator. Disciplinary actions to be discussed with Administrator prior and given to Administrator for review. All termination decisions to be approved prior, by Administrator.

6/22/10 Follow Up – Continued concern. Discipline is not fair and consistent. Incident of misuse of company property on 3rd shift, all staff in violation, only one employee received disciplinary action. Other employee is one that picks up shifts and obtains high amount of overtime. Favor being shown to staff that pick up extra hours. Failed to discipline one LPN after instructed by Administrator. Continued concerns with this LPN performance and no corrective action present in her file. On LPN's 90-day review, Director of Nursing marked all areas as 'Meeting Expectation' and retained employee.

7/22/10 Follow Up – This remains an ongoing concern. DON has been instructed, when applicable, to give disciplinary action. Still see lack of follow up and receive no disciplinary actions come for my approval. Given directive to discipline two employees for attendance on 7/7/10 for time clock violations and work performance, no disciplinary actions written to date.

4) **Area of Concern:** Infection Control, Wound, and Falls Programs not in compliance with company policy and procedure. Using incorrect forms for Immunizations, Skin assessment sheets not completed as outlined by policy (not utilizing Individual wound sheets, but combining all on one form). Investigative reports for falls not completed timely, Director of Nursing summaries not being completed, or are inconclusive; do not establish a root cause nor come to a conclusion on investigation. Interventions not being implemented timely or inappropriate interventions applied.

Action Plan: Ensure implementation of all applicable nursing programs, including but not limited to infection control, wounds, and falls. Director of Nursing assumes full responsibility in programs' completion, as outlined in policy and procedure, also to complete and maintain all tracking logs for applicable programs. Ensure all TB, pneumonia, and influenza vaccinations are completed timely, and all applicable documentation completed according to facility policy and procedure. DON to round with wound nurse weekly, and ensure wound report and skin sheets are completed as outlined in policy and procedure.

6/22/10 Follow Up – May Annual TB's were missed and not done. TB's were missed on one admission. 2nd step never given on one admission. Could not locate Pnemo/Influenza Vaccination logs. Charts not being audited, yet Clinical Coordinator hours are used each week, reportedly that is one of the Clinical Coordinator duties. DON to audit charts at least monthly. Infection Control program not in place according to Facility P.&P. Infection Control was delegated to a charge nurse, who is not been trained on Infection Control program Policy & Procedures. Nurse completes resident infection control log and attends occasional Infection Control seminars in place of the DON. DON to take full responsibility of Infection Control Program, including all logs, immediately. Still continued concern in regards to the DON summaries, sometimes not being done, but often are not conclusive, simply restate facts from report, have irrelevant/inappropriate information. Have asked DON on several occasions to re-write, have not been given revisions.

7/22/10 Follow Up – Wound and Infection Control logs continue to be delegated to other nursing staff. Incident management log NOT up to date for month of June when reviewed on 7/8/10. DON failed to follow Falls protocol for a reported fall. Fall was un-witnessed and not reported until next day by resident. Administrator instructed first shift nurse to begin falls protocol later that day, when aware. Out of 12 sampled MARs, only 5 had month due for Annual Mantoux written/printed in MARs. MAR and Mantoux book inconsistent with conflicting months. 2 residents out of 8 did not receive annual mantoux due to months conflicting.

5) **Area of Concern:** Failure to notify Administrator of incidents/accidents and other events occurring in facility. Failed to notify Administrator of a death in the facility, omits Assisted Living incidents/accidents from AM meeting, and has no system in place for reviewing Assisted Living incidents. Failure to

ATRIUM/FIELY 247

communicate with Administrator on items given to state surveyor during Assisted Living survey, as well as items requested for review by state surveyor.

**Action Plan:** To facilitate and ensure communication with Administrator on daily operations within the Nursing Department, and to make Administrator aware of any present issues and areas of noncompliance within department, including, but not limited to: a) all incidents/ accidents, expirations, including Assisted Living and Skilled Nursing b)staffing issues, open positions c) any disciplinary actions.

6/22/10 Follow Up – On June 16th, 2010 Administrator received no notification by DON of a resident transfer to an acute psychiatric facility. AL incidents still not being well communicated. Administrator often not aware until receiving incident report for review.

7/22/10 Follow Up – Continues to be an on-going concern. DON failed to notify Administrator of two skin tears and a fall, all separate incidents. DON and ALL nursing staff have been previously educated to notify Administrator of all incidents.

6) **Area of Concern:** Nursing staffing was left with openings/discrepancies prior to Director of Nursing leaving for vacation. Openings left unfilled for weekend coverage, staff being placed in more than one shift per day in error and not corrected prior to leave. Nursing staffing PPDs overall running consistently over budget by hours and by dollars. STNA PPD consistently running under budget also a concern in regards to adequate staffing.

**Action Plan:** Staff within nursing ppd to provide care and services for our residents. Daily staffing report to the Administrator. All overtime requests to be brought to Administrator for approval, prior to occurrence. All open positions to be filled timely, referring all candidates to Administrator for second interview, and final approval prior to an offer of employment being made.

6/22/10 Follow Up – Still a major concern! Several occurrences of staff shortages on the schedule. 3rd shift repeatedly being scheduled without a 3rd aide. LPN ppd continually running over and STNA ppd continually running extremely low. Two recent occurrences of staff shortage due to DON failure to replace employee on the schedule, one who was on leave for workers compensation, and one who quit without notice, on 6/15/10 leaving only one aid on 3rd shift. Overstaffing nurses, having 3 LPNs on Days each week, using one nurse as 'Clinical Coordinator' and having them complete DON responsibilities such as working on the schedule, auditing charts, etc. DON hired 3 employees without referring candidates to Administrator for second interview, without Administrator approval, and without completing two reference checks. DON is not to use Clinical Coordinator hours until census is at 55, with the exception of the Weekly Wound Nurse. DON to not delegate out scheduling duties to nurses, to check schedule and staffing hours daily, as well as ensuring adequate staffing daily and on weekends prior to departure on Friday.

7/22/10 Follow Up – Remains a continued concern. On 6/22/10 nursing staff and Administrator attempted to get in contact with DON for 2+ hours, with no reply. Staff calling in regards to a staffing shortage on 3rd shift, when a nurse had called off. DON stated to Administrator, once call was returned, that she was not coming in to work the shift, stating she was sick. Nurse staffing had to be mandated by Administrator. August schedule as of this date is not yet completed.

<u>Priorities for the Director of Nursing</u>

Establishing a daily/weekly routine for the DON position will assure compliance with company policies and skilled nursing regulations which will decrease the negative outcomes for residents.

Upon arrival at the facility, the following routine will be initiated, effective immediately:

ATRIUM/FIELY 248

1) Check the daily nursing schedule and secure staffing for the next 24 hours and be aware of staffing needs for the next 7 days.
   6/22/10 – Not being done, as evidenced by staff shortages (see concern #6 above) on 6/22/10 verbal warning was presented to DON.
   7/22/10 – Some improvement seen, as DON is checking daily on staffing. The concern remains in filling open slots, as DON continually is staggering shifts, allowing staff that are called in to leave early, and moving employee shift schedules.

2) Read the nursing notes and 24 hour report from the prior day, bring notes to morning meeting to read, follow up on any change of conditions, incidents, family/resident concerns, and medication administration and availability, etc.
   6/22/10- Nurses notes not being reviewed by DON as evidenced by the findings provided on 3 charts with examples of lack of documentation and inappropriate documentation.
   7/22/10- Documentation (i.e. 24 hour report and physician orders) are being brought to morning meeting, two instances have occurred where incident reports were not completed before the following days' morning meeting. No evidence that DON is reviewing nursing notes, out of 3 residents notes sampled, all 3 had 72 hour charting. I had nurses notes with duplicated interventions (two separate notes on separate shifts stating alarm was applied), documenting on two separate interventions (mat and alarm). Out of 2 residents (recent falls) sampled, neither had fall interventions in place or functioning as witnessed by Administrator on 7/22/10. Administrator notified DON on 7/22/10. Did not receive follow up as DON already out of building when Admin tried to reach for follow up on corrective action.

3) Review and assure the prior day's incident reports are complete including: a) complete incident report with notifications and new intervention, b) witness statements, c) nurses note, d) pain assessment, fall assessment (or other assessment as needed) and e) verify intervention is in place, bring incident reports to morning meeting, f) care plan updated g) 72 hour charting q shift, and make available to Administrator for review and signature.
   6/22/10 – Still not being done timely, statements from all staff present not being collected, often only nurse's statement. Incident reports not being received by Administrator for review till on average a week later. Follow up not being completed timely.
   7/22/10 – Ongoing concern; Still not being executed according to plan.

4) Review admissions from the prior day insuring the following are completed: a) admission note, b) all admission assessments, c) TB, pneumonia/flu information d) nurse assessment, e) Braden scale, f) Elopement assessment, g) History and physical h) immediate care plan, bringing chart to morning meeting for review by IDT
   6/22/10 – Not being done as evidenced by one new admission chart not being noted on during day of admission, and failure to properly implement and document required 1 on 1 monitoring for 1 resident.
   7/22/10 – Out of three sampled admission charts. 1 chart had incomplete smoking assessment, no initial care plan completed (resident was assessed as not at risk for falls or skin), and no inventory was done. Found during AM review on 7/19/10. On 7/22/10 – still not corrected, nurse not called in to complete and not disciplined. MDS nurse completed incomplete smoking assessment on 7/19/10.

5) Review any new physician orders from the previous day; bring orders to morning meeting to review with IDT. Ensure all orders are signed by physician in a timely manner.
   6/22/10 – Physician orders still not signed in a timely manner. Many charts with signature flags present for physician to sign. This is a continuing area of concern.

ATRIUM/FIELY 249

7/22/10 – This remains an ongoing concern

As the Administrator I want to ensure we have the best outcomes possible. To obtain this I need these areas improved upon to ensure sustained compliance.

The review of Jane's progress regarding this plan will be assessed throughout the length of time assigned in this action plan. All identified areas stated above are to be in compliance by the 23rd of July, 2010.

This improvement Plan has been reviewed in detail with Jane Fiely, Director of Nursing, on May 25th, 2010_. It is understood that the DON be responsible for immediate improvement and progress in all of the areas outlined and that our target for total implementation of the improvement plan is within the next 60 days. As Administrator, I will be available to the DON to address roadblocks, as identified by the DON, which stand in the way of this implementation.

Copy provided to the Director of Nursing on __May 25th, 2010____

Progress on this Improvement Plan was reviewed, in person, with Director of Nursing on _June 22nd, 2010__. Items listed above in red were discussed in detail in regards to any progress, or lack thereof, in the action plan items. Lack of progress on items, such as the scheduling and lack of discipline was discussed in detail, including the need for fair and consistent discipline (not showing favor by foregoing disciplinary action on employees that pick up extra shifts.) Verbal disciplinary action was presented to DON on 6/18/10 for failing to appropriately staff the nursing department. Discussed the need for appropriate delegation of duties, and discussed assignment of the schedule. DON states that she is completing the schedule. Discussed that the Clinical Coordinator hours are to be cut at this time and not utilized, due to facility census not being at budget or goal. DON is to be assigning duties amongst nurses on all three shifts to ensure compliance in all areas. Copy of updated notes provided to Director of Nursing on June 27th, 2010, due to DON being out of the facility June 23-25th for illness.

7/23/10 – Follow up Progress Notes, outlined in this plan on 7/22/10 were reviewed, in person, with Director of Nursing, Jane Fiely. At that time, Jane Fiely expressed her intent to furnish a notice of resignation on 7/26/10.

_____, DON                                                      Date

_____, Administrator                                         Date

ATRIUM/FIELY 250

# EMPLOYEE PERFORMANCE AGREEMENT

Employee's name: Jane Fiely, RN, DON _____ (90 Day action plan)

Immediate Supervisor: Lorraine Fischio, NHA

Start of current review period: July 18, 2012

End of current review period: 9/30/12

1. Attach a copy of the current Personal Learning Plan
2. Identify the specific expectations (commitments/competencies).

| Performance objectives | Specific Action(s) Required | Criteria | Training or other supports required to achieve objectives | Due Date | Date of Follow-up | Status of performance objectives/shortfall at end of review period? |
|---|---|---|---|---|---|---|
| (consider existing performance improvement requirements, if any) | (consider both job and individual factors to address the objective/correct the shortfall, including competencies) | (Identify the criteria to be used to measure progress related to identified objectives or corrective action.) | (e.g. training, coaching, mentoring, EAP, other specialists) | (date by which action is to be completed) | (minimum frequency is mid-year) | 1. Achieved<br>2. In progress<br>3. Improved performance required to meet objective<br>4. Assignment to another job<br>5. Seek alternate options and discuss with HR/DOO |



DEFENDANT'S EXHIBIT 2 8-13-14 SGB

PENGAD 800-631-6989

ATRIUM/FIELY 285

| | | | | |
|---|---|---|---|---|
| Jane will improve employee relationships with co-workers and nursing staff. | Jane will meet with all new employees at least once a week. | Jane will complete a seminar on ways to improve employee relations and general supervision by 9/30/12. | Immediate | All completed by: 9/30/12 |
| | No disciplinary actions will take place in resident areas. | Random employee interviews will be scheduled to insure compliance. | Immediate | |
| | Jane will discuss employee issues with the employee privately in a calm manner. | Results will be shared with Jane as these interviews take place. | Immediate | |
| | All employees will be treated fairly and consistently and not be reprimanded for mistakes made by others. | | Monthly | |

ATRIUM/FIELY 286

EMPLOYEE PERFORMANCE AGREEMENT

Comment(s): Administrator will help schedule and facility will pay for the cost of employee training. Administrator agrees to be present at employee coaching and disciplinary actions if requested by Jane. Results of the monthly employee interviews will be shared with Jane during follow-up meetings to help her improve in these areas and meet the objectives.

ATRIUM/FIELY 287

Employee's signature: _____ Date: _____

Immediate Supervisor's signature: _____ Date: _____

ATRIUM/FIELY 288

Employee Meeting Notes
Re:  Jane Fiely, DON
November 14, 2011

On this date @ approximately 11:30 a.m. I met with Jane Fiely, RN, DON
to discuss several serious issues that need immediate attention.

Staff Turnover -- staff turnover is out of control and way to high for such
a small facility.  We are working hard to recruit good staff, including STNAs, and
they are leaving too soon.  Many have expressed problems working with Jane due
to her short-temper and inappropriate follow up.  On more than one occasion a
nurse or STNA has been seen crying after their conversations with Jane.  She has
called nurses and STNAs out for problems in front of other staff at the nurses station
and embarassed them in front of their peers.  A newly hired employee overheard
Jane's inappropriate behavior at the nurses station and said she didn't want to come
back to work because Jane is a 'rude and mean' person.
A different new employoee overheard the nurses at the nursing station saying they
didn't have time to give her a Hep B shot.  Jane said 'if the nurses are too busy to
do it then so am I.'  Some of the new hired STNAs say that Jane is very mean to
them. (Melinda Green, Kacey Perez, Jane Harshbarger, Nicole Dellinger)

Jane has not been taking a strong enough interest in the well-being of her
new staff.  On one occasion she left 2 new employees in the front lobby for 1.5 hours
because she didn't have time to do their orientation (after having scheduled the appt.
in advance).  Jane does not make sure her new employees are scheduled with a mentor or
follow up happens routinely.  I asked her to touch base daily or every other day with
her new employees for at least 2 weeks after hire to make sure all their needs are met.

On this date, Shelby Reichard Gates, RN told me she was asked to
rewrite a statement relating to an incident report for Gerhard K. (pt).  When Jane asked
her to rewrite it, Jane had already written out the exact wording she wanted in the
statement and asked Shelby to write her statement verbatim.  Sheby was uncomfortable
this request, but did it anyway because Jane is her Director.  On the second statement
Shelby wrote, there was a change noted.  The first statement said the resident 'cried out'
and was having pain.  The rewritten statement left that off.

The Activity Director noted that she greets Jane in the hall and she
doesn't even acknowledge her.  She has tried to work with Jane on resident issues and
there is no compromise and she cuts the Act. Director off in mid sentence and doesn't
let her finish her view.  But, Jane doesn't want the department managers to speak in
morning meeting unless she is finished.



DEFENDANT'S
EXHIBIT
AA
5-12-14 KJA
PENGAD 800-631-6989

On November 10th the MDS Nurse was approached by nursing staff
with concerns regarding medications that were ordered but not given due to no one having
written in a med pass time during changeover. There had been 9 missed doses on at least
two residents that were shown to him. The nurses said they were instructed to just mark
them as D/C'd on the MAR and to write clarification orders that started effective that date.
I advised them they should not do that and reported this information to the administrator.
(Note: These missed medications were written up as Medication Error Reports and they
were forwarded to the Medical Director for signature... LF

On November 6, 2011 Ken Freeman, Maintenance was the MOD. A family
member was crying because her mother wasn't getting a breathing treatment. (This resident
had just returned from the hospital the night before with a dx of pneumonia). The nurse
first checked her O2 sats around 1 p.m. When the daughter made the complaint. Ken F.
texted his concern to Administrator and DON. Nurse Amanda gave a breathing treatment as
sats were below 90%. The nurse on duty told Jane on the phone that Ken 'needed to mind
his own business'. There were no repercussions to this nurse from Jane.

During room moves nursing does not routinely give input, until after the
move has been completed and then they ask for a different room configuration which
requires more maintenance time.

Dr. Holleran, one of our Medical Directors has concerns with the way
Jane was treating a nurse behind the nurses station. "he asked Deb, how do you stand this?
She (Jane) just barked 5 orders at you while I was standing here. Dr. Holleran came back
a second time to complete his orders as very little was ready at the time of his visit.

During our meeting this morning, Jane said she is extremely stressed out because
the state surveyors have not entered for annual yet. I asked her what is so wrong in our
building that she is so stressed. She said 'nothing, but I want everything perfect.'. I
told Jane she has 30 days to show improvement in employee relations, staff retention and her
relationships with the department managers and to start showing respect for others. I told her
I'm always concerned with survey results but being stressed over a routine annual event does
not excuse her behavior.

I also advised her not to ever request anything to be 'rewriten', i.e. a statement or incident
report . If changes are needed she should ask them to do a second statement or a late entry or
a clarification entry, but no rewrites. All medication errors are to be reported to the physician
timely and medication error sheets completed.
We will meet in 30 days to review these issues

Lorraine Fischio, LNHA
November 15, 2011

January 17, 2012

Note to file:

On this date I met with Jane Fiely, RN, DON regarding several problem performance areas.  We recently received our employee satisfaction survey for December 2011 and there are several comments that need to be addressed by Jane.  (See attached copy)

On this date we also discussed for the 3rd time that assisted living aides should not be charting in nurses notes on AL patients.  This past week two residents, G.M. and R.W. both had syncopy/seizure episodes and the aides charting was significantly different from the nursing assessment relating to resident's code status and vital signs. The nurses on this unit do not want the liability of alternative charting that may reflect a change in resident condition that they were not made aware of.   Effective date of correction will be: _____
Aides are to chart in notebook on unit and use the memo notification forms to nurses as a follow-up.
No more charting in nursing notes by nursing assistants.

Also discussed second allegation from a nurse of smelling alcohol on breath and stumbling behind nurses station.  Jane denied using alcohol or drugs in the workplace and offered to take a random screening test whenever requested.

I talked to Jane about her approach to staff. Several times nurses have been seen crying behind the nurses' station after Jane's comments.  This is especially offensive to the staff as many times they are criticized for events that did not happen on their shift or for which they are not directly responsible.  For example, the fall of Mary E. during the week of 1/12/12.  The first shift nurse was called out the day after the event because the 2nd shift nurse the night before (Carol W.) did not do a fall packet.  This should have been addressed with the nurse who made the error, privately.  During November and December 2011 Jane yelled at Amanda Hayes, LPN behind the nurses station to the point she had an emotional breakdown.  Amanda was trying to correct the narcotic count (that was off through no fault of her own) and Jane called her out.

Jane agreed to the following:
1. She will help be more visible and a positive, resource on the floor.
2. She will help coach and mentor her employees and organize the nursing department.
3. Jane will hold monthly meetings with her staff and keep written minutes of concerns and follow up on them timely.
4. Jane will hold her staff accountable for their individual activities and deficits.  She will not publicly chastise or embarrass an employee in public.  All coaching and counseling will be done individually behind closed doors.
5. Jane will work to increase her reputation and create positive feedback from her employees.

Lorraine Fischio, LNHA
January 17, 2012



DEFENDANT'S
EXHIBIT
B.B.
PENGAD 800-831-6989
8-1.2-14    39/B

ATRIUM/FIELY 264

FILEY000126

MAY | JUN

## 2013

### April

| notes | sunday | monday | tuesday | wednesday | thursday | friday | saturday |
|---|---|---|---|---|---|---|---|
| | 31 | 1 Easter Monday (C) April Fools' Day | 2 | 3 | 4 | 5 | 6 |
| | 7 | 8 Holocaust Remembrance Day | 9 | 10 | 11 | 12 | 13 |
| | 14 | 15 | 16 | 17 | 18 | 19 Incident matter | 20 |
| | 21 | 22 Earth Day off sick | 23 off sick | 24 Administrative Professionals Day off sick | 25 | 26 | 27 |
| | 28 | 29 | 30 | 1 | 2 | 3 | 4 |

DEFENDANT'S EXHIBIT
CC
9-12-14 JGB
PENGAD 800-631-6989

FIELY000127

MAY | JUN

2013

Day Runners

18 thursday

19 friday

*life seeds*

20 saturday

*Sick a.*

21 sunday

*Sick*

April

15 monday

16 tuesday

17 wednesday

*Started Kew Prescribed*

FIELY000128

2013

MAY

JUN

**April**

22 monday

Went to DC

Put off work until Thursday

Earth Day

23 tuesday

24 wednesday

Administrative Professionals Day

25 thursday

Terminated

26 friday

27 saturday

28 sunday

FIELY000129

# May 2013

| notes | sunday | monday | tuesday | wednesday | thursday | friday | saturday |
|---|---|---|---|---|---|---|---|
| | 28 | 29 | 30 | 1 Labor Day (M) | 2 | 3 | 4 |
| | | | | | Couns Sara | Hospital Host attend | Hcap |
| | 5 Battle of Puebla Day (M) Eastern Orthodox Easter | 6 | 7 | 8 | 9 | 10 Mother's Day (M) | 11 |
| | Home Care Hospital | | | Phone Interview | Interview in Dayton Glenwood | | |
| | 12 Mother's Day | 13 | 14 | 15 | 16 | 17 | 18 Armed Forces Day |
| | | Orientation | | Greenville | meeting bank with Phyllis | | |
| | 19 | 20 Victoria Day (C) | 21 | 22 | 23 | 24 | 25 |
| | | Return to WORK | | | Her | | |
| | 26 | 27 Memorial Day | 28 | 29 | 30 | 31 Portsmouth | 1 |
| | | | | | Greenville | | |

April
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | | | | |

June
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

FIELY000130

JUN

2013

April-May

**29 monday**

Farnold @ Chs - corp.
c.com
Thursday 9th
12 - 1 pm

3800 Summit Dr
Bay 43449

**30 tuesday**

P/U 2246 1088

O U/N 2245 on Lisa

**1 wednesday** — Labor Day (M)

Un Employment
Claim C.A 23 - 0400 - 1428 - 1641 -
6221

**2 thursday**

John Franklin
Widman & Franklin LLC
405 Madison Avenue
Suite 1550
Toledo, Ohio 43604
Phone: 419 - 243 - 9005
Fax 419 - 243 - 9405

**3 friday**

5:00 AM Heart Attack
sent to Grandview / Shot

**4 saturday**

ICU Unit

**5 sunday**

ICU
Home

Battle of Puebla Day (M)
Eastern Orthodox Easter

FIELY000131

JUN

2013

May

**13** monday

**14** tuesday

**15** wednesday

**16** thursday

**17** friday

**18** saturday   Armed Forces Day

**19** sunday

Champleigh Snow – Bay View
Gauncil of Shore Hill

FIELY000132

JUN

2013

May-June

**27** monday

Memorial Day

**28** tuesday — June 25 at 2:45 pm

2510 Commons Blvd
Suite 125
Beavercreek
1 Block South of Fairfield Mall
Enter Main Entrance
Middle

Incaser Heafer
about Elb on

**29** wednesday

**30** thursday

Hickory Creek
Interview Intern DON
$45.00/hr    52 ¢ a mile

**31** friday

Interview at Persimmons — Portland

1:30  Brethren Home

**1** saturday

Greg Sic fing s  funeral

**2** sunday

Day Runner.

HEX0000133

| | AUG | SEP | OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN |

## July

2013
2012

| notes | sunday | monday | tuesday | wednesday | thursday | friday | saturday |
|---|---|---|---|---|---|---|---|
| | 1<br>Canada Day (C) | 2 | 3 | 4<br>Independence Day | 5 | 6 | 7 |
| | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| | 15 | 16 | 17 | 18 | 19<br>First of Ramadan begins at sundown | 20 | 21 |
| | 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| | 29 | 30 | 31 | 1 | 2 | 3 | 4 |

Heather
Pavolka
Wrote to
york

June
S M T W T F S
1 2
3 4 5 6 7 8 9
10 11 12 13 14 15 16
17 18 19 20 21 22 23
24 25 26 27 28 29 30

August
S M T W T F S
1 2 3 4
5 6 7 8 9 10 11
12 13 14 15 16 17 18
19 20 21 22 23 24 25
26 27 28 29 30 31

Day-Runner.

JUL

AUG SEP OCT NOV DEC JAN FEB MAR APR MAY JUN

2012

26 thursday

27 friday

28 saturday

29 sunday

July 20/2.

23 monday

Task Job at

Brookside Haven

Muncie Indiana

24 tuesday

Von D
Birth days

25 wednesday

Aoledo Dept

jul

FIELY000135

SEP | OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN

**2012**

Day Runners

| sunday | monday | tuesday | wednesday | thursday | friday | saturday |
|--------|--------|---------|-----------|----------|--------|----------|
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |
| 5 Breyride Shelter ... 505 Good ... | 6 Civic Holiday (C) | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 (Eid) al Fitr begins at sundown | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |

**August**

notes

July
S M T W T F S
1 2 3 4 5 6 7
8 9 10 11 12 13 14
15 16 17 18 19 20 21
22 23 24 25 26 27 28
29 30 31

September
S M T W T F S
1
2 3 4 5 6 7 8
9 10 11 12 13 14 15
16 17 18 19 20 21 22
23 24 25 26 27 28 29
30

JUL   AUG

FIELY000136

| OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN |

## 2012

| | saturday | friday | thursday | wednesday |
|---|---|---|---|---|
| | 1 | 31 | 30 | 29 |
| | 8 | 7 | 6 _louisville_ | 5 |
| | 15 | 14 | 13 | 12 |
| | 22 Autumn begins | 21 | 20 | 19 |
| | 29 | 28 | 27 | 26 |

| tuesday | monday | sunday |
|---|---|---|
| 28 | 27 | 26 |
| 4 | 3 Labor Day | 2 |
| 11 Patriot Day | 10 | 9 |
| 18 | 17 | 16 Independence Day (M) Rosh Hashanah begins at sundown |
| 25 Yom Kippur begins at sundown | 24 | 23 |
| | | 30 |

## September

notes

_Concepts_
_Sept Pln_
_Shars_

August
S M T W T F S
1 2 3 4
5 6 7 8 9 10 11
12 13 14 15 16 17 18
19 20 21 22 23 24 25
26 27 28 29 30 31

October
S M T W T F S
1 2 3 4 5 6
7 8 9 10 11 12 13
14 15 16 17 18 19 20
21 22 23 24 25 26 27
28 29 30 31

FIELY000137

| OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|

2012

September

13 thursday

14 friday

15 saturday

16 sunday

Independence Day (M)
Rosh Hashanah begins at sundown

Day Planners

10 monday

✓ Medical Director's Report
Care Plans for Australia

11 tuesday    Patriot Day

Regional Meeting
Louisville, Kentucky

12 wednesday

Regional Meeting
Louisville, Ky

Oct - 8⁻ᵗ/100

FIELY000138

2012

OCT   NOV   DEC   JAN   FEB   MAR   APR   MAY   JUN

September

17 monday

Jeff — waived rights
Copies in my Book
MESA

18 tuesday

19 wednesday

20 thursday

Cell Sheryl Rayford Moore
419-886-5764

21 friday

22 saturday                                    Autumn begins

23 sunday

Day Runner®

JUL   AUG   SEP

FIELY000139

OCT  NOV  DEC  JAN  FEB  MAR  APR  MAY  JUN

2012

**September**

24 monday

*Interview 9:30 Amanda Nadler*

25 tuesday

Yom Kippur begins at sundown

26 wednesday

27 thursday

28 friday

29 saturday

30 sunday

FIELY000140

NOV DEC JAN FEB MAR APR MAY JUN

2012

October

**4 thursday**

**5 friday**

**6 saturday**

**7 sunday** 2012

Florida

**1 monday**

Call Heater Dept reg E B U S

MARS / Hols
IAMS 1 Sept

Hesterylvist Cear Plan
Schneiderman's Plumber
for Paperwork for "Agenda

**2 tuesday**

monthly weights - Askey Rpt

**3 wednesday**

JUL AUG SEP OCT

Case: 3:13-cv-02005-JGC  Doc #: 35-13  Filed: 10/15/14  110 of 158.  PageID #: 1529

FIELY000141

NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN

2012

18 thursday

19 friday

20 saturday

21 sunday 20/3

Started at Chart 2013

15 monday

16 tuesday

National Boss' Day

17 wednesday

October

JUL | AUG | SEP | OCT

FIELY000142

NOV  DEC  JAN  FEB  MAR  APR  MAY  JUN

2012

(Eid) al Adha begins at sundown

25 thursday

26 friday  10/12
Gave Deanna Med Quiz
to do + Return to me

27 saturday

28 sunday

October

22 monday

23 tuesday
Oct 23, 2012
3:00 pm

24 wednesday  2012  United Nations Day
Dermatologist
9:30  45 Stanfield Rd
Troy, Ohio

JUL  AUG  SEP  OCT

FIEI Y000143

## January 2013

| sunday | monday | tuesday | wednesday | thursday | friday | saturday |
|--------|--------|---------|-----------|----------|--------|----------|
| 30 | 31 | 1 New Year's Day | 2 | 3 | 4 | 5 |
| 6 | 7 Columbus Atrium God meeting | 8 Columbus | 9 | 10 Atrium | 11 Columbus | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 Martin Luther King Jr. Day | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |

FEB  MAR  APR  MAY  JUN

notes

December
S M T W T F S
1
2 3 4 5 6 7 8
9 10 11 12 13 14 15
16 17 18 19 20 21 22
23 24 25 26 27 28 29
30 31

February
S M T W T F S
1 2
3 4 5 6 7 8 9
10 11 12 13 14 15 16
17 18 19 20 21 22 23
24 25 26 27 28

FIELY000144

FEB | MAR | APR | MAY | JUN

2013

January

10 thursday

11 friday

12 saturday

13 sunday

7 monday

Columbus — Silver Award

8 tuesday

Columbus — Silver Award

9 wednesday

FLELY000145

2013

FEB | MAR | APR | MAY | JUN

**January**

**14** monday
1) ✓ for TB & Flu
# Residents who had TB & Flu
2) Need Hats for Spancara
Need Vaselin Syringes
Tues S
Bufferd ASA
V/tp 5
Zinc 50d

**15** tuesday
1. ✓ TB & Flu
2.

**16** wednesday
1. Guardian Angel
2. Restoration
3. I/A Report S
4.

Need
Flag S
Mold Cover

**17** thursday
I/A Report S
Guardian Angel

**18** friday

**19** saturday

**20** sunday

FIELY000146

FEB | MAR | APR | MAY | JUN

2013

January

21 monday — Martin Luther King Jr. Day

22 tuesday

23 wednesday

24 thursday

25 friday

26 saturday

27 sunday

FIELY0001147

FEB | MAR | APR | MAY | JUN

2013

31 thursday

1 friday

2 saturday — Groundhog Day

3 sunday

January-February

28 monday — O.T.
Should worked proton aide
I have as an aide

29 tuesday

30 wednesday

JAN FEB MAR APR MAY JUN JUL AUG SEP OCT NOV DEC

Friday, April 19, 2013

I was on my way out of the building when Kelsey Ouelhart stopped & said a family member wanted to speak to me regarding her mother's choice of eating dinner in her room. I spoke with daughter & told her that everyone was encouraged to eat in dining room but no one is "forced". She was told by Kelsey that the DON & Gabby wanted her to eat in dining room. A I again explained that one is a Resident's choice.

I came out of room & asked Kelsey why she could tell family that Gabby & myself wanted her to eat in D/R. She said that Ky, Dietary aid told her that, Again Kelsey was unable to understand what I was trying to communicate to her that "No one can force a resident to eat in D/R." I had my coat on & purse in hand and I did not touch Kelsey in any way. I asked Jill to review Resident's rights regarding dining options with staff later in the evening. I went to Kitchen & asked Ky why she made the comment that resident is suppose to eat in D/R per DON & Gabby. And asked who told her that Gabby & myself insists resident eat in D/R & she said Lauren & Katie (Dietician & Director of Dietary). I stated we can encourage but we cannot force residents to eat in D/R. I then left the building & went home.

Jane Liely

DEFENDANT'S
EXHIBIT
DD
8-12-14    ZJB
PENGAD 000-631-6989

<u>EXCUSE SLIP</u>

**NEAL E. HOLLERAN, M.D.**
329 1/2 E. MARKET STREET
CELINA, OHIO 45822
Telephone: (419) 584-1664

Date_____4/~~/3_____

Please Excuse____Ms Fiely_____

FROM:   ☑ Work   ☐ School   ☐ P.E.

   ☐ Other_____

DUE TO:   ☐ Injury   ☑ Illness

   ☐ Other_____

From___4/~~/3___ to ___4/~6/13___

Thank You,

_____

#13151 — Medical Arts Press   1-800-328-2179



DEFENDANT'S
EXHIBIT
EE
8-12-14  RJB

PENGAD 800-631-6989

May 1, 2013

Jane Fiely

3192 St. Rt. 219

Coldwater, Ohio

To Jason, Pam and Gertie, & Lori

I thank all of you for the eight years of working with you. It has been difficult at times but also a very rewarding experience.

But I am confused to what happened On April 25, 2013. I had been sick all day Friday, over the weekend

And the following week. I had been to the Doctor and almost put into the hospital. I am feeling better but not 100 percent. I feel that I was unable to defend my self through this ordeal.

I do not feel anyone heard my side of the story. Unfair to do this when I was so ill.

Plus Lorraine was after me to retire, called me at home a few weeks earlier, told me I was a nurse and could get a job anywhere. Told me She would rather have someone else as a DON. Many conversations like this.

Well, you have heard part of my story.

Again, what prompted me to write you was I received the bonus program in the mail today and just decided to let you know how much I thought of you all.

Sorry, but someone had to hear my side of the story when I was alert and oriented.

Sincerely

Jane



DEFENDANT'S
EXHIBIT

FF

8-12-14

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **JANE FIELY**<br>3192 State Route 219<br>Coldwater, Ohio 45828 | **CASE NO.:** |
| **Plaintiff,** | **Judge** |
| vs. | |
| **ESSEX HEALTHCARE CORPORATION**<br>c/o CT Corporation Systems,<br>Statutory Agent<br>1300 East 9th Street<br>Cleveland, Ohio 44114 | **COMPLAINT WITH JURY DEMAND**<br><br>**Widman & Franklin, LLC**<br>**John D. Franklin (0055359)**<br>**Kera L. Paoff (0082674)**<br>**405 Madison Ave., Suite 1550** |
| And | **Toledo, Ohio 43604**<br>**Ph.: (419) 243-9005**<br>**Fax: (419) 243-9404** |
| **ATRIUM LIVING CENTERS, INC.**<br>c/o CT Corporation Systems,<br>Statutory Agent<br>1300 East 9th Street<br>Cleveland, Ohio 44114 | **john@wflawfirm.com**<br>**kera@wflawfirm.com**<br><br>**Attorneys for Plaintiff,**<br>**Jane Fiely** |
| **Defendants.** | |

Now comes Plaintiff, Jane Fiely, complaining of Defendants, Essex Healthcare

Corporation and Atrium Living Centers, Inc., and alleges as follows:

### PARTIES

1.    Plaintiff Jane Fiely ("Fiely") is an individual citizen of the State of Ohio,

residing in the City of Coldwater, County of Mercer.

2.    Defendant Essex Healthcare Corporation ("Defendant Essex") is a foreign

corporation organized under the laws of the State of Delaware.



DEFENDANT'S
EXHIBIT
GG
8-12-14  29B

PENGAD 800-631-6989

3.    Defendant Atrium Living Centers, Inc. ("Defendant Atrium") is a foreign corporation organized under the laws of the State of Delaware.

4.    Defendants Essex and Atrium (collectively referred to herein as "Defendants") are engaged in the business of owning, managing, and/or operating nursing, rehabilitation, and residential care facilities licensed by and located within the State of Ohio through a partnership, joint venture, association or other affiliation.

5.    Among other facilities, Defendants jointly own and operate a nursing home facility under the name of St. Mary's Living Center, located in St. Mary's, Auglaize County, Ohio (referred to herein as "St. Mary's").

6.    Defendants jointly employ nurses, including, but not limited to nurses, to staff its facilities, including, but not limited to St. Mary's.

**JURISDICTION AND VENUE**

7.    This suit is authorized and instituted pursuant to the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. §§2601 *et seq.*, providing for relief from termination or change in employment status based on a necessity for the employee to take a leave of absence due to the employee suffering from a chronic/serious health condition and prohibiting an employer from interfering with, restraining, or denying an employee the exercise of rights provided under the FMLA, and making it unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA.

2

8.    Jurisdiction over Count One alleged herein is conferred upon this Court by 28 U.S.C. § 1331 because these claims arise out of the laws of the United States.  This Court also has jurisdiction over Count One pursuant to 29 U.S.C. § 626.  This Court further has supplemental jurisdiction over Fiely's state law claims.

9.    Venue is properly laid in the Northern District of Ohio, Western Division because the claims alleged herein arose in Auglaize County, Ohio and Defendants are doing business within the jurisdiction of the Court.

## FACTUAL ALLEGATIONS

10.    Defendants were, at all times relevant to this Complaint, engaged in commerce or in an industry or activity affecting commerce and employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar work weeks in the current or preceding calendar years.

11.    Defendants, therefore, are employers as defined under the FMLA in 29 U.S.C. § 2611(4) and under O.R.C. § 4112.01(A)(2).

12.    Fiely began her employment with Defendants in February of 2005 and most recently held the position of Director of Nursing at St. Mary's.

13.    Fiely was hired by Defendants' Chief Operating Officer, Jason Reese ("Mr. Reese").

14.    At the time of her termination, Fiely was sixty-three (63) years old.

15.    During the course of her employment, Fiely had an excellent work record and was well qualified for the positions she held.

16.    During the course of her employment, Fiely was subjected to discriminatory conduct and ageism.

3

17.     By way of example, in or around early April of 2013, Fiely was contacted by St. Mary's Administrator, Lorraine Fischio ("Ms. Fischio"), who asked Fiely when she was going to retire and that she (Ms. Fischio) could get Fiely a "good retirement package."

18.     Fiely complained about the discriminatory conduct to Defendants' Director of Operations, Barry Durossett ("Mr. Durossett").

19.     Rather than remedy the situation, Defendants terminated Fiely's employment on April 25, 2013.

20.     Prior to Fiely's termination, on Friday, April 19, 2013, she became seriously ill and informed Defendants that she was not feeling well.

21.     Fiely was unable to work from that Friday evening until the morning of Thursday, April 25, 2013 – the date on which she was terminated.

22.     On Monday, April 22, 2013, Fiely informed Defendants that she was still sick from the previous Friday and saw her physician who prescribed her medication and certified her to be off from work until Thursday, April 25, 2013.

23.     Following her termination, Fiely's position was filled by a substantially younger, less qualified individual and/or her termination permitted the retention of persons who are substantially younger than Fiely.

4

### COUNT ONE
### Violation of FMLA
### 29 U.S.C. §§2601 et seq.

24. At all times relevant herein, Fiely was employed by Defendants for at least twelve (12) months and had at least one thousand two hundred fifty (1250) hours of service with Defendants and therefore was an "eligible employee" under the FMLA, as that term is defined in 29 U.S.C. §2611(2)(A).

25. Defendants violated the provisions of 29 U.S.C. §§2601 et seq. including 29 U.S.C. §2615 by interfering with, restraining or denying Fiely the exercise of rights provided under the FMLA and/or retaliating against Fiely by discharging her for asserting or otherwise exercising his rights under the FMLA.

26. As a direct and proximate result of Defendants' conduct, Fiely has been damaged. Fiely has suffered:

      a.    Lost wages;

      b.    Loss of pension benefits;

      c.    Loss of insurance benefits;

      d.    Loss of other fringe benefits;

      e.    Loss of future earnings and front pay; and

      f.    Time and money in endeavoring to protect herself from Defendants' violation of the FMLA, including costs and reasonable attorney's fees of this action.

5

## COUNT TWO
### Age Discrimination
### Ohio Revised Code §4112.02(A) and (N) and §4112.99

27.     Defendants acted with ill will and malice towards Fiely with regard to her legal rights by discriminating against her with regard to terms, conditions or privileges of employment by terminating her employment, for which she was qualified, because of her age.

28.     As a direct and proximate result of Defendants' conduct, Fiely has been damaged.  Fiely has suffered:

    a.      Lost wages;

    b.      Loss of pension benefits;

    c.      Loss of insurance benefits;

    d.      Loss of other fringe benefits;

    e.      Loss of future earnings and front pay;

    g.      Loss of the opportunity to continue the gainful
            employment in which she had been engaged; and

    h.      Time and money in endeavoring to protect herself from
            Defendants' unlawful discrimination, including costs
            and reasonable attorney's fees of this action.

6

**WHEREFORE,** Fiely prays as follows:

A.      That this Court award such equitable relief as is proper as compensation for Fiely's loss of the opportunity to engage in gainful employment, including relief in the form of front pay;

B.      That this Court award Fiely an amount to be determined at trial as compensation for her loss of the opportunity to engage in gainful employment, for future earnings, for humiliation, embarrassment, and loss of reputation;

C.      That this Court award Fiely an amount to be determined at trial as compensation for lost pension, insurance and other fringe benefits;

D.      That this Court award Fiely back pay from the date of trial with interest;

E.      That this Court award Fiely liquidated damages;

F.      That this Court award Fiely compensatory and punitive damages;

G.      That this Court award Fiely reasonable attorney's fees and the costs of this action;

H.      That this Court find Defendants' conduct was neither reasonable and/or done in good faith; and

I.      That this Court grant Fiely such other and further relief as may be just and equitable, including an Order that she be immediately reinstated to her former position.

Respectfully submitted,

s/ John D. Franklin
John D. Franklin
Attorney for Plaintiff

**PLAINTIFF DEMANDS TRIAL BY JURY**

s/ John D. Franklin
John D. Franklin

# UNITED STATES DISTRICT COURT
## NOTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| JANE FIELY | * | **Case No.: 3:13-cv-02005** |
| Plaintiff, | * | **Judge: James G. Carr** |
| ESSEX HEALTHCARE,<br>CORPORTATION, et al. | * | **PLAINTIFF'S RESPONSES TO<br>DEFENDANTS' FIRST SET OF** |
| | * | **INTERROGATORIES AND** |
| Defendants. | | **REQUEST FOR PRODUCTION** |
| | * | **OF DOCUMENTS TO<br>PLAINTIFF** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Plaintiff Jane Fiely ("Plaintiff"), by and through counsel, and pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, serves her responses to Defendants' First Set of Interrogatories and Requests for Production of Documents as follows:

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify every person you believe has information that relates to your claims or Defendants' defenses in this lawsuit. With respect to each, provide:

    a.    name, address, and telephone number;

    b.    relationship to you (if any); and

    c.    a summary of the information you believe the person has or may have.

### ANSWER:

**Objection.** Plaintiff objects to this Interrogatory on the grounds that it seeks to impose obligations beyond what is required by the Federal Rules.



Kera L. Paoff

DEFENDANT'S
EXHIBIT
H H
8-12-14

Subject to and without waiving said objection, please see Plaintiff's and Defendants' Rule 26 Disclosures that have previously been exchanged between the parties. Also, Lisa Inskeep, Social Service Director for St. Mary's Living Center, may have information regarding Plaintiff's employment, termination, allegations contained in her Complaint and/or defenses of the Defendants. Plaintiff reserves the right to supplement this response as this matter continues.

**INTERROGATORY NO. 2:**

For each employer (including self-employment) or income source you have had since your employment with Defendant ended, state:

      a.    the name and address of the employer or income source;

      b.    if the employer was a temporary service, each company or entity at which you were assigned;

      c.    the nature of the employment, work, or income source;

      d.    the rate of pay and total compensation received for such employment or work;

      e.    all employment benefits available to you;

      f.    starting and ending dates of such employment or engagement;

      g.    any disciplinary actions in which you were involved;

      h.    all reasons such employment, work or income source ended; and

      i.    the identity of any documents that evidence such employment.

**ANSWER:**

**Objection.** Plaintiff objects to this Interrogatory in that it is overly broad, unduly burdensome and is intended to harass Plaintiff. Furthermore, this request is not reasonable calculated to lead to the discovery of admissible evidence. *Conrod v. The Bank of New York,* Case No. 97 Civ. 6347, 1998 U.S. Dist. LEXIS 11634 (S.D.N.Y., July 28, 1998); *Poulos v. Village of Lindenhurst,* Case No. 00 C 5603, 2002 U.S. Dist. LEXIS 5426 (N.D. Ill. Mar. 28, 2002) (quashing defendant's subpoena to plaintiff's present employer); *Scott v. Rent-Way, TTIG, L.P.,* Case No. 3-04-CV-2723-H, 2005 U.S. Dist. LEXIS 11913 (N.D. Tex. June 16, 2005) ("[t]he court is not inclined to allow defendant to rummage through plaintiff's entire personnel file in hopes of finding information to impeach his credibility); *Reynolds v. York,* 2004 U.S. Dist. LEXIS 12313 (N.D. Tex. Jul. 2, 2004) (holding that third party subpoena served on former employer seeking personnel file and other documents that might impeach plaintiff's credibility "amounts to nothing more than a fishing expedition"). Plaintiff further objects to this Interrogatory on the grounds that it is not properly limited in time or scope.

Kera L. Paoff

Subject to and without waiving said objections, Plaintiff states she has held the following employment after her termination from Defendant:

Hickory Creek of Gaston Indiana
502 North Madison Street
Gaston, Indiana 47342
Position: Interim DON
Dates of employment: 6/3/13-7/3/13
Salary: $45.00 per hour/$0.40 cents per mile
Benefits: None

3

Brook Haven
505 North Gavin
Muncie, Indiana 47303
Position: DON
Dates of employment: 8/5/13-9/10/13
Salary: $1,250.00 per week
Benefits: None

Chalet Village
1065 Parkway
Berne, Indiana
Position: DON
Dates of employment: 10/21/13-present
Salary: $27.00 per hour
Benefits: None

Plaintiff will produce her W-2s and/or 1099s showing the total compensation received upon receipt of such documents. Plaintiff reserves the right to supplement this response as this matter continues.

### INTERROGATORY NO. 3:

With respect to all attempts you made to obtain employment or other work for compensation and to such opportunities presented to you since January 1, 2013, state as to each:

a.     the name of the prospective employer or other source of compensation;

b.     the position sought or presented;

c.     the person(s) with whom you dealt in pursing the employment opportunity;

d.     whether an offer of employment or work for compensation was made to you and, if so, accepted by you;

e.     the terms and conditions of any such offer; and

f.     the outcome of any attempt to obtain employment or work for compensation that did not result in an offer.

4

**ANSWER:**

**Objection.** Plaintiff objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence as it is not appropriately limited in time.

_____
Kera L. Wagoff

Subject to and without waiving said objection, Plaintiff received assistance from the unemployment office to aid in her job search. Plaintiff also signed up with recruiters and searched job search websites such as careerbuilder.com and indeed.com. Plaintiff further refers Defendant to documents herein attached.

**INTERROGATORY NO. 4:**

How much are you claiming in damages? Itemize your basis for each component of you claim for damages (e.g., loss of earnings, loss of fringe benefits, non-monetary damages, attorneys' fees, costs, statutory damages, and any other damages you are claiming) and provide the details and calculations used to arrive at you answer.

**ANSWER:**

Damages are outlined in the Complaint and may be described with specificity by an economic expert. Emotional distress and other non-economic damages will be determined by the Court and/or fact finder at trial. Also, please see documents herein attached.

**INTERROGATORY NO. 5:**

Have you ever filed a lawsuit or other claim against any person or entity other than Defendants? If so, state the name and last known address of the person or entity, the date of the incident(s) out of which the claim(s) arose, and describe the nature of the claim(s). if litigation was involved, identify the court involved, the case number, and the names of all parties.

**ANSWER:**

**Objection.** Plaintiff objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Kera L. Daoff

**INTERROGATORY NO. 6:**

Have you ever been arrested for or charged with any crime aside from minor traffic offenses? If yes, for each such arrest or charge state the following:

a. date, city, county, state, and name of court in which you were arrested or charged;

b. name under which you were arrested or charged if different from your present name;

c. the offense with which you were arrested or charged;

d. whether you were convicted of the charge; and

e. if convicted, set forth the penalty received following said conviction.

6

**ANSWER:**

**Objection.** Plaintiff objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request on the grounds that it is intended to harass, embarrass or oppress Plaintiff.

Kera L. Paoff

**INTERROGATORY NO. 7:**

State whether you or your attorneys or agents or anyone acting on your behalf has taken any statements, signed or unsigned, oral or written, has possession of any such statements, or know of the existence of any such statements from or by any person who has or claims to have knowledge of any facts that pertain to the allegations set forth in the Complaint. For each such statement, provide and identify:

a.  the name and address of the person who made the statement;

b.  the name and address of each person who heard or recorded/documented the statement;

c.  the date, time and place at which the statement was made; and

d.  for each statement reduced to writing, the present location and custodian of the writing.

**ANSWER:**

**Objection.** Plaintiff objects to this Interrogatory for the reason that it seeks information that is protected by client/attorney privilege or is work product. Plaintiff further objects to this Interrogatory on the grounds that it is vague, ambiguous and subject to differing interpretations.

7

Kera L. Paoff

Subject to and without waiving said objection, Plaintiff states that at this time neither she nor her legal Counsel have interviewed or obtained any statements.

**INTERROGATORY NO. 8:**

Identify every document described in Defendants' First Request for Production of Documents to Plaintiff that you did not produce based on an objection, including, but not limed to, documents you contend are privileged under the attorney-client privilege or that constitute or embody work product protected under the Federal Rules of Civil Procedure. State the reason you failed to produce each document, including an explanation of the factual and legal basis for your objection.

**ANSWER:**

**Objection.** Plaintiff objects to this Interrogatory on the grounds that it seeks to impose obligations beyond what is required by the Federal Rules.

Kera L. Paoff

Subject to and without waiving said objection, other than communications between Plaintiff and Plaintiff's counsel, no documents have been withheld on the basis of attorney-client privilege.

**INTERROGATORY NO. 9:**

Identify every document described in Defendants' First Request for Production of Documents to Plaintiff that was at one time, but is no longer, in your possession, custody, or control

8

or that is no longer in existence. Explain what has happened to the document and the present or last known location and custodian of the document.

**ANSWER:**

N/A

**INTERROGATORY NO. 10:**

Identify the terms of the fee arrangement between you and your counsel and your counsel's staff, including the amount of retainer charged, if any, the billing arrangement, the hourly rate charged and any other material financial terms.

**ANSWER:**

**Objection.** This Interrogatory is not relevant or reasonably calculated to lead to discoverable evidence. Attorney fee agreements and costs claims are not relevant to the underlying claims of the Plaintiff. Only when the Plaintiff has prevailed would this discovery become relevant. *Scutellaro v. Walt Disney Co.*, No. 92-671, 1993 WL 393003 (September 24, 1993); *Sandler v. McGraw-Edison Co.*, 92 F.R.D. 463, 464 (S.D. Ohio 1981). Further, this matter is covered by attorney-client privilege. *Sanderson v. Winner*, 507 F.2d 477 (10th Cir. 1974), *cert. denied sub nom. Nissan Motor Corp. v. Sanderson*, 421 U.S. 914 (1975).

Kera L. Paoff

Subject to and without waiving said objection, Plaintiff states that if and when there is an award for attorney fees, Plaintiff will agree to a mutual exchange of fee agreements with Defendants.

9

**INTERROGATORY NO. 11:**

With regarding to all treatment or counseling you have received from any physical, psychological, emotional, or mental condition or illness since January 1, 2009, or that in any way relates to the allegations in your Complaint, including your allegation that you were "seriously ill" in April 2013, state:

      a.     the nature of the condition and/or diagnosis made;

      b.     the reasons for seeking treatment or counseling;

      c.     the names(s), address(es), and telephone number(s) of the treating or consulting medical and/or mental health professional as well as the institution, treatment center, or facility where each treatment or consultation for the condition occurred;

      d.     the treatment prescribed, if any.

**ANSWER:**

**Objection.** This Request seeks information that is not relevant and seeks information that is not likely to lead to discoverable information. See, *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987); *Doe v. City of Cleveland*, 788 F. Supp. 979, 985 (N.D. Ohio 1991); *Fisher v. City of Cincinnati*, 753 F. Supp. 692,694 (S.D. Ohio 1990); *Mann v. University of Cincinnati*, 824 F. Supp. 1190, 1199 (S.D. Ohio 1993). Plaintiff's objection is further based on the scope of the inquiry in that Defendants seek information removed from the events alleged in the Complaint and Defendants seek information related to any health care provider which is beyond the scope of the allegations in the Complaint.

Kera L. Paoff

Subject to and without waiving said objection, Plaintiff states that she was treated by Dr. Neal Holleran in April of 2013 for severe sinusitis and was treated by Dr. Jacob B. Gibson in May of

10

2013 for cardiac issues. Plaintiff reserves the right to supplement this response as this matter continues.


**INTERROGATORY NO. 12:**

Identify all documents upon which you relied in answering these Interrogatories.

**ANSWER:**

**Objection.** Plaintiff objects to this Interrogatory to the extent it seeks documents that are protected by client/attorney privilege and/or is work product. Plaintiff further objects to this Request on the grounds that it seeks documents and/or information that are being requested and/or developed by Plaintiff through the discovery process and has not yet been obtained by Plaintiff.

Kera L. Paoff

Subject to and without waiving said objection, please see documents herein attached and documents that have been previously exchanged between the Parties.

11

## RESPONSES TO PRODUCTION OF DOCUMENTS

### PRODUCTION REQUEST NO. 1:

All documents that support, contradict, refer to, or relate to your allegation in Paragraph 15 of your Complaint that "Fiely had an excellent work record and was well qualified for the positions she held."

### ANSWER:

**Objection.** This Request is overly broad and unduly burdensome. Further it is premature as it requests Plaintiff, prior to the completion of discovery, to provide documents relating to all facts supporting present contentions and the allegations in the Complaint and speculate as to future contentions. Further, this information in part is protected by work product privilege. This request calls for disclosure of information or materials prepared in anticipation of litigation and/or trial preparation materials without the showing required by the Federal Rules of Civil Procedure. Plaintiff further objects to this Request on the grounds that it seeks documents and/or information that are being requested and/or developed by Plaintiff through the discovery process and has not yet been obtained by Plaintiff.

Kera L. Paoff

Subject to and without waiving said objections, please see documents herein attached and documents that have been previously exchanged between the Parties.

### PRODUCTION REQUEST NO. 2:

All documents that support, contradict, refer to, or relate to your allegation in Paragraph 16 of your Complaint that "During the course of her employment, Fiely was subjected to discriminatory conduct and ageism."

12

**ASNWER:**

**Objection.** Please see objection to Request No. 1. In addition, Plaintiff objects to this Request on the grounds that it is duplicative in nature in that documents that relate to certain allegations of the Complaint likewise relate to other allegations and the claims contained therein.

_____
Kiera L. Paull

Subject to and without waiving said objections, please see documents herein attached and documents that have previously exchanged between the parties.

## PRODUCTION REQUEST NO. 3:

All documents that support, contradict, refer to, or relate to your allegation in Paragraph 17 of your Complaint that "around early April of 2013, Fiely was contacted by St. Mary's Administrator, Lorraine Fischio ("Ms. Fischio"), who asked Fiely when she was going to retire and that she (Ms. Fischio) could get Fiely a 'good retirement package.'"

**ANSWER:**

Please see responses and objections to Production Request No. 1 and 2.

## PRODUCTION REQUEST NO. 4:

All documents that support, contradict, refer to, or relate to your allegation in Paragraph 18 of your Complaint that "Fiely complained about the discriminatory conduct to Defendants' Director of Operations, Barry Durossett."

**ANSWER:**

Please see responses and objections to Production Request No. 1 and 2.

13

**PRODUCTION REQUEST NO. 5:**

All documents that support, contradict, refer to, or relate to your allegation in Paragraph 20 of your Complaint that "on Friday, April 19, 2013, she became seriously ill and informed Defendants that she was not feeling well."

**ANSWER:**

Please see responses and objections to Production Request No. 1 and 2.

**PRODUCTION REQUEST NO. 6:**

All documents that support, contradict, refer to, or relate to your allegation in Paragraph 21 of your Complaint that "Fiely was unable to work from that Friday evening until the morning of Thursday, April 25, 2013 – the date on which she was terminated."

**ANSWER:**

Please see responses and objections to Production Request No. 1 and 2.

**PRODUCTION REQUEST NO. 7:**

All documents that support, contradict, refer to, or relate to your allegation in Paragraph 22 of your Complaint that "On Monday, April 22, 2013, Fiely informed Defendants that she was still sick from the previous Friday and saw her physician who prescribed her medication and certified her to be off from work until Thursday, April 25, 2013."

**ANSWER:**

Please see responses and objections to Production Request No. 1 and 2.

14

**PRODUCTION REQUEST NO. 8:**

All documents that support, contradict, refer to, or relate to your claim that you were entitled to leave under the Family and Medical Leave Act, including any forms you or any of your physicians completed in or around April 2013 and May 2013.

**ANSWER:**

Please see responses and objections to Production Request No. 1 and 2. Plaintiff in not in possession of any FMLA forms as Defendant terminated her employment rather than provide her with the appropriate forms and/or leave under the FMLA.

**PRODUCTION REQUEST NO. 9:**

All documents that evidence, refer to, or relate to any criminal arrests of Plaintiff, criminal convictions of Plaintiff, or criminal charges against Plaintiff, and the resolution thereof, since January 1, 2006.

**ANSWER:**

Please see objection to Interrogatory No. 6.

**PRODUCTION REQUEST NO. 10:**

All documents that evidence, refer to, or relate to Plaintiff's employment with Defendant.

**ANSWER:**

**Objection.** Plaintiff objects to this Request on the grounds that Defendants are in possession of thier own employee records and can obtain the information with greater facility than Plaintiff. Plaintiff further objects to this Request on the grounds that it seeks documents and/or information that are being requested and/or developed by Plaintiff through the discovery process and has not yet been obtained by Plaintiff.

Kera L. Paoff

Subject to and without waiving said objections, please see documents herein attached and documents that have been previously exchanged between the Parties.

**PRODUCTION REQUEST NO. 11:**

All documents that evidence refer to, or relate to the ending or termination of Plaintiff's employment with Defendant.

**ANSWER:**

Please see response and objection to Production Request No. 1, 2, and 10.

**PRODUCTION REQEUST NO. 12:**

All statements made by or taken from any person who may have been or claims to have been a witness to any of the allegations in Plaintiff's Complaint.

**ANSWER:**

Please see response and objection to Interrogatory No. 7.

**PRODUCTION REQUEST NO. 13:**

All audio or visual recordings of any events or conversations relating to the allegations in Plaintiff's Complaint.

**ANSWER:**

Please see responses and objections to Interrogatory No. 7 and Production Request No. 12.

**PRODUCTION REQUEST NO. 14:**

If Plaintiff has a Facebook, MySpace, Twitter, or other social networking account, electronic copies of Plaintiff's complete profile (including all updates, changes, or modifications to Plaintiff's profile) and all status updates, messages, tweets, follows, wall comments, causes joined, groups joined, activities streams, blog entries, details, blurbs, comments, photographs, videos, and applications that reveal, refer to, or relate to any emotion, feeling, or metal state for the period of January 1, 2013, to the present or that reveal, refer to, or relate to Plaintiff's termination of employment or this lawsuit. To the extent electronic copies are not available, please provide the documents in hard copy form.

**ANSWER:**

**Objection.** The request for information regarding Plaintiff's social media networking information is not relevant or reasonably calculated to lead to discoverable evidence.

_Kera L. Padff_

**PRODUCTION REQUEST NO. 15:**

All documents, statements, or other evidence given to anyone or taken from anyone preliminary to, or in the course of, any investigation of the incidents alleged in the Complaint, including all documents and statements provided to any governmental agency or entity.

**ANSWER:**

**Objection.** Plaintiff objects to this Request to the extent it seeks documents that are protected by client/attorney privilege and/or is work product. Plaintiff further objects to this Request on the grounds that it seeks documents and/or information that are being requested and/or developed by Plaintiff through the discovery process and has not yet been obtained by Plaintiff.

_Kera L. Padff_

Subject to and without waiving said objection, please see documents herein attached and documents that have been previously exchanged between the Parties.

18

**PRODUCTION REQEUST NO. 16:**

All documents that evidence, refer to, or relate to charges, complaints or claims that Plaintiff has made in any court, agency, or other forum concerning Plaintiff's employment with Defendant and/or the ending of that employment.

**ANSWER:**

**Objection.** Plaintiff objects to this Request to the extent it seeks documents that are protected by client/attorney privilege and/or is work product. Plaintiff further objects to this Request on the grounds that it seeks documents and/or information that are being requested and/or developed by Plaintiff through the discovery process and has not yet been obtained by Plaintiff.

Kera L. Padff

Subject to and without waiving said objection, please see documents herein attached and documents that have been previously exchanged between the Parties.

**PRODUCTION REQUEST NO. 17:**

All documents (including but not limited to emails, letters, resumes, postings, advertisements, and other correspondence) that evidence, refer to, or relate to Plaintiff's attempts, if any, to obtain employment, other than with Defendant, since January 1, 2013.

**ANSWER:**

**Objection.** Plaintiff objects to this Request on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Kera L. Padff

Subject to and without waiving said objection, please see documents herein attached.

19

**PRODUCTION REQUEST NO. 18:**

All documents that evidence, refer to, or relate to any employment Plaintiff has had since her employment with Defendant ended.

**ANSWER:**

**Objection.**  Plaintiff objects to this Request in that it is overly broad, unduly burdensome and is intended to harass Plaintiff.  Furthermore, this request is not reasonable calculated to lead to the discovery of admissible evidence. *Conrod v. The Bank of New York*, Case No. 97 Civ. 6347, 1998 U.S. Dist. LEXIS 11634 (S.D.N.Y., July 28, 1998); *Poulos v. Village of Lindenhurst,* Case No. 00 C 5603, 2002 U.S. Dist. LEXIS 5426 (N.D. Ill. Mar. 28, 2002) (quashing defendant's subpoena to plaintiff's present employer); *Scott v. Rent-Way, TTIG, L.P.,* Case No. 3-04-CV-2723-H, 2005 U.S. Dist. LEXIS 11913 (N.D. Tex. June 16, 2005) ("[t]he court is not inclined to allow defendant to rummage through plaintiff's entire personnel file in hopes of finding information to impeach his credibility); *Reynolds v. York*, 2004 U.S. Dist. LEXIS 12313 (N.D. Tex. Jul. 2, 2004) (holding that third party subpoena served on former employer seeking personnel file and other documents that might impeach plaintiff's credibility "amounts to nothing more than a fishing expedition").

Kera L. Paoff

Subject to and without waiving said objection, please see documents herein attached and that have previously been exchanged between the Parties.

20

## PRODUCTION REQUEST NO. 19:

All documents that evidence, refer to, or relate to Plaintiff's calculation of damages including, but not limited to:

    a.    all documents that relate to any insurance premiums paid by Plaintiff or anyone on Plaintiff's behalf;

    b.    all documents that relate to any payments made by any insurance company on Plaintiff's behalf, or which primarily benefits Plaintiff or any person covered on an insurance plan with Plaintiff;

    c.    all documents that relate to any contributions Plaintiff or anyone on Plaintiff's behalf has made to any pension or retirement account primarily benefitting Plaintiff; and

    d.    all documents prepared by an expert regarding damages.

## ANSWER:

Please see response to Interrogatory No. 4. Also, please see documents that have previously been exchanged between the Parties.

## PRODUCTION REQUEST NO. 20:

All documents that relate to any income Plaintiff has received from any source since her employment with Defendant ended, including, but not limited to paycheck stubs, W-2 Forms, 1099 Forms, financial statements, documents relating to unemployment compensation benefits, Medicare, Medicaid or social security benefits, disability compensation benefits, and/or public assistance benefits.

## ANSWER:

**Objection.** Plaintiff objects to this Request on the grounds that it is overly broad and unduly burdensome.

21

Kera L. Paoff

Subject to and without waiving said objection, Plaintiff is in the process of gathering her W-2s and 1099s following her termination of employment with Defendant and will supplement this response as soon as it is obtained.

**PRODUCTION REQUEST NO. 21:**

Plaintiff's federal and state tax returns with supporting schedules and documentation for the years 2009, 2010, 2012, and 2013 when available.

**ANSWER:**

**Objection.** Plaintiff's tax returns are confidential and not discoverable. 26 U.S.C. §6103; *DeMasi v. Weiss (C.A. 3, 1982)*, 669 F.2d 114, 119; *Payne v. Howard (D.D.C. 1977)*, 75 F.R.D. 465, 469. Plaintiff's income prior to her employment with Defendants is not relevant to the claims or defenses within this action, and is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Plaintiff's income history can be obtained from other sources without necessitating the disclosures of confidential tax returns. Plaintiff's subsequent income can be obtained from other sources without necessitating the disclosure of tax returns.

Kera L. Paoff

22

Subject to and without waiving said objection, please see documents previously exchanged between the Parties. Also, Plaintiff will supplement this response with information regarding 2013 as soon as it is received.

**PRODUCTION REQUEST NO. 22:**

All pleadings and documents that evidence, refer to, or relate to any claim for bankruptcy Plaintiff has pursued or been involved in since January 1, 2002.

**ANSWER:**

**Objection.** Plaintiff objects to this Request on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Kiera L. Paoff

**PRODUCTION REQUEST NO. 23:**

All documents received from any non-party in discovery or otherwise in connection with this action.

**ANSWER:**

N/A

23

**PRODUCTION REQUEST NO. 24:**

All documents sent to, prepared by or received from any expert witness Plaintiff intends to call at trial in this action.

**ANSWER:**

No determination as to who may be called as an expert witness has yet been made. Plaintiff reserves the right to further supplement this response when such information is known.

**PRODCUTION REQUEST NO. 25:**

All documents Plaintiff intends to introduce into evidence at trial.

**ANSWER:**

**Objection.** This Request is overly broad and unduly burdensome. Further it is premature as it requests Plaintiff, prior to the completion of discovery, state all facts supporting present contentions and speculate as to future contentions. Further, this information in part is protected by work product privilege. This request calls for disclosure of information or materials prepared in anticipation of litigation and/or trial preparation materials without the showing required by the Ohio Rules of Civil Procedure. Plaintiff will supplement this answer pursuant to obligations under the Ohio Rules of Civil Procedure.

Kera L. Paoff

Subject to and without waiving said objection, see documents herein attached and that have been exchanged between the Parties.

24

**PRODUCTION REQUET NO. 26:**

All documents identified, referred to, considered, or relied upon in answering Defendants' First Set of Interrogatories to Plaintiff.

**ANSWER:**

**Objection.** Plaintiff objects to this Request to the extent it seeks documents that are protected by client/attorney privilege and/or is work product. Plaintiff further objects to this Request on the grounds that it seeks documents and/or information that are being requested and/or developed by Plaintiff through the discovery process and has not yet been obtained by Plaintiff.

Kera E. Papff

Subject to and without waiving said objection, please see documents herein attached and documents that have been previously exchanged between the Parties.

**PRODUCTION REQUEST NO. 27:**

All documents identified in Plaintiff's Rule 26 Disclosures, exhibit lists, and any amendments or supplement thereto.

**ANSWER:**

Documents responsive to this Request have previously been produced.

25

**PRODUCTION REQUEST NO. 28:**

All documents that evidence, refer to, or relate to any arrangement or agreement by which Plaintiff is paying, or is to pay, legal fees and costs in connection with this lawsuit.

**ANSWER:**

**Objection.** This Request is not relevant or reasonably calculated to lead to discoverable evidence. Attorney fee agreements and costs claims are not relevant to the underlying claims of the Plaintiff. Only when the Plaintiff has prevailed would this discovery become relevant. *Scutellaro v. Walt Disney Co.,* No. 92-671, 1993 WL 393003 (September 24, 1993); *Sandler v. McGraw-Edison Co.,* 92 F.R.D. 463, 464 (S.D. Ohio 1981). Further, this matter is covered by attorney-client privilege. *Sanderson v. Winner,* 507 F.2d 477 (10th Cir. 1974), *cert. denied sub nom. Nissan Motor Corp. v. Sanderson,* 421 U.S. 914 (1975).

Kera L. Paoff

Subject to and without waiving said objection, Plaintiff states that if and when there is an award for attorney fees, Plaintiff will agree to a mutual exchange of fee agreements with Defendant.

Respectfully submitted,

WIDMAN & FRANKLIN, LLC

John D. Franklin (0055359)
Kera L. Paoff (0082674)
405 Madison Avenue, Suite 1550
Toledo, Ohio 43604
(419) 243-9005 – Telephone
(419) 243-9404 – Fax
john@wflawfirm.com
kera@wflawfirm.com

Attorneys for Plaintiff
Jane Fiely

## CERTIFICATE OF SERVICE

This is to certify that the forgoing was sent via ordinary mail this 22nd day of January 2014 to

the following:

Brian R. Garrison, Esq.
Matthew A. Brown, Esq.
Faegre Baker Daniels LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782

Kera L. Paoff

27

## **VERIFICATION**

STATE OF OHIO
        SS
LUCAS COUNTY

      I, <u>Jane Fiely</u>, have read the answers to the foregoing Interrogatories and acknowledge that the same are true, as I verily believe.

*Jane Fiely*

      Before me, a Notary Public, in and for said County and State, appeared <u>Jane Fiely</u> who acknowledged that the above signature was her own free act and deed this <u>22nd</u> day of <u>January</u> 2014.

JAMMIE MARIE CASSONI
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES 4/2/18

*Jannie M. Cassoni*
Notary Public

IN THE UNITED STATE DISTRICT COURT
FOR THE NOTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JANE FIELY** | * | **Case No.: 3:13CV2005** |
| Plaintiff, | * | **Judge: James G. Carr** |
| vs. | * | **PLAINTIFFS' RULE 26(a)(1) DISCLOSURES** |
| **ESSEX HEALTHCARE CORPORATION, et al.** | * | |
| | * | |
| Defendants. | | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

Now comes Plaintiff, Jane Fiely ("Plaintiff"), by and through Counsel, and provides the

following information and initial disclosures under Federal Rules of Civil Procedure 26(a)(1):

### Rule 26(a)(1)(A) Disclosures:

1.  Jane Fiely
    Plaintiff
    3192 State Route 219
    Coldwater, Ohio 45828
    Ms Fiely has information regarding her employment, the allegations contained in her
    Complaint, her medical condition and termination of her employment.

2.  Jason Reese
    Chief Operating Officer
    Current contact information is unknown to Plaintiff at this time.
    Mr. Reese may have information and/or knowledge regarding Plaintiff's employment, the
    allegations contained in her Complaint, Plaintiff's termination and the defenses of the
    Defendants.

3.  Lorraine Fischio
    St. Mary's Administrator
    Current contact information is unknown to Plaintiff at this time.
    Ms. Fischio may have information and/or knowledge regarding Plaintiff's employment,
    termination, the allegations contained in her Complaint and the defenses of the
    Defendant.

4.  Barry Durossett
    Director of Operations

1



Plaintiff may object to the use of some of the above documents, and/or portions thereof, as they are neither relevant nor admissible. Plaintiff will supplement this list as needed as discovery proceeds.

**Rule 26(a)(1)(C) Disclosures:**

Plaintiff believes she is entitled to damages as requested in her Complaint With Jury Demand.

**Rule 26(a)(1)(D) Disclosures:**

Not applicable.

These disclosures will be supplemented if necessary. This information is initial and based upon information "reasonably available" at this time.

Respectfully submitted,

WIDMAN & FRANKLIN, LLC

Kera L. Paoff (0082674)
John D. Franklin (0055359)
405 Madison Avenue, Suite 1550
Toledo, Ohio 43604
(419) 243-9005 – Telephone
(419) 243-9404 – Fax
kera@wflawfirm.com
john@wflawfirm.com

Attorneys for Plaintiff

3

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing Plaintiff's Rule 26(a)(1) Disclosures was sent via email Brian R. Garrison, Stephen S. Zashin, Ami J. Patel and Matthew A. Brown , Counsel for Defendants, whose email addresses are ssz@zrlaw.com, ajp@zrlaw.com, matthew.brown@faegrebd.com and brian.garrison@faegrebd.com, this 13th day of December 2013.

Kera L. Paoff